Index No.  15 Civ. 7130 (AT)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE PACKARD, EDWARD BECK, MICHELLE
BERGER, ARI COWAN, CONNOR HICKS, CHARLES
MEACHEM, CHRIS PHILLIPS, LARRY SWETMAN
and AMADON DELLERBA, individually and on behalf
of all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK, a municipal entity,
FORMER NYPD CHIEF OF PATROL JOSEPH
ESPOSITO, FORMER NYPD COMMISIONER RAY
KELLY, FORMER MAYOR MICHAEL
BLOOMBERG, NYPD CHIEF THOMAS P. PURTELL,
NYPD DEPUTY CHIEF STEVEN ANGER, NYPD
DEPUTY CHIEF JAMES MCNAMARA,

Defendants

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Michael Bloomberg, Ray Kelly, Joseph*
*Esposito, Thomas P. Purtell, Steven Anger,*
*and James McNamara*
*100 Church Street*
*New York, New York  10007*

*Of Counsel:  Gary Moy*
*Tel:  (212) 356-3522*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 1

STANDARD OF REVIEW ...................................................................................................... 3

ARGUMENT

      I.     PLAINTIFFS HAVE FAILED TO STATE A *MONELL* CLAIM ........................................................................................... 4

          A.  Recitations to "Principles of Proper Policing of Expressive Speech Activity" Do Not Establish A Specific Deficiency in Training ....................................................... 8

          B.  Citations to Arrests and Prosecutions Relating the 2011 Occupy Wall Street "Protests" and the 2012 One Year Anniversary Do Not Plausibly Allege a Pattern of Constitutional Violations ...................................... 9

          C.  Citations to Other Civil Actions Relating OWS I and II Do Not Plausibly Allege a Pattern of Constitutional Violations .................................................... 11

          D.  Citations to Articles and a Report Relating to OWS I Do Not Support an Inference of Actual Wrongdoing or Notice of Inadequate Training ................................ 16

      II.    DEFENDANTS BLOOMBERG, KELLY, ANGER, ESPOSITO, MCNAMARA, AND PURTELL SHOULD BE DISMISSED FROM THIS ACTION .......................................................................................... 19

      III.   PLAINTIFFS' FALSE ARREST CLAIM SHOULD BE DISMISSED ...................................................................... 23

CONCLUSION .......................................................................................................................... 24

**Statutes**                                                                                    **Pages**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

5 Borough Pawn, LLC. v. City of New York,
    No. 08 Civ. 3837 (CM),
    2009 U.S. Dist. LEXIS 54069 (S.D.N.Y. June 22, 2009) ......................................................21

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..................................................................................................3, 18, 19, 22

Awelewa v. New York City,
    No. 11 Civ. 778 (NRB),
    2012 U.S. Dist. LEXIS 24244 (S.D.N.Y. Feb. 23, 2012)......................................................16

Baker v. McCollan,
    443 U.S. 137 (1979)...................................................................................................................1

Barrington v. Johnson,
    No. 06 Civ. 2234 (SAS),
    2006 U.S. Dist. LEXIS 86354 (S.D.N.Y. Nov. 27, 2006) ......................................................21

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)...........................................................................................................3, 10

Bellamy v. Mount Vernon Hosp.,
    No. 07 Civ. 1801 (SAS),
    2009 U.S. Dist. LEXIS 54141 (S.D.N.Y. Jun. 26, 2009) .................................................19, 20

Bertuglia v. City of New York,
    No. 11 Civ. 2141 (JGK),
    2015 U.S. Dist. LEXIS 131008 (S.D.N.Y. Sept. 28, 2015).....................................................8

Brogdon v. City of New Rochelle,
    200 F. Supp. 2d 411 (S.D.N.Y. 2002)......................................................................................8

Brown v. City of New York,
    306 F. Supp. 2d 473 (S.D.N.Y. 2004)....................................................................................11

Candelario v. City of New York,
    No. 12 Civ. 1206 (LAP), 2013 WL 13392102 (S.D.N.Y. Apr. 3, 2013)................................10

City of Canton v. Harris,
    489 U.S. 378 (1989)...................................................................................................................4

**Cases**                                                           **Pages**

City of St. Louis v. Praprotnik,
    485 U.S. 112 (1988).............................................................................4

Collins v. City of New York,
    No. 11 CV 766 (FB),
    2013 U.S. Dist. LEXIS 21199 (E.D.N.Y. Feb. 15, 2013).......................14

Colon v. Coughlin,
    58 F.3d 865 (2d Cir. 1995)............................................................20, 21

Connick v. Thompson,
    563 U.S. 51 (2011) ..................................................................... *passim*

In re CRM Holdings, Ltd.,
    No. 10 Civ. 975 (RPP),
    2012 U.S. Dist. LEXIS 66034 (S.D.N.Y. May 10, 2012) ......................15

Curry v. City of Syracuse,
    316 F.3d 324 (2d Cir. 2003)...........................................................18

Delrosario v. City of New York,
    No. 07 Civ. 2027 (RJS),
    2010 U.S. Dist. LEXIS 20923 (S.D.N.Y. Mar. 4, 2010) .......................15

Downing v. City of New York,
    No 13 Civ. 4247 (KBF),
    2013 U.S. Dist. LEXIS 145483 (S.D.N.Y. Oct. 3, 2013) ......................19

Edwards v. City of New York,
    No. 03 Civ. 9407 (PAC),
    2005 U.S. Dist. LEXIS 34376 (S.D.N.Y. Dec. 19, 2005) ......................18

Fulton v. Robinson,
    289 F.3d 188 (2d Cir. 2002)...........................................................11

Greenfield v. City of New York,
    No. 99 Civ. 2330 (AJP),
    2000 U.S. Dist. LEXIS 1164 (S.D.N.Y. Feb. 3, 2000)..........................13

Grullon v. City of New Haven,
    720 F.3d 133 (2d Cir. 2013)...........................................................20

Harlow v. Fitzgerald,
    457 U.S. 800 (1982).....................................................................23

Harper v. City of New York,
    2013 U.S. Dist. LEXIS 14951 (S.D.N.Y. Jan. 30, 2013) .......................5

