Index No.  15 Civ. 7130 (AT)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE PACKARD, EDWARD BECK, MICHELLE
BERGER, ARI COWAN, CONNOR HICKS, CHARLES
MEACHEM, CHRIS PHILLIPS, LARRY SWETMAN
and AMADON DELLERBA, individually and on behalf
of all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK, a municipal entity,
FORMER NYPD CHIEF OF PATROL JOSEPH
ESPOSITO, FORMER NYPD COMMISIONER RAY
KELLY, FORMER MAYOR MICHAEL
BLOOMBERG, NYPD CHIEF THOMAS P. PURTELL,
NYPD DEPUTY CHIEF STEVEN ANGER, NYPD
DEPUTY CHIEF JAMES MCNAMARA,

Defendants

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Michael Bloomberg, Ray Kelly, Joseph*
*Esposito, Thomas P. Purtell, Steven Anger,*
*and James McNamara*
*100 Church Street*
*New York, New York  10007*

*Of Counsel:  Gary Moy*
*Tel:  (212) 356-3522*

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT

      I.      PLAINTIFFS HAVE FAILED TO STATE A CLAIM OF MUNICIPAL LIABILITY UNDER EITHER THEORY OF FAILUIRE TO TRAIN OR A PURPORTED PERVASIVE CUSTOM OR PRACTICE ................................................................................ 2

            A.  Plaintiffs' Five "Pillars" Do Not Plausibly Allege a Pervasive Practice of Unlawfully Arresting Protestors or a Failure to Train .......................................... 2

            B.  Plaintiffs Have Failed to Allege a Specific Deficiency in Training .................................................................. 14

      II.     PLAINTIFFS HAVE NOT ASSERTED A FIRST AMENDMENT CLAIM .......................................................................... 16

      III.    DEFENDANTS BLOOMBERG, KELLY, ANGER, ESPOSITO, MCNAMARA, AND PURTELL SHOULD BE DISMISSED FROM THIS ACTION .............................................................................. 16

CONCLUSION ............................................................................................................... 16

**Statutes**                                                                                          **Pages**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Amnesty America v. Town of West Hartford,
  361 F.3d 113 (2d Cir. 2004)..................................................................................15

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..............................................................................................5

Battle v. City of New York,
  No. 11 Civ. 3599 (RMB),
  2012 U.S. Dist. LEXIS 5256 (S.D.N.Y. Jun. 26, 2009) ......................................13

Broughton v. State of New York,
  373 N.Y.S.2d 87 (1975)......................................................................................2, 3

Calderon v. City of New York,
  No. 14 Civ. 1082 (PAE)
  2015 U.S. Dist. LEXIS 135620 (S.D.N.Y. Oct. 5, 2015) ..................................7, 15

Chamberlain v. City of White Plains,
  986 F. Supp. 2d 363 (S.D.N.Y. 2013)....................................................................6

Connick v. Thompson,
  563 U.S. 51 (2011)..........................................................................................2, 9, 13

Fiacco v. City of Rensselaer,
  783 F.2d 319 (2d Cir. 1986)...................................................................................7

Garcia v. Bloomberg,
  865 F. Supp. 2d 478 (S.D.N.Y. 2012).....................................................................8

Garcia v. Bloomberg,
  No. 11 Civ. 6957 (JSR),
  2015 U.S. Dist. LEXIS 123407 (S.D.N.Y. Sept. 9,. 2015)......................................8

Garcia v. Doe,
  774 F.3d 168 (2d Cir. 2014)...................................................................................8

Garcia v. Doe,
  779 F.3d 84 (2d Cir. 2014).....................................................................................8

**Cases**                                                    **Pages**

Gonzalez v. City of New York,
No. 14 Civ. 7721 (LGS)
2015 U.S. Dist. LEXIS 151810 (S.D.N.Y. Nov. 9, 2015) ......................................................11

Green v. City of Mt. Vernon,
96 F. Supp. 3d 263 (S.D.N.Y. 2015) ........................................................................................3

Marom v. City of New York,
No. 15 Civ. 2017 (PKC),
2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016) ...................................................3, 11

Morris v. City of New York,
No. 12 Civ. 3959 (JG)
2013 U.S. Dist. LEXIS 154528 (E.D.N.Y. Oct. 28, 2013) .....................................................4

Okin v. Vill. of Cornwall-on-Hudson Police Dep't,
577 F.3d 415 (2d Cir. 2009) ...................................................................................................12

Papineau v. Parmley,
465 F.3d 46 (2d Cir. 2006) ......................................................................................................14

Rasmussen v. City of New York,
766 F. Supp. 2d 399 (E.D.N.Y. 2011) ......................................................................................4

Ricky Walker v. City of New York,
No. 12 Civ. 5902 (PAC),
2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. March 18, 2014) .....................................................4

