UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE PACKARD, EDWARD BECK, MICHELLE BERGER, ARI COWAN, CONNOR HICKS, CHARLES MEACHEM, CHRIS PHILLIPS, LARRY SWETMAN and AMADON DELLERBA, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK, a municipal entity, FORMER NYPD CHIEF OF PATROL JOSEPH ESPOSITO, FORMER NYPD COMMISIONER RAY KELLY, FORMER MAYOR MICHAEL BLOOMBERG, NYPD CHIEF THOMAS P. PURTELL, NYPD DEPUTY CHIEF STEVEN ANGER, NYPD DEPUTY CHIEF JAMES MCNAMARA,

Defendants

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION FOR RECONSIDERATION**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street - Room 3-170*
*New York, New York  10007*

*Of Counsel:  Gary Moy*
*Tel:  (212) 356-3522*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................... 1

STANDARD ..................................................................................................................................... 1

ARGUMENT

        POINT I

                THE COURT ERRED IN FINDING VICARIOUS
                LIABILITY THROUGH STATE LAW FALSE
                ARREST CLAIM AGAINST THE CITY .................................................. 2

        POINT II

                THE COURT ERRED IN DENYING THE
                MOTION TO DISMISS THE FAILURE TO
                TRAIN CLAIM ......................................................................................... 5

CONCLUSION ................................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

Anwar v. Fairfield Greench Ltd.,
    No. 09 Civ. 118 (VM), 2010 U.S. Dist. LEXIS 123674
    (S.D.N.Y. Nov. 16, 2010) ................................................................................................ 1-2

City of Canton v. Harris,
    489 U.S. 378 (1989) ............................................................................................................5

Connick v. Thompson,
    563 U.S. 51 (2011) ................................................................................................. *passimI*

De Santis v. City of New York,
    No. 10 Civ. 3508 (NRB), 2011 U.S. Dist. LEXIS 99126
    (S.D.N.Y. Aug. 26, 2011) ...................................................................................................4

Gonzalez v. City of New York,
    No. 14 Civ. 7721 (LGS), 2015 U.S. Dist. LEXIS 151810
    (S.D.N.Y. Nov. 9, 2015) .................................................................................................7, 12

Hardy v. New York City Health & Hosps. Corp.,
    164 F.3d 789 (2d Cir. 1999) ................................................................................................3

Jones v. Stancik,
    No. 02 CV 4541 (SJ), 2004 U.S. Dist. LEXIS 28196, (E.D.N.Y. Oct. 4, 2004) .......................3

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,
    729 F.3d 99 (2d Cir. 2013) ..................................................................................................2

Marlin v. City of New York,
    No. 15 Civ. 2235 (CM), 2016 U.S. Dist. LEXIS 122426
    (S.D.N.Y. Sept. 7, 2016) ...........................................................................................7, 9, 10, 12

Marom v. City of New York,
    No. 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466
    (S.D.N.Y. Mar. 7, 2016) ......................................................................................................7

Mejia v. City of New York,
    119 F. Supp. 2d 232 (E.D.N.Y. 2000) ..................................................................................3

Osterhoudt v. City of New York,
    No. 10 Civ. 3173 (RJD) (RML), 2004 U.S. Dist. LEXIS 28196,
    (E.D.N.Y. Oct. 4, 2004) .......................................................................................................12

**Cases**                                                             **Pages**

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986)........................................................................................2

Pluma v. City of New York,
    No. 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134
    (S.D.N.Y. Mar. 31, 2015) ...............................................................................6

Rylawn Walker v. City of New York,
    No. 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015)....................16

Shrader v. CSX Transp., Inc.,
    70 F.3d 255 (2d Cir. 1995)..............................................................................2

Simms v. City of New York,
480 F. App'x 627 (2d Cir. 2012) ....................................................................15

Smith v. City of New York,
388 F. Supp. 2d 179 (S.D.N.Y. 2005)..............................................................4

SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC,
    407 F. Supp. 2d 587 (S.D.N.Y. 2006).............................................................2

Tieman v. City of Newburgh,
    13 Civ. 4178 (KMK),
    2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) ......................................12

Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,
    956 F.2d 1245 (2d Cir. 1992)..........................................................................2

Walker v. City of New York,
    974 F.2d 293 (2d Cir. 1992)............................................................................6

