UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE PACKARD, EDWARD BECK, MICHELLE BERGER, ARI COWAN, CONNOR HICKS, CHARLES MEACHAM, CHRIS PHILLIPS, LARRY SWETMAN, and AMADON DELLERBA, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK, a municipal entity, FORMER NYPD CHIEF OF PATROL JOSEPH ESPOSITO, FORMER NYPD COMMISSIONER RAY KELLY, FORMER MAYOR MICHAEL BLOOMBERG, NYPD CHIEF THOMAS P. PURTELL, NYPD DEPUTY CHIEF STEVEN ANGER, and NYPD DEPUTY CHIEF JAMES MCNAMARA,<br><br>Defendants. | Index No. 15-cv-7130(AT)(RLE) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................... ii

I.     INTRODUCTION ................................................................... 1

II.    RECONSIDERATION STANDARD ................................................. 2

III.   DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY
       BURDEN FOR A MOTION FOR RECONSIDERATION
       AS THEY FAIL TO SHOW CLEAR ERROR BY THE COURT ................................. 3

IV.    DEFENDANTS MERELY REPLICATE PREVIOUS ARGUMENTS ............................ 6

V.     CONCLUSION ................................................................... 10

i

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Adamou v. County. of Spotsylvania*,
   12-cv-7789 (ALC) (SN),
   2016 U.S. Dist. LEXIS 32505 (S.D.N.Y. Mar. 14, 2016) ..........................................................4

*Askins v. Doe*,
   727 F.3d 248 (2d Cir.  2013)..................................................................................................6, 7

*Boyd v. J.E. Robert Co.*,
   No. 05 Civ 2455 (KAM)(RER),
   2013 U.S. Dist. LEXIS 140546 (E.D.N.Y. Nov. 16, 2012) ......................................................4

*In re Currency Conversion Fee Antitrust Litig.*,
   MDL No. 1409 (WHP),
   2010 U.S. Dist. LEXIS 50436 (S.D.N.Y. May 21, 2010).........................................................9

*Drapkin v. Mafco Consolidated Group.*,
   818 F. Supp. 2d 678 (S.D.N.Y. 2011)......................................................................................4

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
   729 F.3d 99 (2d Cir. 2013)......................................................................................................4

*Kubicek v. Westchester County*,
   08 Civ 372 (ER),
   2014 U.S. Dist. LEXIS 139049 (S.D.N.Y. Sept. 30, 2014).....................................................1

*Marlin v. City of New York*,
   No. 15 Civ. 2235 (CM),
   2016 U.S. Dist. LEXIS 122426 (S.D.N.Y. Sept. 7, 2016)........................................................9

*Mikol v. Barnhart*,
   554 F. Supp. 2d 498 (S.D.N.Y. 2008)...................................................................................4, 9

*Monell v. Dep't of Social Services*,
   436 U.S. 658 (1978)..............................................................................................................2, 6

*Redd v. New York State Division of Parole*,
   923 F. Supp. 2d 393 (E.D.N.Y. 2013) .....................................................................................3

*Richard Feiner & Co. v. BMG Music Spain, S.A.*,
   No. 01 Civ. 0937 (JSR),
   2003 U.S. Dist. LEXIS 10975 ................................................................................................7

*Weyant v. Okst*,
  101 F.3d 845 (2d Cir. 1996)...................................................................................5

## STATUTES & RULES

Fed. R. Civ. P.,
  Rule 12(b)(6)......................................................................................................2, 8

## OTHER AUTHORITIES

The Global Justice Clinic (NYU School of Law), Walter Leitner Int'l Human Rights Clinic
(Fordham Law School), *Suppressing Protest: Human Rights Violations in the U.S. Response to
Occupy Wall Street* (July 21, 2012) ............................................................................3

Plaintiffs George Packard, Edward Beck, Michelle Berger, Ari Cowan, Connor Hicks, Charles Meachem, Chris Phillips, Larry Swetman, and Amadon Dellerba ("Plaintiffs") submit this Opposition to Defendants' Motion for Reconsideration (the "Motion") (ECF No. 62) to this Court's Order granting in part and denying in part Defendants' Rule 12(b)(6) motion (the "Order" or "Motion to Dismiss Decision") (ECF No. 59).

## I.   INTRODUCTION

After reading Plaintiffs' Complaint and the motion papers from both parties, the Court held that Plaintiffs plausibly pled a *Monell* claim that the City of New York's failure to train the NYPD in the First Amendment Rights of Protestors resulted in the false arrest of Plaintiffs.

