

**ZACHARY W. CARTER**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**AMY ROBINSON**
*Spec. Assistant Corporation Counsel*
*Phone: (212) 356-3518*
*Fax: (212) 356-3509*
arobinso@law.nyc.gov

January 18, 2019

**VIA ECF and E-MAIL**
Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    George Packard, et al. v. City of New York, 15-CV-7130 (AT)

Your Honor:

      I am an attorney in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and assigned to represent defendant in the above-referenced matter. Defendant submits this pre-motion letter per the Court's order dated November 13, 2018, (Dkt. No. 216) and Your Honor's Individual Rules, § III(C), seeking leave to file a motion for summary judgment under Fed. R. Civ. P. 56 and to request a briefing schedule in anticipation of its motion. As per Your Honor's Individual Rules, defendants' Rule 56.1 statement and plaintiffs' corresponding counterstatement are attached.

      By way of background, plaintiffs' putative class claims stem from their arrests during Occupy Wall Street ("OWS") protests on September 15—17, 2012.[1] Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) on February 18, 2016. (Dkt. No. 41). On March 2, 2018, the Court issued its decision on defendants' motion dismissing the individual defendants and determining that only plaintiffs' claims for false arrest, First Amendment retaliation and municipal liability based on a failure to train theory remain. (Dkt. No. 59). Defendants filed a motion for reconsideration of the Court's decision on March 16, 2017. (Dkt. No. 62). The Court issued its decision on the reconsideration on July 17, 2017, dismissing plaintiffs' claim for false arrest. (Dkt. No. 83). Thus, the only remaining claims include First Amendment retaliation and municipal liability based on a theory of failure to train under Monell v. Department of Social Services, 436 U.S. 658, (1978). Defendant now requests leave to file a motion for summary judgment on plaintiffs' remaining claims.

---

[1] The putative class representatives were all arrested on September 17, 2012. There is no putative class representative arrested on September 15-16, 2012.

The record shows that there was probable cause or at least arguable probable cause to arrest plaintiffs. Video and video stills show Packard in a group that sat down in the middle of a sidewalk directly in front of a TD Bank entrance entirely blocking pedestrian traffic in violation of NY PL §240.20(5), which makes it a violation when someone "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof obstructs pedestrian or vehicular traffic." Video and video stills show that Packard was in a large group of individuals and just a couple of feet from Inspector Winski when Winski gave instructions to disperse using a bullhorn, which Packard ignored in contravention of NY PL § 240.20(6), which makes it a violation when an individual "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [] congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." Video further shows that the warnings and instructions given by Winski were sufficiently communicated and that Packard was given more than a reasonable opportunity to comply.

Video and video stills show Beck in a group of protesters standing on a heavily-trafficked sidewalk in the Wall Street area blocking pedestrian traffic from building to curb in violation of PL §240.20(5). Video and video stills further show an officer giving lawful orders to disperse, which Beck ignored in violation of PL §240.20(6). Furthermore, video and video stills clearly show Beck physically interfering in and obstructing an officer's arrest of another protester in violation of PL §195.05, which states that, "[a] person is guilty of obstructing governmental administration when [s]he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]"

Video and video stills show Cowan in a group of protesters carrying a large sign on a sidewalk in the Wall Street area entirely blocking pedestrian traffic from building to curb in violation of PL §240.20(5). The same video shows an officer giving repeated warnings to the group via bullhorn stating that if they continued to block pedestrian traffic, they would be arrested, which orders the group, including Cowan, ignored in violation of PL §240.20(6).

Video and video stills show Berger standing in a heavily-trafficked intersection in the Wall Street area with a group of individuals causing vehicular traffic to come to a standstill in violation of PL §240.20(5). Video further shows that numerous orders were given to get out of the street and clear the intersection, which Berger ignored in violation of PL §240.20(6). Berger was also in violation of the New York Vehicle and Traffic Law ("VTL"). VTL § 1156(a) required plaintiff to walk on the sidewalk, not the roadway. That provision provides, "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." When she did not, she was in violation of this section and subject to arrest. Under VTL § 1102, "[n]o person shall fail or refuse to comply with any lawful order or direction of any police officer…duly empowered to regulate traffic." VTL §1102 required Berger's to comply with police orders to clear the roadway. When she did not, she was in violation of this section and subject to arrest.

Accordingly, probable cause existed to arrest plaintiffs under each of the provisions above; therefore any claims related to their arrests must be dismissed.