**Cases**                                                                                    **Pages**

Hickey v. City of New York,
    No. 01 Civ. 6506 (GEL),
    2004 U.S. Dist. LEXIS 23941(S.D.N.Y. Nov. 29, 2004)
    aff'd, 173 F. App'x 893 (2d Cir. 2006)...................................................................16

Higginbotham v. City of New York,
    105 F. Supp. 3d 369 (S.D.N.Y. 2015)....................................................................10

Hunter v. Bryant,
    502 U.S. 224 (1991)...............................................................................................23

Jones v. Roosevelt Island Operating Corp.,
    No. 13 Civ. 2226 (JSR),
    2013 U.S. Dist. LEXIS 174171 (S.D.N.Y. Dec. 7, 2013) .................................. 21-22

Kramer v. Time Warner Inc.,
    931 F.2d 767 (2d Cir. 1991)..............................................................................13, 14

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995).....................................................................................23

Lipsky v. Commonwealth United Corp.,
    551 F.2d 887 (2d Cir. 1976)...................................................................................14

Low v. Robb,
    No. 11 Civ. 2321 (JPO), 2012 U.S. Dist. LEXIS 6836 (S.D.N.Y. Jan. 20,
    2012) .......................................................................................................................15

Martinez v. City of New York,
    No. 06 Civ. 5671 (WHP),
    2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. June 27, 2008) .....................................10

Martinez v. Perilli,
    No. 09 Civ. 6470 (WHP),
    2012 U.S. Dist. LEXIS 3247 (S.D.N.Y. Jan. 5, 2012) .........................................20

Matos v. City of New York,
    No. 10 Civ. 4558 (NG),
    2012 U.S. Dist. LEXIS 186250 (E.D.N.Y. Nov. 30, 2012)............................... 11-12

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
    218 F.R.D. 76 (S.D.N.Y. 2003) .............................................................................15

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978).................................................................................................4

Pacheco v. City of New York,
    234 F.R.D. 53 (S.D.N.Y. 2006) .............................................................................15

**Cases**                                                                                              **Pages**

Parris v. New York State Dep't of Corr. Servs.,
   947, F. Supp. 2d 354 (S.D.N.Y. 2013)..............................................................19, 22

Pembaur v. City of Cincinnati,
   475 U.S. 469 (1986)...........................................................................................4

Pollard v. City of New York,
   No. 96 Civ. 5829,
   1997 U.S. Dist. LEXIS 15587 (S.D.N.Y. Oct. 9, 1997) ......................................13

Rasmussen v. City of New York,
   766 F. Supp. 2d 399 (E.D.N.Y. 2011) ................................................................15

Reynolds v. Giuliani,
   506 F.3d 183 (2d Cir. 2007)...........................................................................6, 7

Ricky Walker v. City of New York,
   No. 12 Civ. 5902 (PAC),
   2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. March 18, 2014) ...................... 13, 14-15

RSM Prod. Corp. v. Fridman,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009).................................................................14

Rylawn Walker v. City of New York,
   No. 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015)...................13

Sealey v. Fishkin,
   No. 96 CV 6303 (RR),
   1998 U.S. Dist. LEXIS 20142 (E.D.N.Y. Dec. 2, 1998) ......................................15

Simms v. City of New York,
   480 F. App'x 627 (2d Cir. 2012) ..................................................................4, 14

Smith v. Martuscello,
   602 F. App'x 550 (2d Cir. 2015) .......................................................................17

Sosunov v. City of New York,
   No. 11 CV 2219 (ENV) .....................................................................................11

Spears v. City of New York,
   No. 10 CV 3461 (JG) (RER),
   2012 U.S. Dist. LEXIS 145517 (E.D.N.Y. Oct. 9, 2012).......................................15

Tieman v. City of Newburgh,
   13 Civ. 4178 (KMK),
   2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) .....................................14

**Cases**                                                                                    **Pages**

Torraco v. Port Autho. of N.Y. & N.J.,
   615 F.3d 129 (2d Cir. 2010)............................................................................10

Triano v. Town of Harrison,
   895 F. Supp. 2d 526 (S.D.N.Y. 2012).........................................................3, 7, 18

Webb v. Goord,
   340 F.3d 105 (2d Cir. 2003)............................................................................18

Wray v. City of New York,
   490 F.3d 189 (2d Cir. 2007).........................................................................5, 6, 8

Wright v. Smith,
   21 F.3d 496 (2d Cir. 1994)..............................................................................19

**Statutes**

Fed. R. Civ. P. 8(a)(2)..........................................................................................3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

GEORGE PACKARD, EDWARD BECK, MICHELLE
BERGER, ARI COWAN, CONNOR HICKS, CHARLES
MEACHEM, CHRIS PHILLIPS, LARRY SWETMAN and
AMADON DELLERBA, individually and on behalf of all
others similarly situated,

No. 15 Civ. 7130 (AT)

Plaintiffs,

- against -

THE CITY OF NEW YORK, a municipal entity, FORMER
NYPD CHIEF OF PATROL JOSEPH ESPOSITO,
FORMER NYPD COMMISIONER RAY KELLY,
FORMER MAYOR MICHAEL BLOOMBERG, NYPD
CHIEF THOMAS P. PURTELL, NYPD DEPUTY CHIEF
STEVEN ANGER, NYPD DEPUTY CHIEF JAMES
MCNAMARA,

Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(B)(6) OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

## PRELIMINARY STATEMENT

Plaintiffs George Packard, Edward Beck, Michelle Berger, Ari Cowan, Connor Hicks, Charles Meachem, Chris Phillips, Larry Swetman, and Amadon Dellerba allege two causes of action arising out of their September 2012 arrests: (i) a purported deprivation of federal civil rights under 42 U.S.C. 1983,[1] which appears to be a claim of municipal liability; and (ii) false arrest.  The complaint is so littered with unsupported accusations and bald assertions presented as "truth" as to purported police wrongdoings relating to the 2011 Occupy Wall Street "protests" that a reader might actually be lulled into believing plaintiffs about their 2012 arrests -- until the reader goes searching for phantom "facts" in support of their claims. Bootstrapping plaintiffs' September 2012 arrests to the 2011 Occupy Wall Street "movement" and aping Occupy Wall Street talking points is not a substitute for satisfying the pleading requirements of Iqbal and Twombly.   Notwithstanding attempts to disguise unsupported assertions as "facts" and verbose recitations to other arrests, prosecutions, and lawsuits (which, as a matter of law, are insufficient to support plaintiffs' claims), the Complaint is devoid of well-pleaded facts that are necessary to survive a motion to dismiss.   Accordingly, defendants respectfully submit this memorandum of law in support of its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