Simms v. City of New York,
480 F. App'x 627 (2d Cir. 2012) ........................................................................................3, 15

Simms v. City of New York,
2011 U.S. Dist. LEXIS 115949 (E.D.N.Y. Sept. 28, 2011) .....................................................5

Tieman v. City of Newburgh,
13 Civ. 4178 (KMK),
2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) ....................................................3-4

Triano v. Town of Harrison,
152 F.3d 169 (2d Cir. 1998) ...................................................................................................15

Wright v. Ernst & Young LLP,
152 F.3d 169 (2d Cir. 1998) .....................................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------  x

GEORGE PACKARD, EDWARD BECK, MICHELLE
BERGER, ARI COWAN, CONNOR HICKS, CHARLES
MEACHEM, CHRIS PHILLIPS, LARRY SWETMAN and
AMADON DELLERBA, individually and on behalf of all
others similarly situated,

No. 15 Civ. 7130 (AT)

                                      Plaintiffs,

                  - against -

THE CITY OF NEW YORK, a municipal entity, FORMER
NYPD CHIEF OF PATROL JOSEPH ESPOSITO,
FORMER NYPD COMMISIONER RAY KELLY,
FORMER MAYOR MICHAEL BLOOMBERG, NYPD
CHIEF THOMAS P. PURTELL, NYPD DEPUTY CHIEF
STEVEN ANGER, NYPD DEPUTY CHIEF JAMES
MCNAMARA,

                                    Defendants.

---------------------------------------------------------------------  x

**REPLY MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PURSUANT TO RULE 12(B)(6) OF
THE FEDERAL RULES OF CIVIL
PROCEDURE**

# PRELIMINARY STATEMENT[1]

Plaintiffs' opposition memorandum is riddled with outrage; plaintiffs bemoan, for example, that defendants "trot[] out threadbare anti-*Monell* arguments", "seek to obfuscate the issue before the Court", and "reprehensibly throw the New York District Attorneys' Office under the bus" and "impugn their colleagues".  But it is defendants who should be outraged -- that plaintiffs, through their counsel, misstate defendants' arguments and pervert their statements and persist in invoking "Occupy Wall Street" to pursue a <u>Monell</u> claim, even as the Second Circuit has determined that *hundreds* of these arrests were lawful and even though counsel has abandoned their <u>Monell</u> claim in another Occupy Wall Street action[2] (thereby tacitly acknowledging that there is no widespread police misconduct in handling protest situations).

Plaintiffs rely on a series of interlocking premises to support the claim that their five "pillars" of facts state a claim of municipal liability: they argue erroneously, for example, that defendants are applying a summary judgment standard to a motion to dismiss; that the Court should therefore disregard cases that defendants presented; that, in disregarding those cases, the Court can and should instead presume that OWS-related protestors were unlawfully arrested between September 17, 2011 and September 17, 2012; and that the number of arrests and rate of dismissals of those alleged presumptive unlawful arrests therefore show a widespread practice of unlawful arrests and failure to train.  But each of these premises is false and, therefore, the five

---

[1] Capitalized terms used but not defined herein have the meanings set forth in Defendants' Memorandum of Law in Support of Motion to Dismiss the Complaint ("Memo."), Docket Entry No. 41, or Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Memo."), Docket Entry No. 45.

[2] <u>See</u> <u>Wiles v. City of New York</u>, No. 13 Civ. 2898 (VSB) (SDNY), Docket Entry No. 155 at p.1 (reply memorandum noting that plaintiff, through counsel Stecklow & Thompson, abandoned municipal liability claim because counsel in the opposition memorandum did not respond to defendants' arguments for dismissal).

"pillars" of facts upon which plaintiffs rely are too hollow to withstand a Rule 12(b)(6) motion to dismiss.

## ARGUMENT

I.    **PLAINTIFFS HAVE FAILED TO STATE A CLAIM OF MUNICIPAL LIABILITY UNDER EITHER THEORY OF FAILUIRE TO TRAIN OR A PURPORTED PERVASIVE CUSTOM OR PRACTICE**

A.    **Plaintiffs' Five "Pillars" Do Not Plausibly Allege a Pervasive Practice of Unlawfully Arresting Protestors or a Failure to Train[3]**

Plaintiffs allege that approximately 2,644 arrests occurred between September 17, 2011 and September 17, 2012 and that approximately 409 or 15% of those arrests resulted in a plea or conviction.  (Compl. ¶ 61)  As stated in Defendants' Memorandum of Law, plaintiffs' reliance on the other arrests fails because plaintiffs do not plead any facts from which to infer that the arrests were actually instances of *unlawful* and *similar* arrests and that those arrests were caused by *similar* unconstitutional conduct (*i.e.*, purported misapplication of the disorderly conduct statute to protestors) resulting from *similar* inadequate training in the "Principles of Proper Policing of Expressive Speech Activity".  See Connick v. Thompson, 563 U.S. 51, 62 (2011) (requiring a pattern of similar constitutional violations).