Warner v. Village of Goshen Police Dep't,
    256 F. Supp. 2d 171 (S.D.N.Y. 2003)..............................................................3

| **Statutes** | **Pages** |
|---|---|
| N.Y. Gen. Mun. L. § 50-e(1)(a) | 3 |
| N.Y. Gen Mun. L. § 50-h(1) & (5) | 4 |
| N.Y. Gen. Mun. L. § 50-i(1) | 3, 4 |

## PRELIMINARY STATEMENT

On March 2, 2017, the Court issued an Order granting in part and denying in part defendants' Rule 12(b)(6) motion to dismiss. (Docket Entry No. 59) Defendants now move the Court to reconsider portions of that Order in which the Court: (i) created a state law false arrest claim against the City, which was not previously asserted; and (ii) denied the motion to dismiss the municipal liability claim premised on a purported failure to train. First, the Court committed clear error by finding that plaintiffs stated a false arrest claim against the City through vicarious liability because the Court read a claim into the Complaint that does not exist, which plaintiffs cannot establish in any event because they failed to comply with conditions precedent to suit against the City pursuant to New York General Municipal Law and any state law claim is barred by the statute of limitations. Second, the Court also erred by denying the motion to dismiss the failure to train claim on the basis of the law school clinic report. Specifically, the report primarily addresses use of force allegations and, as such, does not involve alleged training deficiencies similar in nature to the purported misapplications of the disorderly conduct statute to persons engaged in protest activities at issue in this case. For similar reason, the report could not have put the City on notice of a potential problem concerning the misapplication of the disorderly conduct statute. But even if the report was sufficient to provide notice of the risk of such a problem, the Court erred by leaping from notice to concluding that the report (involving unsubstantiated allegations of dissimilar incidents) thereby established "deliberate indifference" without considering the remaining elements needed to sustain a failure to train claim.

## STANDARD

Pursuant to Local Rule 6.3, a court may grant a motion for reconsideration where the moving party can point to controlling decisions or facts the court overlooked and that might reasonably be expected to alter the conclusion reached by the court. See Anwar v. Fairfield

Greench Ltd., No. 09 Civ. 118 (VM), 2010 U.S. Dist. LEXIS 123674, at *16-17 (S.D.N.Y. Nov. 16, 2010; SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 407 F. Supp. 2d 587, 589 (S.D.N.Y. 2006). When deciding a motion for reconsideration, "the court should consider: (1) whether there has been 'an intervening change of controlling law;' (2) whether there is new evidence presented that was not previously available on the original motion; and (3) whether there is a 'need to correct a clear error or prevent manifest injustice.'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). A party can generally establish clear error or manifest injustice by "point[ing] to controlling decisions or data that the court overlooked." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

## ARGUMENT

### POINT I

#### THE COURT ERRED IN FINDING VICARIOUS LIABILITY THROUGH STATE LAW FALSE ARREST CLAIM AGAINST THE CITY

The Court appears to believe that plaintiffs alleged a false arrest claim against the City under a theory of vicarious liability because plaintiff recited boilerplate language that police officers engaged in purported "impermissible conduct" for which the City is allegedly responsible. (Order at p. 8) But plaintiffs invoked only 42 U.S.C. § 1983 and there is no vicarious liability under Section 1983. See Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986) (a municipality may not be held liable under Section 1983 on the basis of *respondeat superior*). Plaintiffs did not invoke the New York State Constitution, or allege false imprisonment under New York State law, or make any reference to vicarious liability or *respondeat superior*. Thus, plaintiffs sought relief only under federal law. Further, plaintiffs did

not argue that they were asserting state law claims in their opposition papers to defendants' motion to dismiss. Simply stated, the Court inserted a claim into the Complaint that was not there to maintain a theory of liability against the City that plaintiffs did not assert.