Defendants decry that this Court erred in its Motion to Dismiss Decision but, in actuality, Defendants merely disagree with the Court's reasoning and conclusion. However, mere disagreement does not provide the necessary basis for a motion for reconsideration. *See, e.g., Kubicek v. Westchester County*, 08 Civ. 372 (ER), 2014 U.S. Dist. LEXIS 139049, at *2 (S.D.N.Y. Sept. 30, 2014) ("Courts have repeatedly been forced to warn litigants that such motions [for reconsideration] should not be made reflexively to reargue those issues already considered when a party does not like the way the original motion was resolved.") (internal citations omitted).

Defendants merely rehash their specious arguments raised in the motion to dismiss, which ignored the plausibility analysis of a Rule 12(b)(6) motion and instead attacked the Plaintiffs' Complaint as if it was a Rule 56.1 statement on a motion for summary judgment after discovery. While Plaintiffs identified and pled facts that support their allegations including, *inter alia*, the Suppressing Protest Report,[1] New York Times articles, and the deposition testimony of

---

[1] The Global Justice Clinic (NYU School of Law), Walter Lestner Int'l Human Rights Clinic (Fordham Law School), *Suppressing Protest: Human Rights Violations in the U.S. Response to*

NYPD officers, Defendants seek to impose an incorrect and heightened requirement, not simply of pleading, but of proof at this stage of the litigation. *See, e.g.,* Def. Mem. at 7[2] ("While the Complaint might allege facts suggesting that the City had notice . . . the Court erroneously relied on the Report to conclude that the City had notice. . ."). Defendants go so far as to impugn the Court and state that "neither the Complaint nor the *Court* has shown any facts actually showing that any member of the NYPD misapplied the disorderly conduct statute. . ." *Id.* at 16 (emphasis added). Defendants' interpretation of the law erroneously lays the burden of persuasion on the Court rather than recognize that the Court found that "Plaintiffs plausibly allege that the City knew or should have known that the failure to train the NYPD in the First Amendment principles would lead to unconstitutional results, and, therefore, have sufficiently pleaded the City's deliberate indifference." Order at 18.

Because Defendants merely disagree with the Court's conclusions and repeat their prior arguments, Defendants' Motion should be denied. "A motion for reconsideration is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion nor a chance for a party to take a second bite at the apple." *Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 396 (E.D.N.Y. 2013) (internal citations omitted).

## II.     RECONSIDERATION STANDARD

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Gp.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011)(internal citations omitted). "A motion for

---

*Occupy Wall Street* (July 21, 2012). Herein, referred to as the "Suppressing Protest Report" or "Report".

[2] The Memorandum of Law in Support of Defendant City of New York's Motion for Reconsideration (ECF No. 63) is referred to herein as "Def. Mem."

reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)) (internal quotations omitted).   "To show 'manifest injustice,' the moving party must ordinarily show that the Court overlooked a key fact in the record or a controlling point of law." *Adamou v. Cnty. of Spotsylvania*, 12-cv-7789 (ALC), 2016 U.S. Dist. LEXIS 32505, at *10 (S.D.N.Y. Mar. 14, 2016) (internal citations omitted).   "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Further, "[i]t is within the sound discretion of the district court whether or not to grant a motion for reconsideration." *Boyd v. J.E. Robert Co.*, No. 05 Civ. 2455 (KAM), 2013 U.S. Dist. LEXIS 140546, at *2 (E.D.N.Y. Sept. 27, 2013) (quoting *Markel Am. Ins. Co. v. Linhart*, No. 11 Civ. 5094, 2012 U.S. Dist. LEXIS 166525, at *2 (E.D.N.Y. Nov. 16, 2012)), *aff'd*, 765 F.3d 123 (2d Cir. 2014)).   "In exercising this discretion, the court must be mindful that a motion for reconsideration is not favored and is properly granted only upon a showing of exceptional circumstances." *Id.* (quoting *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010)) (internal quotations omitted).

## III.   DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN FOR A MOTION FOR RECONSIDERATION AS THEY FAIL TO SHOW CLEAR ERROR BY THE COURT

Defendants have failed to meet their heavy burden for their Motion, failing to identify *any* intervening change in law, *any* new facts, or *any* facts overlooked by the Court in its Order.

3

Instead, Defendants solely disagree with Court's Order calling it "clear error," yet fail to illustrate how the Court erred, and simply raise the same unpersuasive arguments that were unavailing on the motion to dismiss.  Defendants were unable to identify any overlooked facts as the Court thoroughly evaluated all of the briefing in this litigation to date, weighed each party's arguments, and found sufficient allegations to support Plaintiffs' failure to train claims.