Even if probable cause was lacking for plaintiffs' arrests, the officers are entitled to qualified immunity. Here, the officers did not violate any clearly established law, and it was objectively reasonable for them to believe that plaintiffs' arrests were lawful given plaintiffs' conduct leading up to their arrests; namely blocking an intersection and sidewalks in heavily-trafficked areas surrounding Wall Street. See Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014) ("The relevant, dispositive inquiry in determining whether a right is clearly establishes is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (citations omitted). Accordingly, if the Court finds probable cause lacking, it is was by no means clearly established that arresting plaintiffs for refusing to disperse from an intersection and sidewalks during various demonstrations was unlawful or that the officers were "plainly incompetent" or "knowingly violating the law," as the Court would be required to find in denying qualified immunity. Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Further, plaintiffs cannot prevail on their First Amendment retaliation claim. First, plaintiffs' retaliation claim fails as probable cause existed for their arrests and qualified immunity shields the actions of the officers. Probable cause is a complete defense to a claim of First Amendment retaliation. Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012). The same holds true to the extent the Court finds qualified immunity for plaintiffs' arrests. "As with false-arrest claims, arguable probable cause triggers qualified immunity against [First Amendment] retaliation claims." Depew v. City of New York, 15 cv 3821, p. 8 (S.D.N.Y. Dec. 13, 2016) (collecting cases).

Second, plaintiffs' actions, though defiant, are not protected by the First Amendment. Plaintiffs cannot show that they were engaged in First Amendment expression by their acts of blocking traffic on streets and sidewalks in the Wall Street area. Certainly not in a manner so clearly defined as to preclude qualified immunity. Where a particular form of expressive activity has not been clearly defined, no First Amendment retaliation theory can lie. See Gonzalez v. City of New York, 2015 U.S. Dist. LEXIS 151810, *18 (S.D.N.Y. Nov. 9, 2015). Further, even if plaintiffs' assembly at various locations in the Wall Street area prior to their arrests is considered to have been expressive, their decision to defy orders by police had no expressive component. Plaintiffs can make no showing that their acts were clearly defined as expressive, both conveying a particular message and one that was likely to be understood as they must to overcome qualified immunity.

Third, in order to survive summary judgment on a First Amendment retaliation claim, a plaintiff must show specific proof of improper motivation. Curley v. Village of Suffern, 268 F.3d 65, 73, (2d Cir. 2001). The mere fact that these incidents occurred during OWS protests is not by itself sufficient evidence of improper motivation to survive defendants' motion for summary judgment. See Higginbotham v. Sylvester, 218 F. Supp. 3d 238, 245-46 (S.D.N.Y. 2016), aff'd, No. 16-3994, 2018 U.S. App. LEXIS 20637 (2d Cir. 2018); Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515, at *4 (S.D.N.Y. 2014), aff'd, 606 F. App'x 17 (2d Cir. 2015). Moreover, there is no evidence showing that in arresting plaintiffs, the officers were motivated by any First Amendment protected conduct on the part of plaintiffs. "First Amendment retaliation requires evidence of the 'actual mental state' of the defendants." Allen v. City of New York, 03 cv 2829 (KMW), 2007 U.S. Dist. LEXIS 15

(S.D.N.Y. Jan. 3, 2007) (Kerman v. City of New York, 261 F.3d 229, 242 (2d Cir. 2001)).  Of particular note, plaintiffs did not depose any officer in this case in support of this claim.  Moreover, it is clear that what led to plaintiffs' arrests was not innocuous expressive conduct, but deliberate attempts to defy the police when police, (1) attempted to clear three sidewalks in the Wall Street area entirely blocked by protesters, including Packard, Beck and Cowan, and (2) attempted to clear a heavily-trafficked intersection in the Wall Street area, which was fully blocked by protesters, including Berger, preventing the flow of vehicular traffic. It is unclear how the acts of standing in a busy intersection and fully blocking entire sidewalks could be sufficiently "communicative" to enjoy First Amendment protections, let alone how they would be clearly established to overcome qualified immunity on the same question.  Clark v. Comm. for Creative Non-Violence, 468 U.S. 288, 294 (1984).   Accordingly, plaintiffs cannot establish their First Amendment retaliation claim, and this claim necessarily must fail.

Finally, plaintiffs' claim under Monell must be dismissed.  Where there is no underlying constitutional violation, there can be no liability pursuant to Monell.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). As noted above, plaintiffs' inability to show that their arrests were not justified by their behavior is fatal to their Monell claim. Furthermore, even if there were a constitutional violation found, the record clearly shows that officers were thoroughly trained on First Amendment principles as the case law in this Court and the Second Circuit pertaining to the policing of OWS bears out. In short, plaintiffs cannot show that there was any failure to sufficiently train officers as to First Amendment principles. As a result, plaintiffs' Monell claim must be dismissed.

For these reasons and others that will be set forth, defendants seek leave to file a motion for summary judgment on plaintiffs' claims and request a briefing schedule for their anticipated motion.

Thank you for your consideration herein.

Respectfully submitted,

/s/
Amy Robinson
Special Federal Litigation Division


cc:     Plaintiffs' counsel *VIA ECF and E-mail*
Encls. VIA E-MAIL at Torres_nysdchambers@nysd.uscourts.gov