Plaintiffs allege, in relevant part, the following:  beginning in September 2011, and  for months thereafter, people invoking the banner of Occupy Wall Street ("OWS") engaged

---

[1]  Insomuch as plaintiffs are alleging that defendants deprived him of their federal civil rights in violation of 42 U.S.C. § 1983, Section 1983 merely provides "a method for vindicating federal rights elsewhere conferred" but does not itself create any substantive rights.   Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

in "protest" activities with a march into the Financial District of Manhattan, including the occupation of a privately-owned public space, Zuccotti Park ("OWS I").  (Compl. ¶¶ 5, 50)

Former Chief of Department Joseph Esposito (sued herein as "former Chief of Patrol"), Chief Thomas P. Purtell, Deputy Chief Steven Anger, and Deputy Chief James McNamara (together, "Chief Defendants") and other members of the New York City Police Department ("NYPD") -- at the behest of the City of New York, Mayor Michael Bloomberg, and Police Commissioner Raymond Kelly -- trained for mass protest situations, but the training purportedly failed to address the First Amendment rights of the protestors.  (Compl. ¶¶ 6, 73) NYPD officers, however, received training on police conduct in expressive speech protest situations, "Principles of Proper Policing of Expressive Speech Activity", in the Police Academy.  (Compl. ¶¶ 69, 71, 86)

During OWS I, the NYPD arrested members of OWS, the majority of which arrests were for offenses such as disorderly conduct.  (Compl. ¶ 61)  Between September 17, 2011 and September 17, 2012, approximately 2,644 members of OWS were arrested.  (Compl. ¶ 61)  Approximately 409 arrests resulted in a plea or conviction, which represents 15% of the OWS-related arrests. (Compl. ¶ 61)  The remainder of the arrests resulted in dismissals, declined prosecutions, and adjournments in contemplation of dismissal.  (Compl. ¶¶ 7, 61-62)  Since 2011, more than 80 litigations were filed in the Southern District of New York, of which 50 have been settled and 17 were filed before September 15, 2012 and the First Anniversary of Occupy Wall Street on September 17, 2012.  (Compl. ¶¶ 64-65)

On September 17, 2012, thousands of individuals came to New York City to "celebrate" the First Anniversary of Occupy Wall Street ("OWS II").  (Compl. ¶ 106)  During OWS II-related activities, approximately 180 persons were arrested around various locations in Manhattan, including plaintiffs George Packard, Edward Beck, Michelle Berger, Ari Cowan,

- 2 -

Connor Hicks, Chris Phillips, Larry Swetman, and Amadon Dellerba.  (Compl. ¶¶ 108, 115, 121, 129, 135, 146, 152, 158)   Plaintiff Charles Meacham was arrested on September 15, 2012. (Compl. ¶ 142)

## STANDARD OF REVIEW

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "If a plaintiff 'ha[s] not nudged [his/her] claims across the line from conceivable to plausible, [his/her] complaint must be dismissed.'"  Triano v. Town of Harrison, 895 F. Supp. 2d 526, 529 (S.D.N.Y. 2012) (alteration in original) (quoting Twombly, 550 U.S. at 570).  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.  A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).

## ARGUMENT

### I.   PLAINTIFFS HAVE FAILED TO STATE A *MONELL* CLAIM

Plaintiffs have brought a Section 1983 claim against the City of New York.  In order to state a Section 1983 claim against a municipality, a plaintiff must allege sufficient facts from which to infer that municipal policy *itself* caused a constitutional violation.  See Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988) ("governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights").  In other words, "a municipality cannot be held liable *solely* because it employs a tortfeasor." Monell, 436 U.S. at 691 (emphasis in original); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986) (a municipality may not be held liable under § 1983 on the basis of *respondeat superior*).  Instead, a plaintiff must establish that a municipality's "deliberate conduct" was the "moving force" that caused his alleged injury.  Simms v. City of New York, 480 F. App'x 627, 629 (2d Cir. 2012); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989) (there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

To state a claim for municipal liability pursuant to Monell v. Dep't of Social Services, 436 U.S. 658 (1978), a plaintiff must plead three elements:  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional rights." Simms, 480 F. App'x at 629 (citation and internal quotation marks omitted).  As set forth below, plaintiffs have failed to alleged sufficient facts from which to infer that they were falsely arrested and, therefore, the derivative Monell claim should be dismissed.  But even if plaintiffs have stated a claim for false arrest, they have not plausibly alleged either the existence of a policy or a link between a policy and the alleged deprivation of their constitutional rights.

With respect to the first element, to prove the existence of a municipal policy or custom, a plaintiff must establish the following: (i) the existence of a formal policy, officially promulgated or adopted by a municipality; (ii) an official responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision that caused the alleged violation of plaintiff's constitutional rights; (iii) the existence of an unlawful practice so permanent and well-settled to constitute "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials; or (iv) failure by policy makers to train or supervise subordinates.  See Harper v. City of New York, No. 11 Civ. 4333 (CM), 2013 U.S. Dist. LEXIS 14951, *9-10 (S.D.N.Y. Jan. 30, 2013).  In this case, it appears that plaintiffs are attempting to establish a purported municipal policy under a theory of failure to train.  (See Compl. ¶ 165)

A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). "Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor disregarded a known obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (emphasis added).  Although a municipality may be liable under § 1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983."  Id. ("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train").