In plaintiffs' opposition memorandum, they argue that each of the 2,235 arrests that did not result in a conviction or guilty plea is entitled to a presumption of unlawfulness. This argument, which is a premise used repeatedly in their opposition memorandum, is incorrect. Plaintiffs rely on Broughton v. State of New York, 373 N.Y.S.2d 87 (N.Y 1975), wherein the

---

[3]   Defendants do not read in the complaint a claim for municipal liability under a theory of an informal, widespread custom or practice.  Plaintiffs in a footnote in their opposition memorandum, however, stated that they are pursuing a Monell claim under theories of a failure to train and an informal widespread practice.  (Opp. Memo. at 2 n.1)  Defendants respectfully submit that the arguments raised in their Memorandum of Law apply equally to their argument that plaintiffs failed to allege sufficient facts to infer a pervasive, unlawful practice.

New York Court of Appeals stated that "it is not necessary to allege want of probable cause in a false imprisonment action" because there is a presumption that arrests without a warrant are unlawful.  Id. at 94-95.  The court in Broughton continued, noting that "[a]s a matter of pleading the defendant has the burden of proving legal justification as an affirmative defense[,]" for example, "by showing that the arrest was based on probable cause."  Id. at 95.  Broughton is a 1975 decision by a New York State court about a plaintiff's pleading requirements for a state law tort; this state law case does not allow plaintiffs to argue, in an Iqbal and Twombly world applying federal pleading standards, that they stated a Monell claim by merely reciting a list of arrests, lawsuits, or settlements -- without pleading any facts showing adjudication of liability -- because those arrests of non-parties are allegedly presumptively unlawful under Broughton.  On that basis, plaintiffs argue, for example, that the complaint's reference to the RNC litigations and settlement states a Monell claim because, although the City did not admit to liability for the arrests, the City purportedly has the burden of proving that there was probable cause underlying those arrests.  (Opp. Memo. at 32)

Plaintiffs' extrapolation of Broughton is *irreconcilable* with current case law.  See Simms, 480 F. App'x 627, 630 (2d Cir. 2012) (citing to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred"); Marom v. City of New York, No. 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *76-77 (S.D.N.Y. Mar. 7, 2016) (dismissing Monell claim because "the allegations regarding the RNC protests are plaintiffs' own conclusions, unsupported by facts, that the NYPD's actions in 2004 caused a substantial number of constitutional violations"); Green v. City of Mt. Vernon, 96 F. Supp. 3d 263, 304 (S.D.N.Y. 2015) (noting that though similar complaints may have been filed in the cases cited by plaintiffs, none resulted in an adjudication of liability"); Tieman v. City of Newburgh, No. 13 Civ. 4178

(KMK), 2015 U.S. Dist. LEXIS 38703 at *48–49 (S.D.N.Y. Mar. 26, 2015) (dismissing <u>Monell</u> claim because "even if the civil complaints involved comparable conduct to that alleged here, 'none result[ed] in an adjudication of liability'"); <u>Ricky Walker v. City of New York</u>, No. 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at *8 (S.D.N.Y. March 18, 2014) ("A lawyer's citation to actions she has brought and subsequently settled without adjudication or admission of liability is clearly an insufficient basis for a <u>Monell</u> claim."); <u>Morris v. City of New York</u>, No. 12 Civ. 3959 (JG), 2013 U.S. Dist. LEXIS 154528 (E.D.N.Y. Oct. 28, 2013) ("The fact that two of the defendants as well as a non-defendant supervising officer have had civil suits brought against them in the past that resulted in settlements is not even evidence of wrongdoing, let alone that the City has a custom or policy that fosters or results in wrongdoing."); <u>Rasmussen v. City of New York</u>, 766 F. Supp. 2d 399, 409–10 (E.D.N.Y. 2011) (the mere fact that a lawsuit has been filed against an officer fails to "show that there has been *any* violation of constitutional rights, so there is no evidence of the predicate fact underlying the alleged custom and policy").  Plaintiffs have not cited any cases in the last 40 years since <u>Broughton</u> that have followed plaintiffs' sweeping approach.  Evidently, plaintiffs would have this Court to be the first to pioneer a new standard for satisfying <u>Monell</u> claims.

Plaintiffs further argue that the dismissal rate of other arrestees purportedly shows that most of the people arrested "had not done anything wrong."[4]  (Compl. ¶ 62)  Plaintiffs accuse defendants of "obstinacy" in refusing to acknowledge that there is a purported need to change the training of NYPD officers.  Plaintiffs further accuse defendants of "reprehensibly throw[ing]" the New York County District Attorney's Office "under the bus" by arguing that the

---

[4]  Plaintiffs expend two pages refuting an argument that defendants did not make – namely, that defendants allegedly argued that a high rate of dismissal can never support a <u>Monell</u> claim. (Opp. Memo. at 19-20).