Even if the Court could construe the Complaint to have asserted a state law false arrest claim, the Court clearly erred in finding that plaintiffs could maintain such a claim in this action because plaintiffs failed to comply with statutory conditions precedent to suit against the City and the state law claim is barred by the statute of limitations. New York General Municipal Law § 50-e requires that a plaintiff asserting state law tort claims against a municipality or its employees file a notice of claim within ninety days after the incident giving rise to the claim. See N.Y. Gen. Mun. L. § 50-e(1)(a) & 50-i(1). Failure to comply with notice of claim requirements "is a jurisdictional defect that, by itself, bars a plaintiff from any recovery for state tort claims." Jones v. Stancik, No. 02 CV 4541 (SJ), 2004 U.S. Dist. LEXIS 28196, at *15 (E.D.N.Y. Oct. 4, 2004); see also Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999) ("[f]ailure to comply … ordinarily requires a dismissal for failure to state a cause of action"); Warner v. Village of Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("failure to comply with the mandatory New York statutory notice-of-claim requirements results in dismissal of his claims"); Mejia v. City of New York, 119 F. Supp. 2d 232, 255-56 (E.D.N.Y. 2000) (tort claims arising from police officers' conduct in the course of their employment must be filed in compliance with New York notice of claim statutes).

In this case, plaintiffs filed this action on September 10, 2015 (Docket Entry No. 1) but do not allege that they satisfied the conditions precedent to suit before (purportedly) filing state law claims against the City. Plaintiffs do not allege such facts because, not only do they *not* assert state law claims against the City, plaintiffs each failed to file a notice of claim within

ninety days of the alleged September 15 and 17, 2012 arrests. Further, New York General Municipal Law §50-i(1)(b) requires that a plaintiff plead in the complaint that the notice of claim was served at least 30 days prior to commencement of the action and in that time defendants neglected or refused to satisfy the claim, which pleadings plaintiffs did not assert in the Complaint. Additionally, after filing the mandatory notice of claim, plaintiffs must make themselves available for examination by the municipality in a 50-h hearing prior to suit. See N.Y. Gen Mun. L. § 50-h(1) & (5). Accordingly, because plaintiffs failed to comply with conditions precedent to suit, the Court committed clear error in finding that plaintiffs could state a false arrest claim against the City under a vicarious liability theory. See Smith v. City of New York, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005) (dismissing state law false arrest claim for failure to comply with notice of claim requirements)

The Court's finding that plaintiffs stated a false arrest claim against the City under a vicarious liability theory is also clearly erroneous because any state law claim is barred by the statute of limitations. New York's General Municipal Law requires that a claim against the City or its employees must be "commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1). The incidents underlying the Complaint occurred on September 15 and 17, 2012. Plaintiffs, therefore, should have brought state law claims by December 16, 2013. But plaintiffs did not bring this until September 10, 2015 -- long after the statute of limitations period had already expired. See De Santis v. City of New York, No. 10 Civ. 3508 (NRB), 2011 U.S. Dist. LEXIS 99126, at *33-34 (S.D.N.Y. Aug. 26, 2011) (dismissing state law claim, "not[ing] that [plaintiff] did not file a notice of claim within 90 days of the incidents giving rise to his claim, or commence his action within a year and ninety days, as required by New York General Municipal Law §§ 50-e and 50-i for state tort law

claims against municipal employees").  As such, the Court was clearly erroneous in holding that plaintiffs stated a false arrest claim against the City.

**POINT II**

**THE COURT ERRED IN DENYING THE MOTION TO DISMISS THE FAILURE TO TRAIN CLAIM**

While the Court dismissed plaintiffs' claim of municipal liability premised on a purported widespread unconstitutional practice of false arrests due to a misapplication of the disorderly conduct statute, the Court denied defendants' motion to dismiss the <u>Monell</u> claim premised on a failure-to-train theory.  (Order at pp. 15, 18)  In denying the motion, the Court concluded that the Complaint's reference to the law school clinic paper (hereinafter, the "Report"[1]) was sufficient to support the allegation that NYPD officers had a history of falsely arresting protestors engaged in First Amendment Speech.  The Court's reliance on the Report as the basis to maintain the failure to train claim against the City, as well as the application of that paper to this case, was clearly erroneous and failed to consider the dissimilarity of the allegations in the Report to plaintiffs' claims and theory of liability.  The Court also erred by misapplying the cases it cites to conclude that the Report's unsubstantiated allegations plausibly allege that there is a history of NYPD officers falsely arresting persons engaged in protest activities.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011).  As such, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into

---

[1] Capitalized terms used but not defined herein take their meaning from defendants' Memorandum of Law and Reply Memorandum of Law in support of their Rule 12(b)(6) Motion to Dismiss.

contact.'" Id. (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  To allege deliberate

indifference in the context of a failure-to-train claim, a plaintiff must plead facts sufficient to

support an inference that: (i) the municipality knows "to a moral certainty" that its employees

will confront a given situation; (ii) either the situation presents the employees with a difficult

choice of the sort that training will make less difficult, or there is a history of employees

mishandling the situation; and (iii) the wrong choice by the employee will frequently cause a

constitutional deprivation.  See Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir.