Indeed, the Court held that Plaintiffs plausibly alleged that the City knew or should have known that the failure to train the NYPD in First Amendment principles would lead to unconstitutional results, such as violating Plaintiffs' First and Fourth Amendment rights.  Order at 18.  In its Order, the Court held that Plaintiffs adequately and plausibly alleged that the City knew it would encounter individuals engaged in expressive speech activity, that the City was on notice of its history of falsely arresting protestors, and that the insufficient training resulted in the violation of Plaintiffs' constitutional rights.  *Id.* at 16-18.  The Court also held that there were plausible allegations as to the violations of Plaintiffs' First and Fourth Amendment rights.

As part and parcel of the failure to train claim, the Court held that Plaintiffs adequately alleged false arrest claims in violation of their Fourth Amendment rights.  Order at 7-9, 10-11 ("Plaintiffs state a claim for false arrest against the City and 'a §1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law.'") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 2011)).  While the Court did not hold that the allegations supported an inference that the false arrests were the result of a City practice and policy of arresting protestors, the Court *did* hold that the allegations supported an inference that the false arrests were the result of the City's failure to train its police officers in First Amendment principles.  Order at 15-18 ("Plaintiffs have pleaded that the failure to train on First

Amendment principles led to the false arrests and misapplication of the disorderly conduct statute in violation of Plaintiffs' First and Fourth Amendment Rights."). The Court recognized that the text of the pleadings and Plaintiffs' briefing on the motion to dismiss sufficiently pled and set forth the Fourth Amendment claims in order to highlight the exact constitutional violations visited upon Plaintiffs due to the City's failure to train its police officers in First Amendment principles.[3]

Moreover, the Court recognized that Plaintiffs plausibly pled an underlying false arrest claim as well as an underlying First Amendment retaliation claim in support of their *Monell* claim. Order at 11 ("The complaint also sets forth allegations sufficient to state a First Amendment claim."). The First Amendment retaliation claim is another constitutional violation underlying Plaintiffs' *Monell* claims resulting from the City's insufficient training of the NYPD in proper First Amendment policing principles.

As explained in *Askins*, while Plaintiffs must prove and establish the underlying constitutional torts that injured Plaintiffs as part and parcel of their *Monell* claim,[4] the underlying torts need not be adjudicated through judgment:

---

[3] The false arrest claim was pled by Plaintiffs in order to provide notice of the underlying constitutional tort that is the heart of Plaintiffs' *Monell* claim and this litigation: that the City knew or should have known that the failure to train the officers of the NYPD in the First Amendment principles would lead to unconstitutional results. Accordingly, while Plaintiffs must prove that the City's failure to train the NYPD led to their false arrests, Plaintiffs do not need to obtain a judgment on the false arrest claim to pursue the *Monell* claim against the City. *See, e.g., Askins v. Doe*, 727 F.3d 248, 254 (2d Cir. 2013) ("[W]here the plaintiff has brought a timely suit against the municipality and has properly pleaded and proved that he was the victim of the federal law tort committed by municipal actors and that the tort resulted from an illegal policy or custom of the municipality, the fact that the suit against the municipal actors was untimely, or that the plaintiff settled with them, or abandoned the suit against them, is irrelevant to the liability of the municipality.").

[4] Insofar as Defendants now dispute the Court's holding of adequately pled false arrest claims, Defendants failed to raise the affirmative statute of limitations defense to the state claim in their

> It does not follow, however, that the plaintiff must obtain *judgment* against the individual tortfeasors to establish the liability of the municipality.   It suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality.

*Askins*, 727 F.3d at 253 (emphasis added).

Accordingly, in addition to the explicitly plead Fourth Amendment false arrest claims, the Court found "Plaintiffs have pleaded facts sufficient to allege an underlying violation of their First and Fourth Amendment rights by NYPD officers, 'persons for whose conduct the municipality can be held responsible.'" Order at 12 (quoting *Askins*, 727 F.3d at 253).

## IV.    DEFENDANTS MERELY REPLICATE PREVIOUS ARGUMENTS

Rather than proceeding with this litigation in accordance with the Order, Defendants took the unnecessary and extraordinary step of filing this Motion because they disagree with the Court's sustaining Plaintiffs' core claims.  Defendants do not identify *any* intervening change in law, *any* new facts, or *any* facts overlooked by the Court in its Order relating to Plaintiffs' failure to train claim.  Defendants were unable to identify any overlooked facts as the Court's Order thoroughly evaluated Plaintiffs' allegations and evaluated each piece of factual support identified by Plaintiffs in the Complaint.  *See* Order at 15-18.  Instead, Defendants simply take issue with the Motion to Dismiss Decision being decided in Plaintiffs' favor and replicate many of the same arguments raised in their motion to dismiss briefing.  *Compare e.g.*, Def. Mem. at 6 (deliberate