"[W]here (as here), a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation." Wray, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added). "[A] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

To succeed on a "deliberate indifference" theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program."  Connick, 563 U.S. at 61.  With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees."  Id. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Plaintiffs premise their theory of municipal liability on variations of unsupported assertions that the City has purported policies, practices, and customs that caused violations of plaintiffs' constitutional rights by way of allegedly: (i) "failing to establish, implement, and follow the correct Constitutional policies, procedures, customs, and/or practices"; (ii) "failing to properly select supervise, train, control, and review the activities of their agents, servants, employees, and police officers as to their compliance with Constitutional safeguards"; (iii) "permitting their agents, servants, employees, and police officers to engage in the unlawful and unconstitutional conducted alleged [in the Complaint]"; and (iv) "exercising … deliberate

indifference towards the Constitutional protections afforded to the Plaintiffs and the class by disregarding the numerous lawsuits, statistical evidence, and reports indicating that the policies, procedures, customs, and/or practices were improper and violated the Plaintiffs' and the class' Constitutional rights".  (Compl. ¶¶ 163-165)

"[A] failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'"  Triano v. Town of Harrison, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007)).  In support of their theory of liability, which is otherwise devoid of substance, plaintiffs bootstrap their claims to a screed -- approximately 170 paragraphs, recycling sound bites copied and pasted from plaintiffs' counsel's other lawsuits -- as to the purported wrongdoings arising out of the original 2011 Occupy Wall Street "movement".  Plaintiffs premise their argument that NYPD officers were inadequately trained and that City and/or its policymakers knew or should have known about purported training deficiencies and nonetheless failed to provide adequate training on the following:

1.      recitations to purported principles of law on which NYPD officers allegedly needed additional training;

2.      the arrests and prosecutions of non-party individuals arising out of the OWS I and II "protests";

3.      other lawsuits that have been filed relating to OWSI and II; and

4.      several news articles and a "report" relating to OWS I.

None of these allegations are sufficient to establish that, on September 15, 2012 and September 17, 2012, defendants were deliberately indifferent to an obvious risk that members of the NYPD would falsely arrest individuals engaged in "protest" activities.

A. **Recitations to "Principles of Proper Policing of Expressive Speech Activity" Do Not Establish A Specific Deficiency in Training**

Plaintiffs reference approximately ten legal principles, collectively labeled "Principles of Proper Policing of Expressive Speech Activity" (Compl. ¶ 69), on which NYPD officers purportedly received inadequate training. On first impression, plaintiffs appear to allege that members of the NYPD did not receive any training on these issues, which training would have allegedly prevented plaintiffs' arrests. (Comp. ¶¶ 6, 70) But embedded within their rant on the purported wrongdoings related to the OWS I and II events, plaintiffs *admit* that members of the NYPD received training on the Principles of Proper Policing. (Compl. ¶¶ 71, 86) Plaintiffs also acknowledge that NYPD officers received "large-scale training" in preparation for the 2011 OWS I events. (Compl. ¶ 73) Plaintiffs' theory of liability, therefore, appears to be premised on the argument that *more* training on the Principles of Proper Policing was needed; however, since plaintiffs admit that the City had a training program and that officers were trained on the Principles of Proper Policing, plaintiffs must do more by way of identifying a *specific deficiency* in the City's training program *and* establishing that that deficiency caused plaintiffs' constitutional rights to be violated. See Wray, 490 F.3d at 196. Instead, plaintiffs have baldly asserted only that more training on various legal principles was needed and they did so without identifying which of the Principles of Proper Policing required additional teaching the inadequacy of which caused plaintiffs' alleged improper arrests -- this is insufficient to state a Monell claim. See Bertuglia v. City of New York, No. 11 Civ. 2141 (JGK), 2015 U.S. Dist. LEXIS 131008, at *114 (S.D.N.Y. Sept. 28, 2015) ("[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability."); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) (dismissing Monell claim where complaint merely alleged that the city failed to adequately discipline defendant

officers and failed to train them "in the proper criteria to make an arrest … [and] conduct an investigation").

### B. Citations to Arrests and Prosecutions Relating the 2011 Occupy Wall Street "Protests" and the 2012 One Year Anniversary Do Not Plausibly Allege a Pattern of Constitutional Violations

To support the assertion that the City was on notice that NYPD officers needed additional training on the Principles of Proper Policing, plaintiffs rely on a recitation of arrests that occurred between September 17, 2011 and September 17, 2012 and the number of dismissal, adjournments in contemplation of dismissals, and declined prosecutions by the New York County District Attorney's Office (Compl. ¶¶ 53, 57, 59, 61, 62, 75, 84, 104, 108), all of which are insufficient to state a claim of municipal liability.  Plaintiffs allege that approximately 2,644 arrests occurred between September 17, 2011 and September 17, 2012 and that approximately 15% of those arrests resulted in a plea or conviction.  (Compl. ¶ 61)  In the first instance, the arrests and prosecutions that occurred contemporaneously with or subsequent to the September 15 and September 17, 2012 incidents must discounted for the purposes of determining Monell liability because those arrests and prosecutions could not have put the City and/or its policymakers on a notice of a deficient training program *before* plaintiffs' arrests.  See Connick, 563 U.S. 63 n.7 ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates").

Plaintiffs' reliance on the other arrests fails because plaintiffs do not plead any facts from which to infer that the arrests were actually instances of *unlawful* arrests and that those arrests were caused by *similar* unconstitutional conduct resulting from *similar* inadequate training.  See Connick, 563 U.S. at 62 (requiring a pattern of similar constitutional violations).  The fact that other individuals were arrested does not mean that those arrests were unlawful (for

the same reasons, discussed *infra* Part I.C. at pp. 14-16, that citations to other lawsuits alleging false arrest do not satisfy pleading requirements) and lawful arrests obviously cannot serve as a basis for municipal liability.  See Martinez v. City of New York, No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at \*12 (S.D.N.Y. June 27, 2008) ("A municipality cannot be liable for acts by its employees which are not constitutional violations.").  Plaintiffs have not alleged any facts to support the inference that the other arrests were unlawful other than their own self-serving say-so.  And plaintiffs have not any alleged any facts from which the Court can infer that the arrests were related in any way to the ten or more "Principles of Proper Policing of Expressive Speech Activity" (Compl. ¶69) outlined in the Complaint and that those arrests were causally related to deficient training of those principles.