District Attorney's Office might have dismissed criminal charges out of convenience or an abdication of prosecutorial responsibilities.  Plaintiffs selectively quote defendants out of context and misstate defendants' argument.

Criminal charges may be dismissed for any number of possible reasons, many of which have no implications on the lawfulness of the underlying arrest. That is common sense. The reason for the dismissal may have different implications of the arrestee's guilt or innocence. Defendants argued that plaintiff failed to allege any facts from which the Court could make any reasonable inferences about the dismissals; therefore, there are not enough facts for this Court to infer whether criminal charges against the other arrestees were dismissed because the arrests were unlawful or whether the New York County District Attorney's Office dismissed the charges, notwithstanding guilt, for a number of possible reasons – including, but not limited to, convenience or abdication of responsibilities but also mercy in light of the arrestee's prior arrest history and/or the severity of the violation of crime.  (Memo. at 10)  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citation and internal quotation marks omitted).  The dismissal rate, without more, does not establish that there was a custom or practice of unlawful arrests for disorderly conduct.

Perhaps recognizing that deficiency, plaintiffs introduce new allegations outside the complaint, which purportedly show that 39.7% of all arrests disposed of in New York County in 2014 resulted in dismissal, adjournment in contemplation of dismissal or declined prosecution. (Opp. Memo. at 17).   Plaintiffs compare the 39.7% rate with the alleged 85% dismissal rate of OWS-related arrests and ask this Court to infer that OWS-related dismissals show that the arrests were unlawful.  (Opp. Memo. at 17)  In the first instance, neither the 39.7% dismissal rate nor

the source upon which plaintiffs rely was alleged in the complaint and plaintiffs cannot amend their complaint through an opposition memorandum.  Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 390 n.19 (S.D.N.Y. 2013) ("It is well established that 'a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998))).  Accordingly, the Court should disregard that argument for the purposes of this motion to dismiss.  In any event, and setting aside for the moment that the Second Circuit has found several hundred of these arrests at issue to be lawful, plaintiffs' argument does not plausibly support a Monell claim.

Plaintiffs cite the New York State Division of Criminal Justice Services, which provides summaries, in the form of charts, of New York Count adult arrests dispositions.  The summaries are organized by four categories: (i) felonies; (ii) violent felonies; (iii) drug felonies; and (iv) misdemeanors. (See Disposition of New York Adult Arrests, available at http://www.criminaljustice.ny.gov/crimnet/ojsa/dispos/newyork.pdf)  As plaintiffs do not identify which of the four charts they are citing and do not otherwise provide a specific pin cite, defendants have not found the alleged 39.7% rate that plaintiffs reference.  There is, moreover, a more critical flaw to plaintiffs' argument: they are inappropriately making comparisons based on different sample sets.  The charts reference dismissal rates for various types of felonies and misdemeanors.  Unsurprisingly, the rate of dismissal varies significantly between, for example, violent felonies (e.g., 3.6% adjourned in contemplation of dismissal in 2014) and misdemeanors (e.g., 28.3% adjourned in contemplation of dismissal in 2014).  There are, of course, a variety of reasons why the District Attorney's Office is more likely to offer adjournments in contemplation of dismissals in misdemeanor cases than in more serious violent felony cases.  Therefore, the difference in the rate of dismissals and declined prosecutions do not support any inference as to the purported lawfulness of those arrests.

Similarly, in this case, plaintiffs argue that there is a purported practice of NYPD officers misapplying the disorderly conduct statute to protestors.  (Opp. Memo. at 5-6)  New York Penal Law § 240.20 provides that disorderly conduct is a violation.  The summaries cited by plaintiffs, however, provide arrests dispositions only for felonies and misdemeanors.  Accordingly, the Court may not draw any inferences between the alleged dismissal rates of OWS-related disorderly conduct arrests with the dismissal rates cited by plaintiffs.  Stated more colloquially, it would be inappropriate to compare apples and oranges.  Instead, insofar as plaintiffs are looking to draw inferences from dismissal rates, the proper comparison is the rate of dismissal of non-OWS disorderly conduct arrests in New York County or, at the very least, dismissal rates for violations.