1992).  While the Court notes that plaintiffs are not required to allege wrongdoing "so persistent

and widespread as to practically have the force of law" to show deliberate indifference in the

failure-to-train context (Order at p. 17 n.13), because they do not allege that the situation

"presents the employee with a difficult choice of the sort that training or supervision will make

less difficult" (Order at p. 16 n.16), plaintiffs must show there is a history of employees

mishandling the situation and a "pattern of similar constitutional violations by untrained

employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of a

failure to train." Connick, 563 U.S. at 62.

    "Deliberate indifference," as the Supreme Court explained, "is a stringent

standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." Id. at 61 (citation and internal quotation marks omitted).  To meet

this standard, plaintiffs must show that the municipality and/or its policymakers had "actual or

constructive notice that a particular omission in their training program causes city employees to

violate citizens' constitutional rights" and, notwithstanding such notice, "chooses to retain that

program." Pluma v. City of New York, No. 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134,

at *34 (S.D.N.Y. Mar. 31, 2015) (quoting Connick, 563 U.S. at 62).  "Without notice that a

course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. at 62.

According to the Court, although it is unable to rely on citations to "similar lawsuits and statistics", it nonetheless concludes that the law school clinic report "and, in particular, the appendix" was sufficient to put the City on notice of a history or pattern of false arrests due to insufficient training.[2]  (Order at pp. 16-17)  While the Complaint might allege facts suggesting that the City had notice that officers would encounter protest situations related to the first anniversary of Occupy Wall Street in September 2012 (see Compl. ¶ 10 & n.3), the Court erroneously relied on the Report to conclude that the City had notice of a history or pattern of *improper* arrests by NYPD officers.

The Court's reliance on the Report is erroneous because the Report primarily concerns allegations of improper use of force and police tactics -- not a purported pattern of similar false arrests due to misapplication of the disorderly conduct statute, which, as the Court observed (Order at p. 15), is plaintiff's failure-to-train theory of liability.   As the Report itself notes,

> This Part documents reports of repeated excessive or unnecessary police use of force, massive and continuous overpolicing and poor communication, obstruction of press freedoms and independent legal monitoring, constant police surveillance, unjustified restrictions on the ability of individuals to peacefully assemble in public spaces, arbitrary rule enforcement, and accountability and

---

[2]    The Court notes that plaintiffs are not required to allege wrongdoing "so persistent and widespread as to practically have the force of law" to show deliberate indifference in the failure-to-train context. (Order at p. 17 n.13)  Nonetheless, because plaintiffs do not allege that the situation "presents the employee with a difficult choice of the sort that training or supervision will make less difficult" (Order at p. 16 n.16), plaintiff must show there is a history of employees mishandling the situation, *e.g.*, by showing a pattern of similar constitutional violations.  See Connick v. Thompson, 563 U.S. 51, 62 (2011).

transparency failures. *Appendix I to the report is a Table of Alleged Incidents of Physical Force*, listing 130 incidents in New York City which warrant investigation by authorities.

(Report at p. 1)

Courts that have addressed whether the Report is sufficient to support a <u>Monell</u> claim have deemed the Report to address concerns about alleged excessive force. <u>See</u> <u>Marlin v. City of New York</u>, No. 15 Civ. 2235 (CM), 2016 U.S. Dist. LEXIS 122426, (S.D.N.Y. Sept. 7, 2016) (noting that the Report documents police practices, including allegations of excessive police force and concludes that the alleged incidents raised concerns about police use of force); <u>Marom v. City of New York</u>, No. 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *77 (S.D.N.Y. Mar. 7, 2016) (noting that the Report references alleged incidents of force which warrant investigation by authorities); <u>Gonzalez v. City of New York</u>, No. 14 Civ. 7721 (LGS), 2015 U.S. Dist. LEXIS 151810, at *24 (S.D.N.Y. Nov. 9, 2015) (where plaintiff alleged that the City had a practice of falsely arresting persons engaged in public protest and failed to discipline officers, noting that "the Report cites a number of incidents that it states 'raise concerns' about excessive or unnecessary force"). And, although the Report discusses "aggressive" and "excessive" force, it does so "in the context of international law and human rights, and not specifically with reference to the Fourth Amendment." <u>Marlin</u>, 2016 U.S. Dist. LEXIS 122426, at *61 n.4. It goes without saying that allegations of improper use of force do not provide notice to the City that there is a risk that police officers may misapply the disorderly conduct statute to persons engaged in protest activities.