---

motion to dismiss briefing.  Indeed, Defendants' motion to dismiss spent a scant three paragraphs addressing Plaintiffs' false arrest claims, federal or state.  Rather than raise an affirmative statute of limitations defense, Defendants chose to prematurely raise an affirmative defense of qualified immunity. *See* ECF. No. 43 at 23.  While Defendants now seek to rectify their litigation choice, "[n]ew arguments . . . are not to be considered [on a motion for reconsideration] unless there is some valid reason they could not have been previously advanced when the motion was originally argued."  *Richard Feiner & Co. v. BMG Music Spain, S.A.*, 01 Civ. 0937 (JSR), 2003 U.S. Dist. LEXIS 10975, **3-4 (S.D.N.Y. June 25, 2003) (citing *Novornosk Joint Stock Company "AZOT" v. Revson*, 95 Civ. 5399 (JSR), 1999 U.S. Dist. LEXIS 15022 (S.D.N.Y. Sept. 28, 1999)).

indifference requires "proof" that plaintiffs must "show") with MTD Mem. at 5[5] (same); Def. Mem. 15-16 (listing cases) with Def. MTD Reply at 9-10[6] (listing same cases); Def. Mem. 7-10 (attacking the Suppressing Protest Report) with Def. MTD Reply at 11-12 (same).  Defendants merely seek another chance to attack Plaintiffs' claims with the same arguments as they are unhappy with the result of this Court's Order.

Defendants once again argue that somehow Plaintiffs needed to "prove" deliberate indifference at this early stage in the litigation. *Compare* Def. Mem. at 6 (deliberate indifference requires "proof" that Plaintiffs must "show") with MTD Mem. at 5 (same).  This argument conflates what must be proven at trial and the elements of the claims that Plaintiffs have plausibly *alleged*.

Plaintiffs identified factual support for each of their claims in order to firmly meet the motion to dismiss burden of plausibility.  Plaintiffs identified multiple sources of information, not as a matter of proof for trial, but in support of their allegations and each element of the asserted claims.  Indeed, while Plaintiffs identified multiple sources of information, the Court found particular support for Plaintiffs' allegations in the Suppressing Protest Report and held that the Report provided sufficient factual support to make the allegations plausible, particularly with regard to the City's deliberate indifference towards the infringement of protestor First Amendment rights.

Defendants similarly re-attack the Suppressing Protest Report, relying on previously raised non-binding authority.  *See* Def. Mem. 7-10 (attacking the Suppressing Protest Report)

---

[5] Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure (ECF No. 43) is referred to herein as "MTD Mem."

[6] Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure (ECF No. 46) is referred to herein as "Def. MTD Reply."

with Def. MTD Reply at 11-12 (same).  Without citing to an intervening change in law, or controlling authority from the Second Circuit, Defendants merely seek an improper second bite at the apple.  *See, e.g., Mikol*, 554 F. Supp. 2d at 500 ("Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied.") (internal citation omitted).  The Court's Order explicitly evaluated the Suppressing Protest Report in conjunction with the cases cited by Defendants and found Defendants' original arguments (now repeated here) unpersuasive.[7]

Moreover, Defendants misconstrue and ignore the applicable and relevant sections of the Suppressing Protest Report.  As this Court was well-aware when it identified the long list of appendix arrests in support of the City's notice of prior false arrests, there is also the Report's detailing of research into the NYPD's misapplication of the disorderly conduct statute to sidewalk protest. For example, Chapter 7, Section 3 of the Suppressing Protest Report is entitled: "Sidewalk Closures and 'Blocking Pedestrian Traffic' Arrests."  The Report identified multiple instances of improper police conduct involving sidewalk protests that resulted in some level of constitutional deprivation of rights, including on the following dates in 2011 - September 17, October 1, October 5, October 15, October 18, November 5, November 15, November 20,

---

[7] Defendants now propound arguments seeking to distinguish *Marlin v. City of New York*, No. 15 Civ. 2235 (CM), 2016 U.S. Dist. LEXIS 122426 (S.D.N.Y. Sept. 7, 2016), but failed to raise these arguments in the motion to dismiss briefing and are precluded from raising these arguments on the motion for reconsideration.  *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409 (WHP), 2010 U.S. Dist. LEXIS 50436, at *4 (S.D.N.Y. May 21, 2010) ("Reconsideration is *not* an invitation for parties to treat the Court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.")(emphasis in original and internal citations omitted).  None of the authority discussed by Defendants is an intervening change in law or controlling authority from the Second Circuit.