Plaintiffs argue that the dismissal record of other arrestees purportedly shows that most of the people arrested "had not done anything wrong" (Compl. ¶ 62), but that argument fails as a matter of law.  See Higginbotham v. City of New York, 105 F. Supp. 3d 369, 383 (S.D.N.Y. May 12, 2015) (alleged "high percentage of dismissals and declinations of prosecutions" insufficient to state a claim of municipal liability).  Without more alleged in the complaint, plaintiffs' contention is a mere conclusory assertion couched as "fact", which does not satisfy the pleading requirements of Iqbal and Twombly.  Moreover, plaintiffs have not offered any allegations to support the conclusion that the criminal charges against the other arrestees were dismissed because the arrests were unlawful as opposed to the New York County District Attorney's Office dismissing the charges, notwithstanding guilt, out of mercy, convenience, or abdication of prosecutorial responsibilities.  In any event, the dismissal or even acquittal of charges is irrelevant to determining whether there was probable cause for the arrests. Candelario v. City of New York, No. 12 Civ. 1206 (LAP), 2013 WL 13392102, at \*4 (S.D.N.Y. Apr. 3, 2013) (citing Torraco v. Port Autho. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010));

Brown v. City of New York, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004) ("the eventual dismissal of the charges against [plaintiff], does not in itself establish an absence of probable cause to arrest him").  Additionally, the fact that 15% of arrests resulted in guilty pleas or convictions does not further plaintiffs' arguments that these "protestors" were engaged in lawful conduct or that members of the NYPD improperly policed these incidents.  Further, while plaintiffs rely in part on dismissals following adjournments in contemplation of dismissal, such dismissals are not dispositions favorable to the criminal defendant "because [they] leave[] open the question of the accused's guilt." Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002).  For that reason, at least one court in the Eastern District of New York has held that "[plaintiff's] false arrest claim is totally barred" on the separate ground that the prosecution ended with an adjournment in contemplation of dismissal.  (See Sosunov v. City of New York, No. 11 CV 2219 (ENV), Docket Entry No. 26 (Memorandum & Order), at p. 7)

Simply put, neither the arrests nor the dismissals against some of these arrestees relating to the 2011 and 2012 "protests" support the inference that training was inadequate or that the City and its policymakers were on notice of an "obvious" need that members of the NYPD required additional training.

### C.   Citations to Other Civil Actions Relating OWS I and II Do Not Plausibly Allege a Pattern of Constitutional Violations

Plaintiffs' reliance on these other arrests is even more underwhelming when taken in consideration with their related argument that cites as "further proof of [ ] improper policing" the litigations that arose from the alleged OWS-related arrests that occurred between September 17, 2011 and September 17, 2012.  (Compl. ¶¶ 63-65)  This standard argument, which references other Section 1983 lawsuits as purported proof of wrongdoing in the pending case, is routinely rejected by courts in the Second Circuit.  See Matos v. City of New York, No. 10 Civ. 4558

(NG), 2012 U.S. Dist. LEXIS 186250, at *19 (E.D.N.Y. Nov. 30, 2012) ("plaintiff's allegation that the City was aware from 'notice[s], claims, and lawsuits' of [defendant's] propensity to commit constitutional violations is nothing more than a 'legal conclusion couched as a factual allegation'" and "provides no 'factual amplification' from which this court could plausibly infer that the City's deliberate indifference caused plaintiff's injuries").

Plaintiffs allege that 80 separate lawsuits arising out of the approximately 2,644 arrests have been filed and that 17 of these lawsuits were filed before September 15, 2012. (Compl. ¶¶ 64-65)  In the first instance, as set forth above, plaintiffs have not alleged any facts from which this Court may infer that those other arrests were unlawful or concern the same purported training deficiencies as alleged in this complaint.  Additionally, plaintiffs have not alleged sufficient facts necessary to infer the purported statistical significance of these 80 lawsuits.  Assuming that there was on average one plaintiff in each of these lawsuits (and plaintiffs have not alleged any facts to support a contrary inference), 80 lawsuits out of 2,644 arrests represent only 3% of the arrests that occurred from September 2011 to September 2012 related to OWS I and II activities, which is unimpressive.

Further, of those 80 lawsuits, only 17 of those litigations -- which represent less than 1% of the arrests (assuming, again, that there was one plaintiff per lawsuit) -- occurred *before* plaintiffs' arrests on September 15 and September 17, 2012.  This Court, therefore, cannot consider those 63 other lawsuits that were filed after plaintiffs' arrests for the purpose of determining whether the City was on notice of purported training deficiency and, notwithstanding, maintained that program in purported deliberate indifference to the potential risk that plaintiffs' constitutional rights would be violated.  The Supreme Court has held that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates."  Connick,

- 12 -

563 U.S. at 63 n.7.  The rationale underlying that dictate is common sense: "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  Id. at 62.

Plaintiffs also allege that approximately 50 out of the 80 lawsuits have been settled.  (Compl. ¶ 64)  Plaintiffs (incorrectly) trumpet the settlements as proof of wrongdoing, but the existence of another lawsuit is particularly irrelevant where the lawsuit ended in a settlement.  See Rylawn Walker v. City of New York, No. 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410 at *24-25 (S.D.N.Y. July 14, 2015) ("although it is routine for courts to take judicial notice of court documents, they do so 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings'" and therefore it "is not within this Court's purview to assess the veracity of either the claims of outside plaintiffs, or the defenses presented against them in cases that have settled or are pending before other judges.") (quoting Kramer v. Time Warner Inc., 931 F.2d 767, 774 (2d Cir. 1991)); Greenfield v. City of New York, No. 99 Civ. 2330 (AJP), 2000 U.S. Dist. LEXIS 1164, at *38-39 (S.D.N.Y. Feb. 3, 2000) (clause in settlement stipulation that it "shall not be admissible in, nor is it related to, any other litigation or settlement negotiations" "obviously" bars use of terms of settlement in subsequent litigation and also "has unambiguously precluded … using evidence of the outcome of the prior lawsuits" in future litigation) (emphasis in original); Pollard v. City of New York, No. 96 Civ. 5829, 1997 U.S. Dist. LEXIS 15587, at *5-6 (S.D.N.Y. Oct. 9, 1997) (invoking identical language to preclude plaintiff's use of his prior claim against the City to show a pattern of violations to prove municipal policy under Monell).

Settlement agreements without admissions of liability are nothing more than unproven allegations of wrongdoing.  See Ricky Walker v. City of New York, No. 12 Civ. 5902

(PAC), 2014 U.S. Dist. LEXIS 42272, at *8 (S.D.N.Y. March 18, 2014) ("A lawyer's citation to actions she has brought and subsequently settled without adjudication or admission of liability is clearly an insufficient basis for a <u>Monell</u> claim."); <u>Collins v. City of New York</u>, No. 11 CV 766 (FB), 2013 U.S. Dist. LEXIS 21199, at *39 (E.D.N.Y. Feb. 15, 2013) ("the litany of other police-misconduct cases" including "settlements without admissions of liability and unproven allegations" are "insufficient to make a plausible case for <u>Monell</u> liability"); <u>see also</u> <u>RSM Prod. Corp. v. Fridman</u>, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f).").