In addition to the number of arrests and dismissals, plaintiffs argue that the subsequent litigations reflect a widespread practice of unlawful disorderly conduct arrests and failure to train.  As set forth in Defendants' Memorandum of Law, plaintiffs allege that 80 litigations arising out of OWS I and II arrests have been filed, but only the 17 litigations that were filed before OWS II can be considered for the Court's municipal liability analysis (Memo. at 12-13), which 17 litigations are insufficient to state a Monell claim.[5]  See Calderon v. City of New York, No. 14 Civ. 1082 (PAE), 2015 U.S. Dist. LEXIS 135620 (S.D.N.Y. Oct. 5, 2015) (dismissing Monell claim that cited 16 cases against the City), reconsideration in part granted on other grounds, 2015 U.S. Dist. LEXIS 141818 (S.D.N.Y. Oct. 19, 2015).  Further, plaintiffs'

---

[5]  Plaintiffs rely on Fiacco v. City of Rensselaer, 783 F.2d 319 (2d Cir. 1986) to argue that they can cite to third party complaints to satisfy failure-to-train pleading requirements.  (Opp. 31-32)  In the past 30 years, there have been many motions to dismiss Monell claims.  Yet, plaintiffs do not cite any cases within the last 30 years that have denied a motion to dismiss by relying on Fiacco.  Fiacco is inapposite; the case concerns evidentiary matter for which the court held that a police chief's failure to investigate various complaints, together with his failure to develop a police on permissible use of force, could show deliberate indifference in a failure to train case.  See id. at 329-31.

argument is undercut by the Second Circuit's decision in <u>Garcia v. Doe</u>, 779 F.3d 84 (2d Cir. 2014), wherein the Second Circuit determined that NYPD officers had probable cause to arrest over *seven hundred* OWS protestors.  <u>Id.</u> at 92.

In <u>Garcia</u>, plaintiffs brought a putative class action relating to their October 1, 2011 arrests during a march from Zuccotti Park over the Brooklyn Bridge to Brooklyn, New York.  Judge Rakoff originally denied in part defendants' motion to dismiss the complaint, holding that the individual defendants were not entitled to qualified immunity.  <u>See</u> <u>Garcia v. Bloomberg</u>, 865 F. Supp. 2d 478 (S.D.N.Y. 2012).  On appeal, a Second Circuit panel initially affirmed.  <u>See</u> <u>Garcia v. Doe</u>, 774 F.3d 168 (2d Cir. 2014).  But after the Second Circuit as a whole decided to hear the case *en banc*, the panel withdrew the initial affirmance and then reversed Judge Rakoff's decision with instructions to dismiss the complaint.  <u>See</u> <u>Garcia v. Doe</u>, 779 F.3d 84 (2d Cir. 2014).  The Second Circuit determined that NYPD officers "had sufficient evidence to establish cause on each of the elements of a disorderly conduct violation."  <u>Id.</u> at 92. Although the issue on appeal addressed the qualified immunity issue, "the Second Circuit repeatedly made clear that its analysis applied to the law of probable cause, as well as the law of qualified immunity."  <u>Garcia v. Bloomberg</u>, No. 11 Civ. 6957 (JSR), 2015 U.S. Dist. LEXIS 123407, at *9 (S.D.N.Y. Sept. 9, 2015).  Thus, while plaintiffs repeatedly bemoan that 2,644 OWS protestors were arrested between September 17, 2011 and September 17, 2012, involving 2,235 dismissals or declined prosecutions, *over 700* arrests (in addition to the 409 guilty pleas and convictions) must be discounted from plaintiffs' analysis.

The number of arrests upon which plaintiffs may rely to support their <u>Monell</u> claim must be further whittled down to exclude the approximately 180 arrests that occurred during the OWS II protests because those arrests could not have put the City and its policymakers on notice that a deficient training program or a purported widespread problem

- 8 -

before plaintiffs' arrests.  See Connick, 563 U.S. 63 n.7 ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates").  Further, out of the remaining arrests, plaintiffs may rely only on disorderly conduct arrests (as opposed to arrests for *e.g.*, trespass, violating park rules, or Obstruction of Governmental Administration) because plaintiff must show a pattern of *similar* constitutional violations resulting from *similar* inadequate training. See Connick, 563 U.S. at 62.  Plaintiffs, however, have not alleged any facts from which to infer the number of disorderly conduct-related arrests, dismissals, and litigations; therefore, the significance of the statistics offered by plaintiffs is too ambiguous to plausibly state a claim of municipal liability.

Rather, Garcia represents a significant number of arrestees for whom there was probable cause to arrest, and there have been other OWS-related false arrest claims that have been dismissed in litigation, including the following[6]:

- Carpenter v. City of New York, No. 11 Civ. 8414 (DLC) (SDNY) (See Opinion & Order, dated November 27, 2013, holding that there was probable cause for plaintiffs' arrests, Docket Entry No. 53);

- Thimmesch v. City of New York, No. 12 Civ. 8882 (KBF) (SDNY) (See Decision & Order, April 9, 2013, holding that there was probable cause for plaintiff's arrest, Docket Entry No. 11);

- Lebowitz v. City of New York, No. 12 Civ. 8982 (JSR) (SDNY) (See

---

[6] False arrest claims were dismissed or withdrawn in several other cases that were premised on the October 1, 2011 arrests at issue in Garcia.  See Adkins v. City of New York, No. 14 Civ. 7519 (JSR) (SDNY) (Opinion & Order, holding that there was probable cause for arrest, Docket Entry No. 14); Savoy v. City of New York, No. 14 Civ. 7955 (JSR) (SDNY)  (Order, noting that plaintiff withdrew his claim in its entirety, Docket Entry No. 17).