While the Report in some instances incidentally addresses arrests in discussing, for example, the eviction of protestors from Zuccotti Park and closure of spaces (and, in fact, at times alleges facts that *establish probable cause* to arrest, *e.g.*, staying in a park past closing time), none of the courts has treated the Report to be about an investigation about purported

improper arrests or misapplication of the "Principles of Proper Policing" cited in the Complaint. The Report does not meaningfully discuss false arrests generally or, more specifically tailored to this case, improper arrests due to the misapplication of the disorderly conduct statute. As such, the Report does not support any inference that the purported policing deficiencies identified therein would affect officers' application of the disorderly conduct statute at issue in this case.

According to the Court, Appendix III to the Report demonstrates a documented history to put the City on notice of a pattern of police wrongdoing. (Order at p. 17) Setting aside for the moment that neither plaintiffs nor the Court has cited anything in the Report or the Appendix to suggest that the arrests identified therein were unlawful, Appendix III enumerates only 18 arrests of journalists and other individuals who were allegedly documenting the protests. Neither the Report nor the Complaint offers any facts from which to infer that the 18 arrests involved similar circumstances or similar training deficiencies at issue in this case. It is not enough to simply allege that those 18 journalists were falsely arrested and that plaintiffs also allege false arrest; instead, plaintiffs must show that the particular training deficiency that led to the 18 arrests similarly caused the purported wrongful arrests in this case, *i.e.*, purported failure to train that caused misapplication of the disorderly conduct statute to persons engaged in protest activities (Order at p. 15). See Connick, 563 U.S. at 62-63 (citing to four previous Brady violations could not have put the district attorney's office on notice that its training was inadequate because the previous violations were "not similar to the [Brady] violation at issue here"). Further, while Appendix III indicates that two of the 18 arrests might have involved disorderly conduct charges, two arrests cannot plausibly support an allegation that there was a history or pattern of constitutional violations. Additionally, there are seven subdivisions of the disorderly conduct statute and it is not clear from Appendix III whether those two arrests involve

the same disorderly conduct provision in this case or under what circumstances those arrests arose and, thus, whether those two arrests are attributable to the purported training deficiencies at issue in this case. As such, these 18 arrests do not provide any notice of or establish a pattern of similar constitutional violations arising out of similar training deficiencies.

Even if the allegations of the arrests cited in the Report put the City on notice of a potential risk of harm, the Court makes an inferential leap that mere allegations plausibly allege that NYPD officers have a history of falsely arresting individuals engaged in First Amendment speech. While the Court cites Marlin v. City of New York, No. 15 Civ. 2235 (CM), 2016 U.S. Dist. LEXIS 122426 (S.D.N.Y. Sept. 7, 2016), the case does not support the proposition that unsubstantiated allegations of wrongdoing, whether in the Report or some other source, is sufficient to show a history or pattern of constitutional violations amounting to "deliberate indifference" in the failure-to-train context.

In Marlin, plaintiff alleged that the City failed to train or supervise NYPD officers in the proper policing or use of force in controlling demonstrations and protest assemblies. Id. at *56. In finding that plaintiff stated a claim, the court primarily relied on, and discussed, a report by the New York City Department of Investigation, Office of the Inspector General for the NYPD ("OIG-NYPD"). Id. at *57-61. While the City disagrees with the court's findings in Marlin, which rejected another district court's determination that the OIG-NYPD report was insufficient to allege that the City was put on notice of an alleged pattern of use of force misconduct, Marlin is nevertheless distinguishable from this case because the OIG-NYPD report recognized that there were 207 allegations of force in 179 cases that CCRB substantiated and, further, the OIG-NYPD substantiated 104 of the allegations and confirmed that the officers used excessive force. Id. at *58. In light of the *substantiated* findings in the OIG-NYPD report, the

court then considered in one paragraph the law school clinic report which similarly addressed alleged use of force misconduct.  Id. at *62-63.  The court then concluded that the law school clinic report, "coupled with the data" from the OIG-NYPD report, were sufficient to state a claim for municipal liability.  The Marlin court did not conclude that the unsubstantiated allegations in the Report alone were sufficient to state a claim.