December 17, and in 2012 - January 1, January 6, March 7, March 17-18, March 24, May 1, May 30, June 13, June 17, July 11. *See* Suppressing Protest Report at 115, n. 307.

Similarly, the following examples of the misuse of the disorderly conduct statute against protesters are taken from Chapter 7, Section 3 of the Suppressing Protest Report.

(i)     In one typical example, on October 18, 2011 the police arrested a prominent author [Naomi Wolf] and her partner while they stood on the sidewalk. After attending a private function, the author had expressed concern that a small group of protesters had been forced to the opposite side of the street by police threats of arrest; she insisted that it was not a violation to walk on the sidewalk as a sign of protest. When she began to peacefully protest on the sidewalk, police arrested her and her partner. The charges were eventually dropped. *Id.*

(ii)    On March 24, 2012 one activist reported that she was threatened with arrest when she, with five or six others, was doing "jail support"—waiting on the sidewalk outside of jail for other protesters to be released to provide them legal and social support. Officers repeatedly came out to tell them that they were "blocking the sidewalk." The activist, who had committed to jail support because she believed it entailed a "low risk" of arrest, told the officers that they were not blocking the sidewalk; she also asked passing pedestrians whether they could indeed pass. Officers, however, said that if the jail support team stayed, they "were going to be arrested." *Id.*

(iii)   NYCLU reported a similar incident on June 13, 2012: "a legal observer witnessed an officer threaten to charge those waiting outside the seventh precinct with disorderly conduct if just one pedestrian had to change course to walk around them, even though the group was taking up far less than half of the sidewalk. *Id.* at 117, n. 322.

(iv)    Similarly, on July 11, 2012, after police and Brookfield guards aggressively forced numerous protesters out of Zuccotti Park and applied a series of shifting and arbitrary rules in the park, approximately twenty protesters assembled on a sidewalk across the road. The protesters peacefully sang and chanted. Officers mobilized, and ordered the sidewalk fully "closed," citing protester "safety" reasons and "pedestrian traffic," although there was zero other pedestrian traffic or any evident public order concerns. A member of the Research Team asked officers why they did not simply, as per the relevant law, ensure that protesters only assembled on half of the sidewalk, rather than dispersing the entire group under threat of arrest. She was told that the officers "did not know" and were "just following orders," and that if she did not move, she would be arrested.

Protesters began to chant, "I get confused / when the law / changes every day." *Id*. at 117.

The foregoing statements are, of course, just a sampling of the relevant statements in the Suppressing Protest Report.

Furthermore, the Suppressing Protest Report is only one of the identified sources that supplemented Plaintiffs' allegations, which in themselves assisted the Court in finding Plaintiffs' failure to train claim to be plausible.  For example, with citations to specific allegations in the Complaint, the Court noted that Plaintiffs had sufficiently alleged that the City knew "there would be protests to celebrate the first anniversary of OWS and accordingly knew that the NYPD would 'encounter individuals engaged in expressive speech activity,'" especially as the City and the NYPD issued police bulletins and details and ultimately deployed approximately 1,300 police officers to the Wall Street area on September 17, 2012.  Order at 16.  Defendants, in raising their previously rejected arguments about the Suppressing Protest Report, are merely attacking one tree in the forest of facts supporting Plaintiffs' claims.

Accordingly, Defendants' repetition of the same arguments raised during the motion to dismiss briefing without identifying any new facts or any new controlling case law is unavailing. Defendants' arguments were all previously raised and deemed to be without merit when the Court sustained Plaintiffs' claims, allowing Plaintiffs to pursue the failure to train claims.

## V.    CONCLUSION

For the reasons stated above and in the Memorandum of Law in Opposition to the Motion to Dismiss (ECF No. 45), Plaintiffs respectfully request that the Court deny the Motion for Reconsideration.

DATED:    April 4, 2017          **WOLF HALDENSTEIN ADLER**
                                 **FREEMAN & HERZ LLP**

                                  /s/ Jeffrey G Smith

Jeffrey G. Smith
Janine L. Pollack
Kevin G. Cooper
270 Madison Avenue
New York, NY 109016
Tel:  (212) 545-4600
Fax:  (212) 686-0114
Smith@whafh.com
Pollack@whafh.com
KCooper@whafh.com

**STECKLOW & THOMPSON**
Wylie M. Stecklow (WS6012)
David A. Thompson (DT3991)
217 Centre Street, 6th Floor
New York, NY 10013
Tel:  (212) 566-8000
Fax: (212) 202-4952
Wylie@setlaw.nyc
DThompson@setlaw.nyc

*Counsel for Plaintiffs*