Finally, plaintiffs' citations to other civil lawsuits against the City of New York are insufficient to satisfy <u>Iqbal</u> and <u>Twombly</u>'s pleading requirements as the Second Circuit has explicitly held that citations to other civil complaints are not sufficient to establish a policy or practice because those suits show only that the allegations were made, not that those violations actually occurred.  <u>See</u> <u>Simms</u>, 480 F. App'x. at 630 (citing to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred"); <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 892-94 (2d Cir. 1976) (holding that, absent adjudication on the merits, prior legal proceedings have no evidentiary bearing in future proceedings); <u>see also</u> <u>Kramer</u>, 937 F.2d at 774 (noting that when courts take judicial notice of documents filed in other suits, they do so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); <u>Tieman v. City of Newburgh</u>, 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703 at *48–49 (S.D.N.Y. Mar. 26, 2015) ("even if the civil complaints involved comparable conduct to that alleged here, 'none result[ed] in an adjudication of

- 14 -

liability'" (quoting <u>Ricky Walker v. City of New York</u>, No. 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at *6-9 (S.D.N.Y. Mar. 18, 2014) (dismissing Monell claim as "plainly insufficient" where complaint cited to 10 unrelated lawsuits)); <u>Spears v. City of New York</u>, No. 10 CV 3461 (JG), 2012 U.S. Dist. LEXIS 145517, at *36-41 (E.D.N.Y. Oct. 9, 2012) (finding that plaintiff failed to state a claim for municipal liability by citing to prior lawsuits); <u>In re CRM Holdings, Ltd.</u>, No. 10 Civ. 975 (RPP), 2012 U.S. Dist. LEXIS 66034, at *78 (S.D.N.Y. May 10, 2012) ("Plaintiffs' citation to 'unproven allegations' made in [other] complaints do not constitute factual allegations."); <u>Low v. Robb</u>, No. 11 Civ. 2321 (JPO), 2012 U.S. Dist. LEXIS 6836, at *26-27 (S.D.N.Y. Jan. 20, 2012) (striking portions of a complaint that referred to unrelated lawsuits despite plaintiff's claim that they establish a "pattern of conduct"); <u>Rasmussen v. City of New York</u>, 766 F. Supp. 2d 399, 409–10 (E.D.N.Y. 2011) (the mere fact that a lawsuit has been filed against an officer fails to "show that there has been *any* violation of constitutional rights, so there is no evidence of the predicate fact underlying the alleged custom and policy") (emphasis in original); <u>Delrosario v. City of New York</u>, No. 07 Civ. 2027 (RJS), 2010 U.S. Dist. LEXIS 20923, at *17-20 (S.D.N.Y. Mar. 4, 2010) (declining to take notice of a similar lawsuit to establish a policy or practice for purposes of <u>Monell</u> claim); <u>Pacheco v. City of New York</u>, 234 F.R.D. 53, 55 (S.D.N.Y. 2006) ("it is doubtful whether unsubstantiated instances of any kind of misconduct can ever be used to prove a <u>Monell</u> claim"); <u>In re Merrill Lynch & Co. Research Reports Sec. Litig.</u>, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("Second Circuit case law makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure"); <u>Sealey v. Fishkin</u>, No. 96 CV 6303 (RR), 1998 U.S. Dist. LEXIS 20142, at *9-10 (E.D.N.Y. Dec. 2, 1998) (unsubstantiated allegations of misconduct do not prove City's deliberate indifference).

### D. Citations to Articles and a Report Relating to OWS I Do Not Support an Inference of Actual Wrongdoing or Notice of Inadequate Training

For similar reasons, plaintiffs' citation to two New York Times articles and a "report" related to OWS I[2] authored by various agenda driven law clinics published less than two months before the OWS II-related arrests (Compl. ¶¶ 8, 51-54, 58, 60) cannot revive plaintiffs' otherwise defunct Monell claim. First, neither of these sources constitutes an adjudication of the merits and instead merely report hearsay (and, at times, hearsay within hearsay) from which the authors extrapolate conclusions. While the Court might be able to take judicial notice of the fact that the statements were made in the articles and one report, the Court may not take those statements for the truth of the matter asserted therein. See Awelewa v. New York City, No. 11 Civ. 778 (NRB), 2012 U.S. Dist. LEXIS 24244, at *9-10 (S.D.N.Y. Feb. 23, 2012) ("[the Court] may of course not use public records to establish the truth of a third-party assertion documented therein"). Therefore, the unproven assertions in these sources do not support a claim of municipal liability. See Hickey v. City of New York, No. 01 Civ. 6506 (GEL), 2004 U.S. Dist. LEXIS 23941, at *72 (S.D.N.Y. Nov. 29, 2004) aff'd, 173 F. App'x 893 (2d Cir. 2006) (granting defendants summary judgment dismissing Monell claim and noting that "[t]he Court cannot, as plaintiffs appear to assume, somehow take judicial notice of a number of highly-publicized episodes of alleged police abuse or brutality, assume without any evidentiary record that these episodes all involved wrongful police behavior and a failure to investigate or punish such behavior, and extrapolate from those assumptions an effect on the present episode.").

Further, plaintiffs have not alleged any facts to connect the purported

---

[2]  While the complaint contains citations to other articles, those articles mostly address other arrests, lawsuits, and settlements, which, as previously argued, is insufficient to support a Monell claim; there is no distinction for the purposes of this Rule 12(b)(6) motion between the complaint referencing a lawsuit and an article that in turns references other lawsuits.

wrongdoings in the articles and report to the alleged misconduct in this case.  Alleging, for example, that Inspector Edward Winski made an improper arrest on September 20, 2011 (Compl. ¶¶ 51-54) does not show that the *same* purported misconduct caused the alleged violations of plaintiffs' constitutional rights in this case and that both resulted from the *same* inadequate training on *specific* Principles of Proper Policing.  Plaintiffs have not alleged any facts to make that inferential leap.  Similarly, the one-sided law school clinic report addresses topics ranging from police use of force, surveillance, eviction from the privately owned Zuccotti Park and closure of spaces, and purported selective enforcement of law.  Plaintiffs have not plausibly alleged that the unproven assertions in the "report" addressing those sweeping topics involve similar constitutional violations as alleged in this case *and* similar purported training deficiencies on the Principles of Proper Policing.  See Connick, 563 U.S. at 62-63 ("Because those incidents are not similar to the violation at issue here, they could not have put Defendant on notice that specific training was necessary to avoid this constitutional violation."; four previous Brady violations could not have put district attorney's office on notice that its training was inadequate because they were "not similar to the [Brady] violation at issue here").  Thus, plaintiffs have failed to allege facts raising a plausible inference of policy or practice of failing to train police officers and also failed to establish a causal connection between the report, purported training deficiencies with respect to the Principles of Proper Policing, and their arrests.