Memorandum Order, dated February 25, 2014, holding that there was probable cause for plaintiff's arrest, Docket Entry No. 40);

- Hessler v. City of New York, No. 13 Civ. 821 (NRB) (SDNY) (See Judgment, dated September 14, 2015, noting that one defendant was dismissed during trial and that the jury returned a special verdict for the remaining defendants, Docket Entry No. 61);

- Brown v. City of New York, No. 13 Civ. 1018 (KBF) (SDNY) (See Opinion & Order, dated June 18, 2014, holding that there was probable cause to arrest plaintiff for disorderly conduct, Docket Entry No. 64);

- Shamir v. City of New York, No. 13 Civ. 5652 (CM) (SDNY) (See Memorandum Decision & Order, dated August 27, 2014, holding that there was probable cause for plaintiff's arrest, Docket Entry No. 20);

- Caravalho v. City of New York, No. 13 Civ. 4178 (PKC) (SDNY) (See Memorandum & Order, dated March 31, 2016, holding that there was probable cause to arrest the nine plaintiffs for disorderly conduct, Docket Entry No. 213);

- Pesola v. City of New York, No. 15 Civ. 1917 (PKC) (SDNY) (See Memorandum & Order, dated March 30, 2016, holding that there was probable cause to arrest plaintiff for disorderly conduct, Docket Entry No. 32); and

- Allen v. City of New York, No. 15 Civ. 1918 (PKC) (SDNY) (See Memorandum & Order, dated March 30, 2016, holding that there was probable cause to arrest plaintiff for disorderly conduct, Docket Entry No. 35).

Plaintiffs concede that they have not alleged any adjudications of liability against

members of the NYPD for improper RNC or OWS-related disorderly conduct arrests.  (See Opp. Memo. at 32)  Nonetheless, plaintiffs urge this Court to infer wrongdoing from the arrests and dismissals, even though the litigations in Garcia and the above cited cases vindicate the arrests and show that a significant number of the dismissals resulted not from the arrestees' purported innocence but from the District Attorney's Office's mercy.

Plaintiffs also urge this Court to rely on a "report" drafted by several law school clinics, which addresses a number of purported issues.  As stated in Defendants' Memorandum of Law, the clinic paper is a one-sided advocacy piece that reflects the accusations of complainants; the paper is not a product of a formal investigation imbued with the legitimacy and thoroughness of, for example, a United States Department of Justice report.  At least two other courts in this district have recently considered and rejected this same paper for the purposes of establishing municipal liability.  In Gonzalez v. City of New York, No. 14 Civ. 7721 (LGS), 2015 U.S. Dist. LEXIS 151810 (S.D.N.Y. Nov. 9, 2015), Judge Schofield on a motion to dismiss noted that while the paper "cites a number of incidents that it states 'raise concerns' about excessive or unnecessary use of force, even multiple incidents of misconduct do not without more lead to a plausible inference that the City had adopted a policy of suppressing public protest."  Id. at *24.

The law school clinic paper was also presented in support of a Monell claim in Marom v. City of New York, No. 15 Civ. 2017 (PKC), 2015 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016).  In Marom, Judge Castel rejected the law clinic report on the grounds that "[n]either a newspaper report nor an academic paper reporting on incidents that ought to be investigated is a showing of anything entitled to a presumption of truth" and held that "plaintiffs fail to plausibly allege that there is a history of the NYPD mishandling mass protesting situations on a scale that could be reasonably construed as setting out a pattern or practice of constitutional

abuse." Id. at *76-77.  For similar reasons, plaintiffs' citation to a few newspaper articles about a handful of unsubstantiated incidents does not plausibly allege a Monell claim.

Finally, with respect to the remaining "pillar" of facts, plaintiffs allege that then-Deputy Inspector Winski testified that First Amendment-protected activity has no bearing on the manner with which disorderly conduct is charged against them, which plaintiffs contend is "in contravention of established legal precedent" and, in turn, purportedly demonstrates deficient training and deliberate indifference to protestors' civil rights.  (Opp. Memo. at 7)  In the first instance, Deputy Inspector Winski is *one* person out of over 30,000 police officers.  Plaintiff engages in a logical fallacy, arguing without any support in the complaint that Deputy Inspector Winski's testimony is representative of the universe of NYPD officers' understanding and training.   The cases upon which plaintiffs rely for that inferential leap are inapposite.

In Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415 (2d Cir. 2009), the Second Circuit noted that "[i]t is questionable whether evidence of the officers' inability to recall the substance of their training could alone create a triable issue of fact on the adequacy of a training program."  Id. at 441.  In Okin, however, two high-ranking officers, who administered the municipality's training program on domestic violence, repeatedly failed to properly respond to domestic violence complaints.  Id.  In that specific context, "when those same officers were responsible for teaching subordinates how to respond [to] domestic violence," the court concluded that it was reasonable to infer that there was a fundamental flaw in the training program – specifically, by "placing training responsibility in the hands of those who may themselves not understand the problem or the appropriate response."  Id.  Therefore, the court concluded that the purported pattern of misconduct and the lower-ranking officers' "sketchy" recollection and understanding of policies "could reasonably be viewed as the product of inadequate teaching by higher-ranking officers who were not trained to train, rather than the

isolated shortcomings of individual officers."  <u>Id.</u>  By contrast, in this case, the complaint does not allege facts to support the inference that then–Deputy Inspector Winski provided training to members of the NYPD or that any officers purported trained by him had a similar "sketchy" memory about their understanding of the disorderly conduct statute.  Further, as discussed further below, the complaint does not support the inference that Deputy Inspector Winski misunderstood or misstated the law.

Plaintiffs' reliance on <u>Battle v. City of New York</u>, No. 11 Civ. 3599 (RMB), 2012 U.S. Dist. LEXIS 5256 (S.D.N.Y. Jan. 13, 2012) is also unavailing.  In <u>Battle</u>, the Court denied the motion to dismiss the <u>Monell</u> claim because, among other reasons, the officers allegedly made statements that a purported improper practice was a "routine" occurrence by members of the NYPD and because plaintiffs described the absence of relevant guidelines in the training program.  <u>Id.</u> at *16-17.   There are no similar allegations in this case.  Based on the allegations in the complaint, Deputy Inspector Winski provided testimony only about his own recollection and understanding and there are no statements by Deputy Inspector Winski suggesting the existence of a "routine" improper practice.  Further, in this case, unlike <u>Battle</u>, plaintiffs concede that police officers received training on the Principles of Proper Policing.[7]  (Compl. ¶¶ 71, 86) Finally, neither <u>Okin</u> nor <u>Battle</u> applied the Supreme Court's "stringent standard of fault" that was later enunciated in <u>Connick v. Thompson</u>, 563 U.S. 51 (2011) and these cases may not reflect current pleading requirements.

---

[7]  Plaintiffs style as "Principles of Proper Policing of Expressive Speech Activity" certain "well established legal rights and principles" enumerated in paragraph 69 of the complaint.  These purported principles are conclusions of law, not averment of facts; therefore, defendants do not have to accept as true plaintiffs' representation as to the purported state of law for the purposes of this Rule 12(b)(6) motion.  Defendants dispute many of plaintiffs' representations set forth in the purported Principles of Proper Policing.  Notwithstanding, defendants will not belabor the inaccuracies as they do not believe at this time these disputes will affect the disposition of the motion to dismiss.

Further, plaintiffs' argument relies on the assumption that Deputy Inspector Winski testified "in contravention of established legal precedent" by purportedly stating that "the fact that individuals are engaged in First Amendment-protected activity has no effect on the manner with which Penal Law 240 (disorderly conduct) is charged against them." (Compl. ¶ 68) Plaintiffs did not provide excerpts of the relevant portions of Deputy Inspector Winski's testimony and they did not present the full question and full answer from which a reader may understand the context of the exchange, as the general statement (assuming its accuracy) is ambiguous. As a general principle, however, Deputy Inspector Winski's purported statement is correct. The First Amendment is not a magic wand that absolves conduct that would otherwise violate the law. See Papineau v. Parmley, 465 F.3d 46, 59 (2d Cir. 2006) ("One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest."). Even if Deputy Inspector Winski's understanding was mistaken, however, the complaint does not allege any facts to support the inference that NYPD's training system itself was deficient or that *other* NYPD officers made arrests during OWS II because of the same purported inadequate training.

In summary, plaintiffs' five "pillars" of facts do not together plausibly allege the existence of a widespread custom or practice of NYPD officers unlawfully arresting protestors or a pattern of similar constitutional violations such as to put the City and its policymakers on notice of an obvious need for more or better training to protect against constitutional violations.