Marlin, however, is instructive on another issue.  Although the court in Marlin noted that the 207 allegations of force in 179 cases substantiated cases put the City on notice, the Court did not -- as this Court does -- find deliberate indifference on the basis of those allegations alone.  The Court's analysis did not stop just because it found that the allegations put the City on notice.  Instead, the Court proceeded to address whether, having received notice of wrongdoing, the City did anything to investigate the allegations, discipline those involved, or otherwise address the risk of harm.   In Marlin, because the NYPD allegedly did not impose discipline in approximately 35.6% of the cases in which the OIG-NYPD substantiated claims of excessive force, the court concluded that there was inference of deliberate indifference because the City did nothing in the face of known, substantiated problem.  Id. at *61.

This Court did not proceed to consider whether there are any allegations in the Complaint -- having determined that the City was purported on notice of risk of wrongdoing, e.g., misapplying the disorderly conduct statute, or a deficiency in its training program (although neither the Court nor plaintiffs have identified the specific deficiency, as argued in defendants' motion to dismiss papers) -- to support the inference that the City did not investigate, did not forestall or discipline if it determined that an officer engaged in misconduct, or otherwise persisted in continuing with a known inadequate course of conduct.  See Connick, 563 U.S. at 61.  "The city's 'policy of inaction' in light of notice that its program will cause constitutional

violations 'is the functional equivalent of a decision by the city itself to violate the Constitution." Id. (quoting Canton, 489 U.S. at 395)  Without considering whether plaintiffs sufficiently alleged facts showing that the City chose to retain a known deficient program or otherwise took no action in response to same, the Court adopted a "less stringent standard of fault for a failure-to-train claim" that amounts to "*de facto respondeat superior*".  Id. at 62.

The Court's citation to Tieman v. City of Newburgh, No. 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) does not support the Court's position that unsubstantiated allegations of improper arrests alone, even if sufficient to infer that the City had notice of a risk of wrongdoing, could establish deliberate indifference without more.  In Tieman, the court similarly cited to Osterhoudt v. City of New York, No. 10 CV 3173, 2012 U.S. Dist. LEXIS 139700 (E.D.N.Y. Sept. 27, 2012) and noted that plaintiff's citations to complaints plausibly shows had notice of an issue, but continued, "an allegation of numerous claims of excessive force by itself is insufficient to raise an inference of deliberate indifference."  Id. at *61-62.   The court in Tieman, consistent with the City's argument in this case, held that the plaintiff had to show that the municipality made no attempts to investigate claims of wrongdoing or failed to discipline those found to have engaged in wrongdoing.  Id. at *62.  The court found that plaintiff's conclusory allegation that the city did not discipline the officers who were subject to these lawsuits to be insufficient.  Id.  In this case, the Court did not consider whether plaintiffs offered sufficient facts from which to infer that the City failed to investigate or otherwise act in the face of known wrongdoings.  As such, even if the Court could infer that the City was on notice of purported wrongdoing based on unsubstantiated allegations (which the City does not concede), the Court erred by summarily concluding that the City was thereby "deliberately

indifferent" without considering whether plaintiffs offered enough facts to establish the other elements, which they have not.

Osterhoudt v. City of New York, No. 10 CV 3173, 2012 U.S. Dist. LEXIS 139700 (E.D.N.Y. Sept. 27, 2012) is against the weight of the law. Although Tieman cited Osterhoudt, the Tieman court did not rely on mere unsubstantiated allegations to establish deliberate indifference without more and neither should this Court. The court in Osterhoudt purported to pay homage to Twombly but acknowledged that it was not requiring plaintiff to provide the requisite factual amplification. Specifically, the Osterhoudt court stated, "Aggrieved parties confront pleading standards that threaten their ability to press their claims beyond mere accusation. Sensitive to this formidable hurdle, I too conclude that plaintiff" has satisfied Twombly. In other words, the court decided not to hold the plaintiff to pleading requirements set forth by the Supreme Court because of alleged practicalities and sensitivities. That is not the state of the law this Court should adopt.