Additionally, while the report (which in substance is more properly characterized as an advocacy statement) cites a number of incidents in support of its conclusions on a variety of topics, neither the report nor plaintiffs allege whether or how many of these incidents were adjudicated and found to be unlawful.  But even multiple incidents of alleged misconduct do not, without more, lead to a plausible inference that the City had a policy or practice of deliberate indifference to the constitutional rights of others.  See Smith v. Martuscello, 602 F. App'x 550,

552 (2d Cir. 2015) ("Though [plaintiff's] amended complaint contains allegations of widespread abuse …, it contains no allegations that the abuse was the result of a policy or custom of deliberate indifference to inmate abuse"); Webb v. Goord, 340 F.3d 105, 109 (2d Cir. 2003) (allegations of "forty discrete incidents of misconduct" did not establish the existence of a policy or practice); Curry v. City of Syracuse, 316 F.3d 324, 330 (2d Cir. 2003) ("a municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees"); Edwards v. City of New York, No. 03 Civ. 9407 (PAC), 2005 U.S. Dist. LEXIS 34376, at *33 (S.D.N.Y. Dec. 19, 2005) (Monell "would be rendered sterile if, as plaintiff asserts, mere conclusory allegations of a few isolated incidents ... were sufficient to hold the municipality liable").

In summary, after stripping away plaintiffs' citations to legally insufficient "facts" and unsupported assertions, the complaint is devoid of any "well-pleaded factual allegations … plausibly giv[ing] rise to an entitlement of relief."  Iqbal, 556 U.S. at 679.  Plaintiffs have not cited any specific facts or documented shortcoming that were known to the City, from which to infer a history of unlawful disorderly conduct arrests that would have put the City on notice that its training was inadequate and, notwithstanding awareness of such misconduct, persisted in adhering to a failed policy.  Connick, 563 U.S. at 61.  Accordingly, plaintiffs' claim of municipal liability should be dismissed.  Triano, 895 F. Supp. 2d at 539 (dismissing Monell claim where plaintiff "merely alleged that the Town failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of [] misconduct which could be attributed to a failure to train").

## II.   DEFENDANTS BLOOMBERG, KELLY, ANGER, ESPOSITO, MCNAMARA, AND PURTELL SHOULD BE DISMISSED FROM THIS ACTION

Plaintiffs have failed to establish that Mayor Bloomberg, Police Commissioner Kelly, Deputy Chief Anger, Chief of Patrol Esposito, Deputy Chief McNamara, and Chief Purtell were sufficiently involved in the acts upon which plaintiffs base their Section 1983 claims.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite" to a Section 1983 claim.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citation omitted).  "'There is no respondeat superior liability in § 1983 cases.'"  Parris v. New York State Dep't of Corr. Servs., 947, F. Supp. 2d 354, 364 (S.D.N.Y. 2013).  Supervisory officials, therefore, "'cannot be held liable solely on account of the acts or omissions of his or her subordinates.'"  Downing v. City of New York, No 13 Civ. 4247 (KBF), 2013 U.S. Dist. LEXIS 145483, at *6 (S.D.N.Y. Oct. 3, 2013) (quoting Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801 (SAS), 2009 U.S. Dist. LEXIS 54141 (S.D.N.Y. Jun. 26, 2009)).  Instead, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  Parris, 947 F. Supp. 2d at 364 (quoting Iqbal, 556 U.S. at 676).  Accordingly, Mayor Bloomberg, Police Commissioner Kelly, and the Chief Defendants should be dismissed from this action.

Insofar as plaintiffs intended to bring a Monell supervision claim or supervisory liability claim against Mayor Bloomberg, Police Commissioner Kelly, and the Chief Defendants, the Complaint did not assert a cause of action for such a claim.  Had plaintiffs asserted a cause of action against them, for the purposes of establishing supervisory liability, courts in the Second Circuit have been divided over which of the factors articulated in Colon v. Coughlin, 58 F.3d

865 (2d Cir. 1995)[3], survive in light of the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  <u>Compare</u> <u>Bellamy</u>, 2009 U.S. Dist. LEXIS 54141, at *27 ("<u>Iqbal</u>'s 'active conduct' standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation.  Only the first and part of the third <u>Colon</u> categories pass <u>Iqbal</u>'s muster -- a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred.") <u>with</u> <u>Martinez v. Perilli</u>, No. 09 Civ. 6470 (WHP), 2012 U.S. Dist. LEXIS 3247, at *10 (S.D.N.Y. Jan. 5, 2012) ("the five <u>Colon</u> categories still apply after <u>Iqbal</u>."); <u>see</u> <u>also</u> <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 139 (2d Cir. 2013) (noting that <u>Iqbal</u> "may have heightened the requirements for showing a supervisor's personal" but declining to decide).  Regardless which of <u>Colon</u> factors survive <u>Iqbal</u>, plaintiffs fails to state a claim against Mayor Bloomberg, Police Commissioner Kelly, and the Chief Defendants.

   <u>First</u>, the Complaint does not allege any facts that support the inference that Mayor Bloomberg, Police Commissioner Kelly, or any of the Chief Defendants participated directly in the alleged false arrests.  Plaintiffs make specific claims about the individual defendants only with respect to their respective titles and general professional responsibilities and with respect to the Chief Defendants' responsibilities on September 17, 2012.  (<u>See</u> Compl.

---

[3] In <u>Colon v. Coughlin</u>, 58 F.3d 865 (2d Cir. 1995), the Second Circuit held that a plaintiff may state a claim for supervisory liability in a § 1983 case when the plaintiff alleges that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." <u>Id.</u> at 873.