**B.**   **Plaintiffs Have Failed to Allege a Specific Deficiency in Training**

In one of plaintiffs' many instances incorrectly accusing defendants of applying a summary judgment standard to this motion to dismiss, plaintiffs argue that they do not need to identify a specific deficiency in the City's training program because that standard purportedly "arises only at summary judgment and not applicable at the pleading stage." (Opp. Memo. at 25)

- 14 -

Plaintiffs premise this argument on *dicta* derived from <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113 (2d Cir. 2004), wherein the Second Circuit noted the "unlikel[ihood] that a plaintiff would have the information about the city's training programs or about the cause of misconduct at the pleading stage."  <u>Id.</u> at 130 n.10.  Plaintiffs and the district courts that follow that standard after <u>Iqbal</u> and <u>Twombly</u> are incorrect.

As Judge Engelmayer noted in a decision on a motion to dismiss, after <u>Iqbal</u> and <u>Twombly</u>, "the Second Circuit has indicated that some non-conclusory allegation as to deficient training programs is necessary at the pleading stage."  <u>Calderon v. City of New York</u>, No. 14 Civ. 1082 (PAE), 2015 U.S. Dist. LEXIS 135620, at *41 (S.D.N.Y. Oct. 5, 2015).  The Second Circuit in <u>Simms</u>, commenting on <u>Amnesty America</u>'s *dicta*, stated that "[w]hile it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery . . . this does not relieve them of their obligation under Iqbal to plead a facially plausible claim."  <u>Simms v. City of New York</u>, 480 F. App'x 627, 631 n.4 (2d Cir. 2012); <u>Simms v. City of New York</u>, No. 10 Civ. 3420 (NGG), 2011 U.S. Dist. LEXIS 115949 (E.D.N.Y. Sept. 28, 2011) ("Since [Iqbal and Twombly], courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train.").  Thus, district courts have required at the pleading stage facts that suggest specific training deficiencies that allegedly caused the deprivation of plaintiff's constitutional rights.  <u>See</u> <u>Triano v. Town of Harrison</u>, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012).  For the reasons set forth in Defendants' Memorandum of Law, plaintiffs have failed to identify a specific training deficiency and allege facts to support the inference that the constitutional rights of plaintiffs and others were violated because of similar training deficiency.

## II.     PLAINTIFFS HAVE NOT ASSERTED A FIRST AMENDMENT CLAIM

Plaintiffs did not assert a claim of First Amendment violations in the complaint. Nonetheless, plaintiffs in their opposition memorandum argue that defendants deprived them of their First Amendment rights through the purported unlawful application of New York Penal Law 240.20, the disorderly conduct statute.  (Opp. Memo. at 23)  Insofar as plaintiffs are attempting to assert a new cause of action through their brief, they cannot amend their complaint in that manner.  Further, setting aside plaintiffs' misstatement of First Amendment law and their recitations of Marcavage v. City of New York, 689 F.3d 98 (2d Cir. 2012) and Papineau v. Parmley, 465 F.3d 46 (2d Cir. 2006)[8] as purportedly applied to this case, even if plaintiffs were arrested without probable cause, that does not itself state a claim for a First Amendment violation.  Plaintiffs must plead facts to show that the elements of a claim have been met, whereas plaintiffs have not even articulated under what theory of First Amendment liability they are asserting a claim against defendants.

## III.     DEFENDANTS BLOOMBERG, KELLY, ANGER, ESPOSITO, MCNAMARA, AND PURTELL SHOULD BE DISMISSED FROM THIS ACTION

For the reasons set forth in defendants' Memorandum of Law in Support of Motion to Dismiss the Complaint, defendants Bloomberg, Kelly, Anger, Esposito, McNamara, and Purtell should be dismissed from this action.

## CONCLUSION

For the foregoing reasons, defendants City of New York, Michael Bloomberg, Raymond Kelly, Joseph Esposito, Thomas P. Purtell, Steven Anger, and James McNamara request that the Court grant their motion pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, and for any other fair and equitable relief that the Court may deem appropriate.

---

[8] The Second Circuit in Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014), cuts against plaintiffs' interpretation of Papineau and its application to protest situations.

Dated:      New York, New York
             March 31, 2016

ZACHARY W. CARTER
Corporation Counsel of the
   City of New York
*Attorney for Defendants City of New York, Michael Bloomberg, Raymond Kelly, Joseph Esposito, Thomas P. Purtell, Steven Anger, and James McNamara*
100 Church Street, 3rd Floor
New York, New York 10007
(212) 356-3522

By:                 /s/
             Gary Moy
             *Senior Counsel*

cc:   <u>VIA ECF</u>
     Jeffrey G. Smith, Esq.
     Janine L. Pollack, Esq.
     Kevin G. Cooper, Esq.
     Wolf Haldenstein Adler Freeman & Herz LLP
     270 Madison Avenue
     New York, New York 10016

     Wylie M. Stecklow, Esq.
     David A Thompson, Esq.
     Stecklow & Thompson
     217 Centre Street, 6th Floor
     New York, New York 10013