While courts in the aftermath of Iqbal and Twombly struggled with whether mere allegations without factual amplification were enough to state a Monell claim, courts in this district since then have followed the position that mere allegations are not enough to show wrongdoing because they are just that -- allegations. See Rasmussen v. City of New York, 766 F. Supp. 2d 399, 409–10 (E.D.N.Y. 2011). As such, additional factual allegations are needed to nudge those allegations from possible to plausible. For the reasons articulated in defendants' Rule 12(b)(6) motion papers, and the decisions cited therein which the City now incorporates by reference into this motion, the Court should not treat mere unsubstantiated allegations as providing notice or as plausibly alleging wrongdoing.

In summarily concluding that allegations of false arrests purportedly show a pattern of improper arrest, the Court does not address and does not appear to have considered the list of case law the City presented showing that the City's training was adequate with respect to arrests for disorderly conduct during purported OWS protest activities (which list the City has updated to include several decisions that were issued after this motion was fully briefed):

- Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014) (finding probable cause to arrest over 700 OWS protestors for disorderly conduct);

- Shamir v. City of New York, No. 13 Civ. 5652 (CM) (SDNY/Appeal) (See Opinion of USCA, dated Certified October 22, 2015, holding that there was probable cause to arrest OWS plaintiff for, inter alia, disorderly conduct, Docket Entry No. 24);

- Brown v. City of New York, No. 13 Civ. 1018 (KBF) (SDNY) (See Opinion & Order, dated June 18, 2014, holding that there was probable cause to arrest OWS plaintiff for disorderly conduct, Docket Entry No. 64);

- Caravalho v. City of New York, No. 13 Civ. 4178 (PKC) (SDNY) (See Memorandum & Order, dated March 31, 2016, holding that there was probable cause to arrest the nine OWS plaintiffs for disorderly conduct, Docket Entry No. 213);

- Pesola v. City of New York, No. 15 Civ. 1917 (PKC) (SDNY) (See Memorandum & Order, dated March 30, 2016, holding that there was probable cause to arrest OWS plaintiff for disorderly conduct, Docket Entry No. 32);

- Allen v. City of New York, No. 15 Civ. 1918 (PKC) (SDNY) (See

Memorandum & Order, dated March 30, 2016, holding that there was probable cause to arrest plaintiff for disorderly conduct, Docket Entry No. 35);

- <u>Mediavilla v. City of New York</u>, No. 14 Civ. 08624 (VSB) (SDNY) (<u>See</u> Memorandum & Order, dated September 29, 2016, holding that there was probable cause to arrest OWS plaintiff for, inter alia, disorderly conduct, Docket Entry No. 91);

- <u>Gonzalez v. City of New York</u>, 14-cv-07721 (LGS) (SDNY) (<u>See</u> Memorandum & Order, dated September 29, 2016, holding that there was probable cause to arrest OWS plaintiff for, inter alia, disorderly conduct, Docket Entry No. 100); and

- <u>Wiles v. City of New York</u>, 13-cv-2898 (TPG) (SDNY) (<u>See</u> Memorandum & Order, dated October 25, 2016, holding that there was probable cause to arrest OWS plaintiff for disorderly conduct, including a September 17, 2012 arrest, Docket Entry No. 161).

Outside of the disorderly conduct context, there have been other findings showing that there was probable cause to arrest individuals engaged in OWS-related activities:

- <u>Carpenter v. City of New York</u>, No. 11 Civ. 8414 (DLC) (SDNY) (<u>See</u> Opinion & Order, dated November 27, 2013, holding that there was probable cause for plaintiffs' arrests, Docket Entry No. 53);

- <u>Thimmesch v. City of New York</u>, No. 12 Civ. 8882 (KBF) (SDNY) (<u>See</u> Decision & Order, April 9, 2013, holding that there was probable cause for plaintiff's arrest, Docket Entry No. 11);

- <u>Lebowitz v. City of New York</u>, No. 12 Civ. 8982 (JSR) (SDNY) (<u>See</u> Memorandum Order, dated February 25, 2014, holding that there was probable cause for plaintiff's arrest, Docket Entry No. 40); and

- <u>Hessler v. City of New York</u>, No. 13 Civ. 821 (NRB) (SDNY) (<u>See</u> Judgment, dated September 14, 2015, noting that one defendant was dismissed during trial and that the jury returned a special verdict for the remaining defendants, Docket Entry No. 61).