¶¶ 30-35, 91-99)  But the mere fact that Mayor Bloomberg, Police Commissioner Kelly, and the Chief Defendants occupied high positions in the hierarchy is insufficient to impose supervisory liability for the arrests effectuated by other officers.  See Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995) (dismissing claim against Commissioner of New York State Department of Correctional Services because "[t]he bare fact that [he] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim"); 5 Borough Pawn, LLC. v. City of New York, No. 08 Civ. 3837 (CM), 2009 U.S. Dist. LEXIS 54069, at *64 (S.D.N.Y. June 22, 2009) (dismissing as "wholly unpersuasive" claim that Police Commissioner Kelly displayed indifference to constitutional violations and acquiesced to illegal activity); Barrington v. Johnson, No. 06 Civ. 2234 (SAS), 2006 U.S. Dist. LEXIS 86354, at *5-*6 (S.D.N.Y. Nov. 27, 2006) (dismissing claims against Police Commissioner Kelly where complaint failed to allege that he was personally involved in the constitutional violation).

Second, although the Complaint repeatedly asserts variations of the conclusory allegation that Mayor Bloomberg, Police Commissioner Kelly, and the Chief Defendants showed deliberate difference to the rights of Occupy Wall Street "protestors" and to inadequate training on policing protests (Compl. ¶¶ 78-82), the Complaint does not actually allege any facts to support the inference that the individual defendants were actually aware of constitutional violations or the risk of constitutional violations and, notwithstanding, did nothing to remedy the purported problem.  Inasmuch as plaintiffs rely on the arrests, prosecutions, and litigations that occurred in connection with OWS I, as stated supra Part I.B. & C., those irrelevant facts and unsubstantiated allegations cannot withstand a Rule 12(b)(6) motion to dismiss.  See Simms v. City of New York, 480 F. App'x. 627, 630 (2d Cir. 2012).

Third, plaintiffs repeatedly assert the conclusory allegation that there was an unconstitutional policy, practice or custom of inadequate training on the Principles of Proper

Policing, but as stated in more detail in the Monell analysis, the Complaint admits that officers received such training (although it bemoans that the officers allegedly required more training) and fails to allege any facts from which to infer the existence of any purported policy, practice or custom of inadequate training that caused plaintiffs' alleged constitutional injuries.  See Jones v. Roosevelt Island Operating Corp., No. 13 Civ. 2226 (JSR), 2013 U.S. Dist. LEXIS 174171, at *12-13 (S.D.N.Y. Dec. 7, 2013) (granting motion to dismiss because "while there are general allegations of a policy or custom in which unconstitutional practices occurred, plaintiff offers no concrete evidence or even a suggestion of such evidence in the Complaint.").

Fourth, the Complaint does not allege any facts to support the inference that Mayor Bloomberg, Police Commissioner Kelly, or any of the Chief Defendants was grossly negligent in supervising any of the officers who arrested plaintiffs.  See Parris, 947 F. Supp. 2d at 364 ("[C]onclusory, unsupported allegations [of gross negligence or the existence of a policy] are simply insufficient to establish liability of supervisory prison officials under § 1983.") (alterations in original) (internal quotation marks and citation omitted).

Finally, as the Complaint does not allege any facts indicating a pattern of constitutional violations (as required by Connick) or that the training of NYPD officers was inadequate and, notwithstanding knowledge of such deficiencies, Mayor Bloomberg, Police Commissioner Kelly, and the Chief Defendants failed to act to remedy the inadequate training, plaintiffs fail to adequately plead that the individual defendants were deliberately indifferent. See Jones, 2013 U.S. Dist. LEXIS 174171, at *13 ("the plaintiff fails to plead that there was any deliberate indifference on these defendants' part because plaintiff has not pleaded that the defendants were even aware of the unconstitutional acts").

### III.  PLAINTIFFS' FALSE ARREST CLAIM SHOULD BE DISMISSED

Plaintiffs allege that they were arrested, but they fail to allege any factual basis to support the legal conclusion that they were "falsely arrested".  Without more context than that provided in the Complaint, plaintiffs' allegations "do not permit the court to infer more than the mere possibility of misconduct" and, therefore, do not show that plaintiffs are entitled to relief.  Iqbal, 556 U.S. at 679.

Further, insofar as the Complaint could be construed to state a false claim against Mayor Bloomberg, Police Commissioner Kelly, or the Chief Defendants, the claim against them should be dismissed because there are no allegations in the Complaint that they participated in, ordered, or otherwise had any personal involvement in plaintiffs' arrest.

Alternatively, to the extent that the Court finds that plaintiffs sufficiently alleged false arrest, personal involvement and/or a Monell supervision claim, each of the defendants are entitled to qualified immunity on those claims.  See Hunter v. Bryant, 502 U.S. 224, 229 (1991) (the qualified immunity standard "gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law'").  The defendants did not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known" and plaintiffs have not alleged any facts to the contrary.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lennon v. Miller, 66 F.3d 416, 420 (2d. Cir. 1995) ("Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act.").

## <u>CONCLUSION</u>

For the foregoing reasons, defendants City of New York, Michael Bloomberg, Raymond Kelly, Joseph Esposito, Thomas P. Purtell, Steven Anger, and James McNamara request that the Court grant their motion pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, and for any other fair and equitable relief that the Court may deem appropriate.

Dated:       New York, New York
             February 18, 2016

ZACHARY W. CARTER
Corporation Counsel of the
   City of New York
*Attorney for Defendants City of New York, Michael Bloomberg, Raymond Kelly, Joseph Esposito, Thomas P. Purtell, Steven Anger, and James McNamara*
100 Church Street, 3rd Floor
New York, New York 10007
(212) 356-3522


By:      _____/s/_____
         Gary Moy
         *Senior Counsel*

- 24 -

cc:   <u>VIA ECF</u>
      Jeffrey G. Smith, Esq.
      Janine L. Pollack, Esq.
      Kevin G. Cooper, Esq.
      Wolf Haldenstein Adler Freeman & Herz LLP
      270 Madison Avenue
      New York, New York 10016

      Wylie M. Stecklow, Esq.
      David A Thompson, Esq.
      Stecklow & Thompson
      217 Centre Street, 6th Floor
      New York, New York 10013