Additionally, while the Court relies on <u>Marlin</u> to conclude that the Complaint stated a claim of failure to train in this case, the court in <u>Marlin</u> concluded that there was probable cause to arrest plaintiff who was purportedly engaged in OWS protest activities. In contrast, neither the Complaint nor the Court has shown any *facts* actually showing that any member of the NYPD misapplied the disorderly conduct statute to persons engaged OWS-related events or, despite years of litigation, cited any adjudications showing that NYPD officers had a history falsely arresting OWS protestors regardless of similarity to the specific charges at issue in this case. And, yet, despite case law repeatedly vindicating the arrests of individuals engaged in OWS-related activities, the Court finds that a "report" of unsubstantiated allegations plausibly shows a purported history or pattern of false arrests. For the reasons cited here and in the City's Rule 12(b)(6) motion papers, this finding is against the weight of the law

Finally, the Court erred in concluding that plaintiffs need only plead causation without any factual amplification. The Court cites *dicta* in <u>Amnesty America v. Town of W. Hartford</u>, 361 F.3d 113 (2d Cir. 2004) suggesting that a plaintiff "need only plead that the city's failure to train caused the constitutional violation" because purportedly "[i]t is unlikely that a plaintiff would have information about the City's training programs or about the cause of

conduct at the pleading stage[.]" (Order at p. 18 (quoting <u>Amnesty Am.</u>, 361 F.3d at 130 n.10))

Whatever weight that *dicta* had, if any, it was lost after <u>Iqbal</u> and <u>Twombly</u>. <u>See</u> <u>Triano v. Town of Harrison</u>, 895 F. Supp. 2d 526, 539-40 (S.D.N.Y. 2012) ("such a relaxed pleading standard is difficult to reconcile" with <u>Twombly</u> or <u>Iqbal</u>). Thus, in analyzing that *dicta*, the Second Circuit in <u>Simms v. City of New York</u>, 480 F. App'x 627 (2d Cir. 2012), noted that "[w]hile it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under <u>Iqbal</u> to plead a facially plausible claim." <u>Id.</u> at 631 n.4. In this case, neither the Complaint nor plaintiffs nor this Court identifies a specific deficiency in the City's training program, which plaintiffs admit teaches the Principles of Proper Policing of Expressive Speech Activity (Compl. ¶¶ 69, 71, 86), or explains how that deficiency caused the alleged constitutional violations in this case. <u>See</u> <u>Rylawn Walker v. City of New York</u>, No. 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410 at *31 (S.D.N.Y. July 14, 2015) ("Plaintiff has also failed to plead any facts that suggest a failure to train the Officers caused his constitutional violation. He neither cites to procedural manuals and training guides, nor highlights the pertinent aspects of police training in order to prove the claim.").

## CONCLUSION

For the foregoing reasons, defendant City of New York requests that the Court grant its motion for reconsideration of the Court's Order (Docket Entry No. 59), dated March 2, 2017, pursuant to Local Civil Rule 6.3, and for any other fair and equitable relief that the Court may deem appropriate.

Dated:      New York, New York
             March 16, 2017

ZACHARY W. CARTER
Corporation Counsel of the
   City of New York
*Attorney for Defendant City of New York*
100 Church Street, 3rd Floor
New York, New York 10007
(212) 356-3522


By:            /s/
            Gary Moy
            *Senior Counsel*


cc:    VIA ECF
       Jeffrey G. Smith, Esq.
       Janine L. Pollack, Esq.
       Kevin G. Cooper, Esq.
       Wolf Haldenstein Adler Freeman & Herz LLP
       270 Madison Avenue
       New York, New York 10016

       Wylie M. Stecklow, Esq.
       David A Thompson, Esq.
       Stecklow & Thompson
       217 Centre Street, 6th Floor
       New York, New York 10013