Index No. 15-CV-7130 (AT) (SDA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE PACKARD, EDWARD BECK, ARI COWAN
and MICHELLE BERGER, *individually and on behalf of
a class of all others similarly situated*,

                                                      Plaintiffs,


                              -against-


THE CITY OF NEW YORK,

                                                      Defendant.


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**


*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y.  10007*

Of Counsel:  *Amy Robinson*
Tel:  (212) 356-3518
Matter #:  2015-043830

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT

          I.     PLAINTIFFS' DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER §1983 CLAIM MUST BE DISMISSED ..................................................... 8

         II.    PROBABLE CAUSE EXISTED FOR PLAINTIFFS' ARRESTS .................................................. 8

         III.   PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIM FAILS ..................................................... 19

         IV.  PLAINTIFFS' MONELL CLAIM MUST BE DISMISSED .................................................................... 22

CONCLUSION................................................................................................................ 26

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

Allen v. City of New York,
    2007 U.S. Dist. LEXIS 15 (S.D.N.Y. 2007)..................................................................20

Atwater v. Lago Vista,
    532 U.S. 318 (2001)..............................................................................................................18

Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,
    520 U.S. 397 (1997)..............................................................................................................23

Berg v. City of New York,
    2018 U.S. App. 20646 (2d Cir. 2018).................................................................................25

Bery v. City of New York,
    97 F.3d 689 (2d Cir. 1996).....................................................................................................9

Brown v. City of New York,
    2014 U.S. Dist. LEXIS 83513 (S.D.N.Y. 2014)................................................................16

Brown v. City of New York,
    2017 U.S. App. LEXIS 11937 (2d Cir. 2017) ....................................................................25

C.G. v. City of New York,
    2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013)..............................................................16

Cantwell v. Connecticut,
    310 U.S. 296 (1940)........................................................................................................ 12-13

Caravalho v. City of New York,
    2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. 2016)..........................................................11, 14

Caravalho v. City of New York,
    2018 U.S. App. 10785 (2d Cir. 2018).................................................................................25

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................................8

City of Canton v. Harris,
    489 U.S. 378 (1989)..............................................................................................................23

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)..............................................................................................................22

Concerned Jewish Youth v. McGuire,
    621 F.2d 471 (2d Cir. 1980)...................................................................................................9

**Cases**                                                                                     **Pages**

Connick v. Thompson,
    563 U.S. 51 (2011)...........................................................................................23

Covington v. City of New York,
    171 F.3d 117 (2d Cir. 1999)...........................................................................8

Cox v. Hainey,
    391 F.3d 25 (1st Cir. 2004).........................................................................11

Cox v. Louisiana,
    379 U.S. 536 (1965)...................................................................................13

Crenshaw v. City of Mount Vernon,
    372 Fed. Appx. 202 (2d Cir. 2010)..............................................................13

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001).....................................................................20, 21

Devenpeck v. Alford,
    543 U.S. 146 (2004).....................................................................................9

Dorsett v. Cnty. of Nassau,
    732 F.3d 157 (2d Cir. 2013)........................................................................19

Fabrikant v. French,
    691 F.3d 193 (2d Cir. 2012).......................................................................20

Garcia v. City of New York,
    2015 U.S. App. LEXIS 2762 (2d Cir. 2015) ...........................................25

Garcia v. Doe,
    779 F.3d 84 (2d Cir. 2015)...................................................................7, 8, 9

Gonzalez v. City of New York,
    2017 U.S. Dist. LEXIS 5688 (S.D.N.Y. 2017) .......................................18

Hays v. City of New York,
    2017 U.S. Dist. LEXIS 28090 ..................................................................25

Higginbotham v. City of New York,
    2018 U.S. App. LEXIS 20637 (2d Cir. 2018) .........................................25

Holmes v. City of New York,
    2018 U.S. Dist. LEXIS 53419 (S.D.N.Y.).................................................18

**Cases**                                                                                                    **Pages**

Husbands v. City of New York,
    2007 U.S. Dist. LEXIS 61042 (S.D.N.Y. 2007)....................................................................17

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006)...........................................................................................9

Kass v. City of New York,
    2017 U.S. App. LEXIS (2d Cir. 2017) ........................................................9, 11, 14, 16, 17, 25

In re Kendell R.,
    897 N.Y.S.2d 83 (1st Dep't 2010) ...............................................................................17

Kerman v. City of New York,
    261 F.3d 229 (2d Cir. 2001).........................................................................................20

Lebowitz v. City of New York,
    U.S. Dist. LEXIS 82428 (S.D.N.Y. 2014)
    aff'd 2015 U.S. App. LEXIS 8916 (2d Cir. 2015)...............................................................20

Lebowitz v. City of New York,
    2015 U.S. App. LEXIS 9106 (2d Cir. 2015) .....................................................................25

Marcavage v. City of New York,
    2010 U.S. Dist. LEXIS 107724 (S.D.N.Y. 2010)................................................................17

Marcavage v. City of New York,
    689 F.3d 98 (2d Cir. 2012)...................................................................................7, 9, 14

Martinez v. City of New York,
    2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. 2008),
    aff'd Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. 2009).............................................22

Mastrovincenzo v. City of New York,
    435 F.3d 78 (2d Cir. 2006)...........................................................................................9

Mediavilla v. City of New York,
    2016 U.S. Dist. LEXIS 192198 (S.D.N.Y. 2016)............................................................8, 16

Papineau v. Parmley,
    465 F.3d 46 (2d Cir. 2006).....................................................................................12, 21

People v. Galpern,
    259 N.Y. 279 (1932) .................................................................................................13

People v. Romeo,
    9 A.D.3d 744 (3d Dep't 2004) ....................................................................................17

**Cases**                                                                     **Pages**

People v. Todaro,
    26 N.Y.2d 325 (1970) ................................................................11

Pesola v. City of New York,
    2017 U.S. Dist. LEXIS 140967 (S.D.N.Y. 2017)................................25

Pinto v. City of New York,
    2018 U.S. App. LEXIS 24220 (2d Cir. 2018) ........................................18

Pluma v. City of New York,
    2017 U.S. App. LEXIS 6096 (2d Cir. 2017) ........................................25

Scott v. Harris,
    550 U.S. 372 (U.S. 2007)................................................................7

Sforza v. City of New York,
    2009 U.S. Dist. LEXIS 27358 (S.D.N.Y.2009) ................................8

Shamir v. City of New York,
    2015 U.S. App. LEXIS 18420 (2d Cir. 2017) ........................19, 24, 25

Shamir v. City of New York,
    804 F.3d 553 (2d Cir. 2015)........................................................8-9

Sherrard v. City of New York,
    15-CV-7318, Dkt. No 123 ................................................19, 24

Soto v. City of New York,
    13-CV-8474, Dkt. Nos. 203, 204................................................19, 24

Tardif v. City of New York,
    2017 U.S. Dist. LEXIS 41318 (S.D.N.Y. 2017)................................25

Thimmesch v. City of New York,
    2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013)................................25

U.S. v. Nelson,
    500 Fed. App'x 90 (2d Cir. 2012)................................................13

Wiles v. City of New York,
    2018 U.S. Dist. LEXIS 148024 (S.D.N.Y. 2016),
    aff'd 2016 U.S. App. LEXIS 5610 (2nd Cir. 2018)................1, 14, 19, 24, 25

Wood v. Moss,
    134 S. Ct. 2056, 188 L. Ed. 2d 1039 (2014) ................................13

**Cases**                                                                      **Pages**

Zalaski v. City of Hartford,
    723 F.3d 382 (2d Cir. 2013)..................................................................11

**Statutes**

42 U.S.C. §1983..................................................................................1, 8

Fed. R. Civ. P. 56..................................................................................1

Local Rule 56.1..................................................................................1

N.Y. Penal Law §195.05......................................................10, 15, 16, 17, 18

N.Y. Penal Law §240.20(5)............................................3, 4, 6, 7, 9, 10, 12

N.Y. Penal Law §240.20(6)............................................6, 9, 10, 12, 15, 16

New York City Charter §435(a) ......................................................9, 14

New York Vehicle and Traffic Law §110 ......................................................10

New York Vehicle and Traffic Law §1102 ..............................................10, 18

New York Vehicle and Traffic Law §1156(a)............................................10, 18

## PRELIMINARY STATEMENT

Plaintiffs George Packard, Edward Beck, Ari Cowan and Michelle Berger ("Plaintiffs") bring this putative class action pursuant to 42 U.S.C. §1983 against defendant the City of New York, alleging that they were deprived of their constitutional rights as a result of their arrests on September 17, 2012, in the Wall Street area during Occupy Wall Street ("OWS") demonstrations. The claims remaining are: (1) false arrest, (2) First Amendment retaliation and (3) municipal liability on a theory of failure to train.[1] Defendant, hereby submits this Memorandum of Law in support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

September 17, 2012, was the one-year anniversary of Occupy Wall Street ("OWS"). Members of the OWS movement planned a number of demonstrations around lower Manhattan on that day to commemorate this anniversary. Wiles v. City of New York, 2018 U.S. Dist. LEXIS 148024, at 4-5 (S.D.N.Y. 2016), aff'd 2016 U.S. App. LEXIS 5610 (2nd Cir. 2018). From September 15-17, 2012, thousands of individuals came to New York City to participate in demonstrations in connection with the anniversary. Def's 56.1 ¶2.[2] The New York City Police Department ("NYPD") had information via social media that demonstrators were planning to shut down Wall Street and prevent the New York Stock Exchange from opening during the period, September 15-17, 2012, as reflected in the NYPD Detail Requests, "Occupy Wall Street,

---

[1] Plaintiffs' claims against the individual defendants were dismissed by this Court as was their Monell claim based on the existence of a municipal policy or practice. See Dkt. No. 59. Plaintiffs' state law false arrest claim was dismissed by this Court. See Dkt. No 83. The Court created a First Amendment retaliation claim, which was not pled. Id.

[2] "Def's 56.1" refers to Defendant's Local Rule 56.1 Statement.

Demo/Sleep-In," in the Wall Street area and "All Roads Lead to Wall Street Demonstration." Def's 56.1 ¶¶3, 4.

On September 17, 2012, at 6:30 a.m., George Packard arrived at the "Red Cube" in Zuccotti Park and remained at what he referred to as a "marshalling location" for an "affinity group," which included five hundred protesters from "Occupy Faith." Def's 56.1 ¶¶5-7. Packard admits that he led the group of five hundred protesters in a march from the Red Cube in Zuccotti Park on the sidewalk going southbound on Broadway towards the Wall Street area. Def's 56.1 ¶8. Video evidence shows that the march led by Packard was a planned action, which the NYPD and the press were prepared for. Video depicts: (1) barriers being delivered at 7:08 a.m., by the NYPD directly in front of the TD Bank on Wall Street, (2) these barriers being off-loaded from a truck and the NYPD immediately thereafter beginning to create a press enclosure to accommodate the press, which was completed by 7:11 a.m., and (3) people holding large video cameras and placing them on tripods begin filling the enclosure in anticipation of the demonstration that would be occurring there. Def's 56.1 ¶¶9-13. Video further shows that right on time, Packard and the mass of protesters behind him arrived and stopped right in front of the press enclosure and the TD Bank densely filling up the entire sidewalk. Def's 56.1 ¶14. At this time, Packard claims that he approached NYPD Chief Purtell and told him that he wanted to proceed down to Wall Street, and Purtell instructed Packard to turn around and go back the way he came—reverse his present course and go back north. Def's 56.1 ¶¶15-16, 18. When asked at his deposition if he did as instructed to reverse course and head north, Packard testified, *"[n]o. We did not change course*." Def's 56.1 ¶19. Packard testified that, "*I stepped back and turned around and said, we're just not going anywhere, folks. Talking to the people with me*." Def's 56.1 ¶20. Video and photos show that indeed Packard did not do as instructed; he instead sat

down in the middle of the sidewalk with approximately twelve or more protesters who were locking arms together. Def's 56.1 ¶21. Video further shows that Packard sat down directly in front of the entrance door to TD Bank and right in front of the press enclosure. Def's 56.1 ¶22. Despite Packard's repeated denials that he heard orders to leave the area or face arrest, video shows that prior to his arrest, NYPD Inspector Winski gave orders using a bullhorn within approximately two feet of Packard. Def's 56.1 ¶23. Inspector Winski is observed and heard on video giving the following orders using a bullhorn: *"Folks, clear the sidewalk. You are blocking pedestrian traffic, and you're subject to arrest. If you do not move, you will be arrested."* Def's 56.1 ¶24. At least four of the twelve or more protesters sitting with Packard were arrested in Packard's presence prior to his arrest—yet, he remained sitting. Def's 56.1 ¶25. Video shows that at this time, the entire sidewalk on Broadway near Wall Street was fully congested and blocked by the mass of protesters, including Packard. Def's 56.1 ¶26. Due to the blockage, NYPD officers formed a human line in the street in order to allow the many people who did not want to be involved in the protest to walk into the street, pass the protesters and continue on their way both southbound and northbound on Broadway in safety. Def's 56.1 ¶¶28-30. Packard was arrested while sitting in the street and charged with disorderly conduct for violation of PL §240.20(5), blocking pedestrian traffic. Def's 56.1 ¶31.

On September 17, 2012, Edward Beck, a resident of Allentown, Pennsylvania, travelled to New York City, "to see what was going on, just take in the sites, having a day off from protesting." Def's 56.1 ¶38. Beck testified that he arrived in the Wall Street area on the morning of September 17, 2012, and "the sidewalks were full of people." Def's 56.1 ¶40. Video shows Beck with a large group of protesters on a sidewalk full of people in front of Kings College at Broadway and Exchange Place—one block from his arrest location. Def's 56.1 ¶41.

3

Video further shows Beck at this location when the following orders were given by an officer via bullhorn: "*If you continue to block the sidewalk, you will be arrested.  Please keep moving.  Keep moving.  If you continue to block the sidewalk, you will be arrested. Please keep moving.*"  Def's 56.1 ¶42.  One block farther south on Broadway near Morris Street, video shows Beck and the large group of protesters on a section of sidewalk across the street from the landmark "Charging Bull."  Def's 56.1 ¶¶41, 43.  Video further shows that at this location, prior to his arrest, Beck was in a group of protesters blocking the sidewalk from building to curb.  Def's 56.1 ¶43.  While stopped on the sidewalk, blocking it from building to curb, Beck continually shouted, "[*w*]*ho do you protect, who do you serve.*"  Def's 56.1 ¶44.  At least three pedestrians can be seen walking into the street to avoid the group, including Beck.  Id.  Within feet of Beck at Broadway near Morris, NYPD Captain Iocco gave the orders, "[g]*uys, keep moving, you're blocking the sidewalk.  Keep moving.  Keep moving, you're blocking the sidewalk.  Keep moving.*"  Def's 56.1 ¶45.  Beck ignored Iocco's orders.  Def's 56.1 ¶46.  Moreover, prior to his arrest, video shows Beck obstruct Iocco in making an arrest of another protester by inserting himself into the arrest scene.  Def's 56.1 ¶47.  Beck can be seen on video literally crossing his arm over Iocco's arm and pushing his body against Iocco, interfering in the arrest.  Id.  Beck was arrested and charged with violation of PL §240.20(5), blocking pedestrian traffic.  Def's 56.1 ¶48.

On September 17, 2012, Ari Cowan participated in an OWS march that he helped to organize, which began at Zuccotti Park.[3]  Def's 56.1 ¶¶52-53.   While on this march, video

---

[3] Video of the incident was taken by RT television network, and a version was placed on YouTube. The video is edited and portions deleted in a number of places making it appear that Cowan was arrested within thirty-one seconds of the start of the march. However, defendant located a clearer version of the same edited video, which was produced in this case without objection. The clearer video shows Cowan's location throughout, evidenced by various storefront locations showing that Cowan, with a large group of protesters, had actually marched for at least three blocks from Zuccotti Park near Liberty Street and Broadway—to Cortlandt Way and Broadway—to Cortland Way and Church Street before his arrest.

shows Cowan carrying a sign approximately five to six feet in length and four to five feet high leading a large group of protesters heading northbound on Broadway near Liberty Street yelling, "[t]hey *got bailed out, we got sold out*,"— **first location** (Modell's at 150 Broadway observable) (Cowan carrying the sign nearest to street). Def's 56.1 ¶¶58-59.  The video immediately cuts to Cowan later carrying the sign with the group of protesters at the **second location** after the group has turned west onto Cortlandt Way from Broadway (Bento Sushi at 173 Broadway observable). Def's 56.1 ¶60.  The video cuts again to Cowan carrying the sign continuing the march westbound on the sidewalk on Cortlandt Way at the **third location**, repeatedly yelling, "[a] *anti anticapitalista*" (Century 21 observable).  Def's 56.1 ¶61.  The video shows that at this location, Cowan and the other protesters with whom he is carrying the sign are now blocking the entire sidewalk to the curb.  Def's 56.1 ¶62.  The video further shows an officer give dispersal orders to Cowan and the other protesters using a bullhorn stating:  "[h]ey *folks, listen up.  You have to leave room for people to move on the sidewalk*."  "*Let's go.  Listen, you have to leave room for people to walk in the sidewalk*."  Def's 56.1 ¶¶63-64.  Although Cowan admits that he heard an officer with a megaphone tell him that he was blocking pedestrian traffic, he ignored the officers' orders and continued to block the entire sidewalk.  Def's 56.1 ¶¶65, 67.  Finally, the video cuts to the **fourth location** further westbound on Cortland Way near Church Street where Cowan and the other protesters continue to block the entire sidewalk (protesters passing Century 21 observable). Def's 56.1 ¶66.  Cowan was arrested at this location, and his arresting officer can be heard saying to him, "*[w]e told you at least five times.*"  Def's 56.1 ¶68.

Cowan testified that one tactic he uses during protests to effect change is, "*marching through the streets and there would be some civil disobedience*."  Def's 56.1 ¶55. Cowan admits that he is willing to break the law to convey his message—"*if you're participating*

*in civil disobedience where the goal is to get arrested, then that's part of the purpose.*"  Def's 56.1 ¶57.  Cowan was arrested and charged with violation of PL §§240.20(5) and (6), disorderly conduct, blocking pedestrian traffic and failing to obey a lawful order to disperse.  Def's 56.1 ¶69.

      Michelle Berger, a resident of Pennsylvania, travelled with friends to New York City on September 16, 2012, to protest in connection with OWS.  Def's 56.1 ¶73. When she arrived, Berger was dropped off in Zuccotti Park and spent the night of September 16th in the Park.  Def's 56.1 ¶¶74-75.  On September 17, 2012, at approximately 7:56 a.m., video shows Berger present at the intersection of Pine and Nassau Streets—standing in the street at approximately one minute and nineteen seconds into the video—with a cup of coffee in her hand and displaying a peace sign to the police camera operator, Detective Hujel of the NYPD Technical Assistance Response Unit ("TARU").  Def's 56.1 ¶76.  While Berger was standing in the street, the same video shows that police gave orders at that location via a bullhorn stating, "*[i]f you do not get on the sidewalk, you will be arrested. Guys, if you stay in the crosswalk, you will be arrested.*"  Def's 56.1 ¶77.  Officers can also be heard on video instructing the crowd, "*[f]olks, you need to clear the sidewalk," "get on the sidewalk," "get on the sidewalk," "get on the sidewalk," "get on the sidewalk," Let's go, on the sidewalk," "on the sidewalk.*"  Def's 56.1 ¶89.  Berger admits that she heard police giving multiple orders, "*to get on the sidewalk,*" and "*stay on the sidewalk.*"  Def's 56.1 ¶89.  When asked at her deposition, "[h]ow many times were the instructions given by the police officers," Berger testified, "*I could not give an exact number. I mean they kept repeating it and repeating it and repeating it.*"  Def's 56.1 ¶87.  Yet, video shows that Berger continued to stand in the street with a massive group of protesters, and in fact stood in the same spot in the street despite these orders for approximately six to seven minutes

after orders can be heard being given on video taken by Det. Hujel.  Def's 56.1 ¶83. Although Berger testified that police also gave instructions to get onto the crosswalk, multiple videos show that police did not give any orders to get onto the crosswalk at any time.  Def's 56.1 ¶88.  In fact, an officer using a bullhorn can be heard and seen giving the following order, "*[g]uys, if you don't traverse the crosswalk, you will be arrested*."  Id.  While standing in the street, Berger was arrested for violation of PL §240.20(5), disorderly conduct, blocking vehicular traffic.  Def's 56.1 ¶¶91, 97.  Video further shows that after Berger's arrest, traffic was able to flow again at the intersection of Pine and Nassau Streets as at least one truck stopped at the threshold of the intersection, which Berger was blocking, was able to pass.  Def's 56.1 ¶95.  On December 4, 2012, the District Attorney's Office declined to prosecute Berger on the grounds that her arresting officer, Officer Riegel, did not observe Berger's conduct before her arrest but was informed by Lt. Nyhus of the conduct leading to her arrest.  Def's 56.1 ¶98.  Nearly three months after the incident, Lt. Nyhus could not recall Berger and thus the District Attorney's Office declined to prosecute.  Id.

## STANDARD OF REVIEW

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts…When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (U.S. 2007); see Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); Garcia v. Doe, 779 F.3d 84 (2d Cir. 2015). A motion for summary judgment requires the party to "make a showing sufficient to establish the existence of [each] element essential to that party's case…since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## **ARGUMENT**

### I. **PLAINTIFFS' DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER §1983 CLAIM MUST BE DISMISSED**

Plaintiffs bring a generic claim under §1983 alleging they were deprived of their constitutional rights. See Exhibit A, ¶¶162-168 attached to the Declaration of Amy Robinson. Plaintiffs allude to claims under the First, Fourth and Fourteenth Amendments without setting forth any facts related to those claims with respect to this cause of action. See Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358, at *37-38 (S.D.N.Y.2009) (dismissing a generic "Deprivation of Federal Civil Rights" claim where plaintiff only lists the constitutional amendments but failed to provide any information on the deprivation she allegedly experienced.) Based on the foregoing, this cause of action must be dismissed; see also Mediavilla v. City of New York, 2016 U.S. Dist. LEXIS 192198, at **35-36 (S.D.N.Y. 2016).

### II. **PROBABLE CAUSE EXISTED FOR PLAINTIFFS' ARRESTS**

Plaintiffs' claim for false arrest fails as probable cause existed for their arrests. The existence of probable cause to arrest constitutes justification and is a complete defense to a false arrest claim. Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Garcia v. Doe supra at 92. "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d

Cir. 2015).  The arresting officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Garcia supra at 93. Where there is probable cause to arrest for any offense, a false arrest claim is subject to dismissal.  Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); citing Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  Probable cause for any crime – not just the crime charged – will provide a "complete defense" to a false arrest claim.  See Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004).  Thus, all that matters is whether, in light of the facts known to the officers at the time, probable cause existed to arrest the plaintiffs for any offense. Marcavage at 110.

Police officers have a duty under New York City Charter §435(a) to disperse assemblages, which obstruct the free passage of public streets, sidewalks, parks and places and to regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public. The City "certainly has a significant interest in keeping its public spaces safe and free of congestion." Bery v. City of New York, 97 F.3d 689, 697 (2d Cir. 1996); accord, Mastrovincenzo v. City of New York, 435 F.3d 78, 100 (2d Cir. 2006) ("[R]educing sidewalk and street congestion in a city with eight million inhabitants[] constitutes[s] [a] significant governmental interest . . . .") (internal quotation marks omitted); Kass v. City of New York, 2017 U.S. App. LEXIS, 13259, **14 (2d Cir. 2017); Concerned Jewish Youth v. McGuire, 621 F.2d 471, 478 (2d Cir. 1980) (finding that the interests of residents, visitors, and workers must be balanced with that of protestors).

In this case, each plaintiff was charged with disorderly conduct for blocking pedestrian traffic under New York PL §240.20(5); plaintiff Cowan was additionally charged with disorderly conduct for failing to comply with a lawful order to disperse under PL §240.20(6). However, plaintiffs' various admitted and observed actions are also sufficient to establish the

existence of probable cause, (1) to arrest Packard, Beck and Berger for disorderly conduct for failure to comply with a lawful order under PL §240.20(6), (2) to arrest each plaintiff for obstructing governmental administration ("OGA") under PL §195.05 and (3) to arrest Berger for violation of the Vehicle and Traffic Law ("VTL") §§1156(a) and 1102.

N.Y. Penal Law §240.20(5) makes it a violation when someone "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he obstructs pedestrian or vehicular traffic."  Probable cause existed for plaintiffs' arrests under NY PL § 240.20(5).  First, there is no dispute that Packard, Beck and Cowan were arrested on the sidewalk and that Berger was arrested in the street.[4]  Video evidence shows Packard, Beck and Cowan in large groups in the Wall Street area entirely blocking sidewalks from building to curb. Def's 56.1 ¶¶21-22, 24, 26; 43-46; 58-68; 83.  Video evidence shows Berger standing in an intersection with a mass of protesters blocking vehicular traffic.  Def's 56.1 ¶¶81, 95.  Prior to each of their arrests, video evidence shows officers were giving instructions to clear the sidewalks and the streets that plaintiffs were substantially blocking.  Def's 56.1 ¶¶23, 24; 42, 45; 63-64; 77, 89.  The state of congestion on the sidewalks in front of the TD Bank at Broadway and Wall Street (Packard), in front of 26 Broadway across from the "Charging Bull" (Beck) and at Cortland Way and Church Street (Cowan) is evident in the videos and stills; the state of congestion at the intersection of Pine and Nassau Streets (Berger) is similarly evident in the videos and the stills.  Def's 56.1 ¶¶26; 43; 62; 83.  It belies credulity that pedestrians could conveniently traverse these sidewalks, voluntarily stay on the same sidewalks and walk through the large crowd of protestors to get to their intended destinations.  Rather, it is more than likely

---

[4] Although Berger claims to have been arrested in the crosswalk and attempts to make a distinction between the crosswalk and the street, under NYS Vehicle and Traffic Law §110, the crosswalk is the street.

10

and reasonable to believe that a majority of pedestrians would have steered clear of the demonstrators at all three of these locations.  It likewise belies credulity that vehicles could pass the intersection at Pine and Nassau Streets as video evidence shows a mass of demonstrators, including Berger, in the intersection blocking at least one vehicle.  Moreover, video shows numerous pedestrians were forced to walk into the street to pass the sidewalk in front of the TD Bank where Packard was sitting.  Def's 56.1¶¶28-30.  Video captures at least three pedestrians walked into the street to avoid the raucous crowd on the sidewalk, which a large group of protesters was blocking, including Beck.  Def's 56.1 ¶43-44.  Video shows Cowan, and the large group he was marching with, holding a giant sign creating a human wall from building to curb, which no pedestrian could pass.  Def's 56.1 ¶¶58-62.  Video captured at least one vehicle at a complete standstill blocked by Berger and the mass of protesters demonstrating in the middle of an intersection.   Def's 56.1¶¶ 80, 81, 95.  Thus, there is no question that plaintiffs were substantially blocking traffic.

Second, regarding the intent requirement, "the statute does not require proof of the accomplished fact of public inconvenience, annoyance or alarm; but proof only from which the [r]isk of it, recklessly created, might be inferred." Kass supra, **26-27; Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280, *23-25 (S.D.N.Y. 2016) quoting People v. Todaro, 26 N.Y.2d 325, 328 (1970). And, "because the practical restraints on police in the field are greater with respect to ascertaining intent . . ., the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great." Zalaski v. City of Hartford, 723 F.3d 382, 393 (2d Cir. 2013) quoting Cox v. Hainey, 391 F.3d 25, 34 (1st Cir. 2004). Video evidence demonstrates that it was at least reasonable for officers to believe that each plaintiff acted recklessly in creating a risk of causing public inconvenience, annoyance, or

alarm.  This is especially true where the NYPD had information that protesters, which in fact turned out to be thousands of protesters, were planning to shut down Wall Street and prevent the New York Stock Exchange from opening.  Def's 56.1 ¶¶2-4.  Due to the strong interest the City of New York has in maintaining order during mass demonstrations, officers should not be forced to wait for congestion to arise or for demonstrations to devolve into utter chaos before parameters are put into place to prevent it.  As plaintiffs participated in demonstrations substantially blocking sidewalks and streets in the Wall Street area, where pedestrians and vehicles were more than merely inconvenienced—they could not pass, the police could reasonably infer that plaintiffs intentionally or recklessly created a risk of causing public inconvenience, annoyance, or alarm in blocking vehicular and pedestrian traffic in a heavily-congested area of downtown Manhattan.  Any officer confronted with the chaotic scenes depicted on video could have reasonably concluded that the public was effectively being denied access to the sidewalks and streets that plaintiffs were blocking.  Accordingly, the facts and circumstances surrounding plaintiffs' arrests were sufficient to warrant a reasonable officer to believe that plaintiffs were lawfully subject to arrest under NY PL § 240.20(5), and any claims related to their arrests must be dismissed.

Probable cause exists for a violation of NY PL §240.20(6) when an individual "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [] congregates with other person in a public place and refused to comply with a lawful order of the police to disperse."  There is no doubt "that government officials may stop or disperse public demonstrations or protests where clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears."  Papineau v. Parmley, 465 F.3d 46, 56-57 (2d Cir. 2006) quoting Cantwell v.

Connecticut, 310 U.S. 296, 308 (1940).  The government has the right "to regulate the use of city streets . . . to assure the safety and convenience of the people in their use and the concomitant right of the people of free speech and assembly."  Cox v. Louisiana, 379 U.S. 536, 554 (1965). "The fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views whenever and however and wherever they please." Wood v. Moss, 134 S. Ct. 2056, 2066, 188 L. Ed. 2d 1039 (2014) (internal quotation marks and citation omitted), accord Cox at 554.

First, as set forth above, video evidence shows that plaintiffs, gathered with large groups of protesters, were present in public places blocking sidewalks and streets in the Wall Street area. Def's 56.1 ¶¶21-22, 24, 26; 43-46; 58-68; 83.  Second, video evidence shows that while facilitating crowd control at these demonstrations, officers issued orders for the protestors, including plaintiffs, to move on and that plaintiffs had opportunity to comply but refused to do so.  Def's 56.1 ¶¶23, 24; 42, 45; 63-64; 77, 89.  Cowan and Berger admitted to hearing the orders before their arrests.   Def's 56.1 ¶¶67, 85-87.  Despite his repeated denials that he heard any orders to move on before his arrest, video shows an officer giving orders using a bullhorn within two feet of Packard—while he is sitting on the sidewalk.  Def's 56.1 ¶¶23-25.  Despite his denial of hearing orders to keep moving, keep moving, you are blocking the sidewalk, video shows Beck present when two officers gave these orders.  Def's 56.1 ¶¶42, 45.

Third, a "person is guilty of committing disorderly conduct if he refuses to obey an officer's order to move, unless the order was purely arbitrary and not calculated in any way to promote the public order." U.S. v. Nelson, 500 Fed. Appx. 90, 93 (2d Cir. 2012) (citing Crenshaw v. City of Mount Vernon, 372 Fed. Appx. 202, 206 (2d Cir. 2010)); People v. Galpern, 259 N.Y. 279, 284-85 (1932) ("[F]ailure to obey [an order to disperse] in itself is disorderly

conduct. . . . A refusal to obey such an order can be justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order. . . .[t]he courts cannot weigh opposing considerations as to the wisdom of the police officer's directions when a police officer is called upon to decide whether the time has come in which some directions are called for.").    In this case, the orders were attempts to clear heavily-congested sidewalks and streets in the heart of downtown Manhattan. This makes the orders anything but arbitrary and in line with the NYPD's duties and responsibilities under inter alia, the New York City Charter §435(a).  See Marcavage v. City of New York, 689 F.3d 98, 109 (2d Cir. 2012); Kass v. City of New York, 2017 U.S. App. LEXIS, 13259, **8 (2d Cir. 2017) (police orders to OWS protester to move on in furtherance of a legitimate public purpose—to maintain crowd control and security—were not "purely arbitrary."); Wiles v. City of New York, 2016 U.S. Dist. LEXIS 148024, at *34-35 (S.D.N.Y. 2016) (directing the clearance of sidewalks of congestion pursuant to NYC Charter §435(a) is a duty that requires "instantaneous judgment calls, rather than a pre-programmed means of achieving a compulsory result.") (citations omitted).  Simply put, plaintiffs refused to comply with lawful orders, and their refusals to disperse interfered with the officers' duties to maintain congestion-free sidewalks and streets and maintain order during demonstrations.

Fourth and finally, as plaintiffs, were part of large protests obstructing sidewalks and streets, refused to comply with lawful police orders and remained continuously in defiance of lawful police orders, it can be inferred from their actions that they at the very least recklessly created the risk of causing public inconvenience, annoyance or alarm.  See Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280, *23-25 (S.D.N.Y. 2016) aff'd 2018 U.S. App. LEXIS 10785 (2d Cir. 2018) (summary order).  When Packard continued sitting in the middle of a

heavily-congested sidewalk, ignoring an officer who was literally standing directly next to him repeating orders to disperse with a bullhorn, it was objectively reasonable for an officer to infer that this defiance intentionally or recklessly created the risk of causing public inconvenience, annoyance or alarm.  When Beck stopped moving on the sidewalk and began shouting "[*w*]*ho who do you protect, who do you serve*," after an officer with a bullhorn gave orders to keep moving, it was objectively reasonable for an officer to infer that this defiance intentionally or recklessly created the risk of causing public inconvenience, annoyance or alarm.  When Cowan continued to participate in a human wall carrying a giant sign entirely blocking the sidewalk despite orders he admits were given to him personally, it was objectively reasonable for an officer to infer that this defiance intentionally or recklessly created the risk of causing public inconvenience, annoyance or alarm.  When Berger continued to stand in the middle of an intersection despite orders she admits were given over and over and over again, it was objectively reasonable for an officer to infer that this defiance intentionally or recklessly created the risk of causing public inconvenience, annoyance or alarm.  Accordingly, the facts and circumstances surrounding plaintiffs' arrests were sufficient to warrant a reasonable officer to believe that plaintiffs were lawfully subject to arrest under PL §240.20(6), and any claims related to their arrests must be dismissed.

Under N.Y. Penal Law §195.05 "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]"  In determining whether an individual's behavior rises to the level

of interference, an officer may consider both the individual's actions and his words.  Kass supra, 18-19.

Packard, Beck and Cowan intentionally obstructed governmental administration by interfering with officers attempting to clear the sidewalk.  Berger intentionally obstructed governmental administration by interfering with officers attempting to clear the street.  As shown above, video evidence establishes that officers were present during OWS demonstrations that plaintiffs participated in where unquestionably large groups of protestors had gathered.  While engaging in an official function—facilitating crowd control, officers issued orders to the protestors, including plaintiffs, to disperse.  Video evidence further supports that fact that numerous orders were issued after crowds at all four arrest locations had swelled to such numbers that pedestrian and vehicular traffic was impeded.  Video evidence shows that plaintiffs failed to comply with numerous orders to disperse.  These refusals to disperse amounted to an intentional interference with the officers' duties to maintain congestion-free sidewalks and streets and to maintain order during mass demonstrations as is their duty under the City Charter §425(a).  Plaintiffs' continued presence while declining officers' lawful orders provides probable cause to arrest under PL §195.05 and constitutes sufficient physical force or interference.  As noted in this Circuit, a plaintiff's mere refusal to comply with the dispersal order is enough to establish probable cause for obstructing governmental administration. See Brown v. City of New York, 2014 U.S. Dist. LEXIS 83513 at *21 (S.D.N.Y. 2014) (OWS protester refusing to obey orders to leave the area can be the basis for an arrest for obstructing governmental administration) citing C.G. v. City of New York, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013); Mediavilla v. City of New York, 2016 U.S. Dist. LEXIS 192198 (S.D.N.Y. 2016) (finding probable cause for NY PL §§195.05 and 240.20(6) based on plaintiff's refusal to

comply with dispersal orders at an OWS event); <u>Marcavage v. City of New York</u>, 2010 U.S. Dist. LEXIS 107724, *30 (S.D.N.Y. 2010) (finding probable cause for obstructing governmental administration where officers, carrying out a governmental function of regulating pedestrian traffic during a demonstration, ordered plaintiffs to leave the area numerous times before their arrest). Thus, as the facts and circumstances were sufficient to warrant a reasonable officer to believe that plaintiffs were lawfully subject to arrest under PL §195.05, and any claims related to their arrests must be dismissed

Additionally, not only was there probable cause to arrest Beck for violation of PL §195.05 for failure to obey an order to disperse, probable cause also existed to arrest Beck for OGA due to his physical obstruction and interference with Captain Iocco during the arrest of another protester.  The intent element of the statute is easily satisfied here; as Beck intruded himself into, and get in the way of, an ongoing police activity—video evidence clearly shows that Beck physically inserted himself between Iocco and the other arrestee.  Def's 56.1 ¶47. Interference can consist of "inappropriate and disruptive conduct at the scene of the performance of an official function even if there is no physical force involved," let alone direct physical interference as is the case here.  <u>See</u> <u>Kass v. City of New York</u>, 2017 U.S. App. LEXIS 13259, **18-20 (2d Cir. 2017) citing <u>People v. Romeo</u>, 9 A.D.3d 744, 779 (3d Dep't 2004) (internal citations omitted).  Interference is satisfied when an individual "intrude[s] himself into, or get[s] in the way of, an ongoing police activity." <u>Id.</u>, citing <u>In re Kendell R.</u>, 897 N.Y.S.2d 83, 84 (1st Dep't 2010); <u>see also</u> <u>Husbands v. City of New York</u>, 2007 U.S. Dist. LEXIS 61042, *43-44 (S.D.N.Y. 2007) (under New York law, merely approaching the police during the course of a police action will support a conviction for OGA).  Beck's interference in physically pushing Iocco back and literally crossing his arm over Iocco's arm and pushing Iocco out of the way

17

constituted sufficient interference to justify his arrest for OGA.  Accordingly, the facts and circumstances were sufficient to warrant a reasonable officer to believe that Beck was lawfully subject to arrest under PL §195.05, and any claims related to his arrest must be dismissed.

Setting aside the various provisions of the disorderly conduct statute and the OGA statute that Berger violated on September 17, 2012; Berger also was in violation of two provisions of the New York Vehicle and Traffic Law ("VTL").  VTL §1156(a) required Berger to walk, not in the roadway—but on the sidewalk.  That provision provides in total "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."  When she did not, she was in violation of this section of the VTL and subject to arrest.  Furthermore, VTL §1102 required Berger to comply with the police orders to clear the roadway.  Berger admits that officers "*shouted*" these orders, and "*they kept repeating it and repeating it and repeating it*."  Berger did not comply with the orders that she heard over and over and was therefore subject to arrest. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. Lago Vista, 532 U.S. 318, 354 (2001) (finding no Constitutional violation where a motorist was arrested for a seatbelt infraction); Pinto v. City of New York, 2018 U.S. App. LEXIS 24220, **5-6 (2d Cir. 2018) (probable cause existed for arrest of protester captured on video in the street in violation of VTL §1156(a )); Holmes v. City of New York, 2018 U.S. Dist. LEXIS 53419, *9-10 (S.D.N.Y.) (probable cause existed for arrest of OWS protester captured on video in the street in violation of VTL §1156(a)); Gonzalez v. City of New York, 2017 U.S. Dist. LEXIS 5688 (S.D.N.Y. 2017) (probable cause existed for arrest of OWS protester captured on video in the street in violation of VTL §1156(a)).  Accordingly, either of these violations justifies the orders

given and each separately forms an independent basis for probable cause for Berger's arrest under the VTL, and any claims related to her arrest must be dismissed.

As shown above, based upon the facts and circumstances present at each of the plaintiffs' arrest locations, there was probable cause to arrest plaintiffs for violation of any of the statutes outlined.  Defendant need only show that probable cause existed to arrest plaintiffs for any one of these offenses.  As plaintiffs violated numerous statutes, the officers' conduct in arresting them cannot be described as anything but reasonable and proper in response to developing chaotic demonstrations at plaintiffs' arrest locations.  Further, the Second Circuit in two cases and two juries in this Court have already ruled on the propriety of police actions at various demonstrations during the first anniversary of OWS and found that the police acted properly and lawfully in effecting arrests.  See Wiles v. City of New York, 2018 U.S. App. LEXIS 5610 (2d Cir. 2018); Shamir v. City of New York, 2015 U.S. App. LEXIS 18420 (2d Cir. 2017); Soto v. City of New York, 13-CV-8474, Dkt. Nos. 203, 204; Sherrard v. City of New York, 15-CV-7318, Dkt. No 123.  Given these results, it cannot be disputed that plaintiffs' arresting officers were at least reasonable to come to the same conclusion.

### III.   PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIM FAILS

In order to state a claim for First Amendment retaliation, plaintiff must establish "(1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

At the outset, it must be noted that this claim must fail as plaintiffs did not make a single allegation of retaliation in their forty-one paged Complaint.  Second, as shown above, probable cause existed for plaintiffs' arrests, which defeats their retaliation claim.  "Fabrikant's

claims of malicious prosecution, unreasonable search and seizure, and First Amendment retaliation fail because defendants had probable cause…" Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).  Third, plaintiffs cannot show that the officers' actions in arresting them were motivated by any expressive protected conduct.  Centrally, it is clear that what led to their arrests was not innocuous expressive conduct, but deliberate attempts to defy the police when they attempted to clear sidewalks and streets during demonstrations in the heart of downtown Manhattan.   It is unclear how clogging sidewalks and streets could be sufficiently "communicative" to enjoy First Amendment protections.  Indeed, Beck testified that his purpose in attending the first anniversary OWS events was "to see what was going on, just take in the sites, having a day off from protesting."   Def's 56.1 ¶38.  Even if it were determined that plaintiffs were engaged in expressive speech, plaintiffs cannot show that their arrests were motivated by First Amendment protected conduct and not their decisions to defy specific police instructions. See Lebowitz v. City of New York, U.S. Dist. LEXIS 82428, *12-13 (S.D.N.Y. 2014) (as OWS protesters were arrested only after they were asked to leave and refused, it beyond genuine dispute that officers were motivated by anything other their failure to leave when asked and not their speech or associative conduct) aff'd 2015 U.S. App. LEXIS 8916 (2d Cir. 2015).  Moreover, "specific proof of improper motivation is required in order for a plaintiff to survive summary judgment on a First Amendment retaliation claim." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)); see also Allen v. City of New York, 2007 U.S. Dist. LEXIS 15 (S.D.N.Y. 2007) citing Kerman v. City of New York, 261 F.3d 229, 242 (2d Cir. 2001)) ("First Amendment retaliation requires evidence of the 'actual mental state' of the defendants.").  As plaintiffs failed to depose any of the arresting officers in this case, there can be no specific proof of improper motivation on the part of the officers.  Furthermore, plaintiffs' own

testimony, as well as indisputable video, shows that it was their decisions to obstruct vehicular and pedestrian traffic led to their arrests.  See Papineau v. Parmley, 465 F.3d 46, 59 (2d Cir. 2006) ("One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest.") (quotations omitted).

Additionally, plaintiffs cannot claim that their First Amendment rights were chilled as a result of any officer action.  Plaintiff must show that their First Amendment rights were "actually chilled." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." Id.  There was no change in plaintiffs' behavior establishing chill.  The record shows that all of the plaintiffs continued in many protest activities after their arrests on September 17, 2012.  Packard continued to be involved with various protest activities, including the "blue surge" protest, Black Lives Matter, anti-fracking protests, a Palestinian rights protest; Flood Wall Street and various protests against Donald Trump's election.  Def's 56.1 ¶37. Beck testified that since his arrest on September 17, 2012, he continued to be involved with many protest activities.  Def's 56.1 ¶51.  Since his arrest on September 17, 2012, Cowan continued to be involved with many protest activities, including pipeline demonstrations in Texas, demonstrations in Oakland, demonstrations pertaining to people who have been wrongly evicted, demonstrations against the election of Trump and demonstrations for labor rights.  Def's 56.1 ¶72.  Since her arrest on September 17, 2012, Berger continued to be involved with many protest activities, including a gay rights demonstration, a demonstration, demonstrations at various churches in the Bethlehem, Pennsylvania area, OWS in Pennsylvania.  Def's 56.1 ¶99.

As plaintiffs' arrests were justified by probable cause, plaintiffs' First Amendment retaliation claim fails.  Additionally, plaintiffs cannot show that any actions by their

arresting officers were motivated by protected expressive conduct and not by their decisions to defy officers' attempts to clear sidewalks and streets in the heart of downtown Manhattan heavily congested by thousands of protesters. The record shows that officers were motivated by plaintiffs' failure to leave when asked and not their speech or associative conduct. Moreover, plaintiffs do not dispute that they have attended numerous protests and actions since these incidents, so their arrest has not caused them to fail to attend any such event or protest. Accordingly, plaintiffs' purported First Amendment retaliation claim must be dismissed.

## IV.   PLAINTIFFS' MONELL CLAIM MUST BE DISMISSED

Plaintiffs' Monell claim rests on their theory that the City failed to adequately train its police officers on First Amendment principles and the application of the disorderly conduct statute in policing demonstrations.[5] Here, no Monell claim can survive, for two reasons. First, there was no underlying constitutional violation. Second, plaintiffs cannot show that defendant's training was inadequate and cannot show a nexus between a training failure and any alleged injury.

When a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Martinez v. City of New York, 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. 2009).   As outlined above, there was ample probable

---

[5]Plaintiffs' claim that officers were inadequately trained on the application of the OGA statute must be dismissed as none of the class representatives were charged with OGA nor were any of the putative class members who were arrested at the same approximate time and location as plaintiffs. In any event, the record shows that officers did receive training on the application of the OGA statute. See Exs. CCC, DDD.

cause for plaintiffs' arrests. Their conduct, and the numerous warnings and requests that went unheeded before any action was taken make clear that the police acted properly and with restraint. As plaintiffs' arrests were plainly justified, no underlying constitutional violation can be claimed and no liability pursuant to <u>Monell</u> can be maintained on any theory. Thus, plaintiffs' <u>Monell</u> claim based upon a theory of failure to train fails as their constitutional claims must be dismissed.

Even if the Court were to find that a constitutional violation occurred, plaintiffs cannot demonstrate, as they must, (1) that there was any failure by defendant to adequately train it police officers on First Amendment principles and the application of the disorderly conduct statute, (<u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989)), (2) that this alleged failure to train amounted to "deliberate indifference," (<u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011)) and (3) that there is a direct causal link between their claims of false arrest and First Amendment retaliation and any alleged lack of training amounting to deliberate indifference, (<u>Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997)).

Plaintiffs' allegation that the City failed to adequately train its officers is not supported by the evidence and certainly not by plaintiffs' case. In short, plaintiffs cannot demonstrate that the training of police officers was inadequate. The record shows that every officer in the NYPD received thorough training on First Amendment principles and the application of the disorderly conduct statute in policing demonstrations. Exs. YY-JJJ. Police Academy instruction was given by state-certified instructors at the NYPD Police Academy. Def's 56.1 ¶101. The instructors were trained by officers designated as master instructors by the state. <u>Id.</u> Furthermore, the NYPD's lesson plans and course materials are reviewed for national accreditation every four years by the Commission on Accreditation for Law Enforcement

Agencies, ("CALEA"), and the NYPD received these accreditations.  <u>Id.</u>: Ex. XX.  Additionally, officers received college credit for these courses through the National College Credit Recommendation Service ("NCCRS").  Ex. XX.

Further, as the record shows, the Police Academy utilized numerous written materials in its training on First Amendment principles and the application of the disorderly conduct statute, including the Police Student's Guide, the Recruit Training Manual, the Patrol Guide, NYPD Legal Bureau Bulletins and Police Academy Training Memoranda.  Def's 56.1 ¶102.  Instruction on the Constitution and the Bill of rights, specifically including the First Amendment, was provided in various chapters of the Police Student's Guide, including Introduction to Law and Justice and Maintaining Public Order: Demonstrations. As with all chapters of the Police Student's Guide, these chapters have corresponding Lesson Plans and PowerPoint presentations. Def's 56.1 ¶103.  The lesson plans show that officers' training included lecture, question and answer and group discussion.   Def's 56.1 ¶104.  Officers were evaluated by quiz and exams on their comprehension of this training.  <u>Id.</u>

Moreover, plaintiffs can provide no proof that the NYPD's method or quantity of training on First Amendment principles or the application of the disorderly conduct statute at OWS demonstrations was inadequate especially given its predominately unblemished record with respect to determinations by the Second Circuit, this Court and numerous federal juries that probable cause or arguable probable cause existed for arrests at OWS demonstrations, including two Second Circuit decisions and two juries making this determination for arrests during the first anniversary of OWS.[6]   In fact, in ten OWS cases that were appealed to the Second Circuit the

---

[6] <u>Wiles v. City of New York</u>, 2018 U.S. App. LEXIS 5610 (2d Cir. 2018); <u>Shamir v. City of New York</u>, 2015 U.S. App. LEXIS 18420 (2d Cir. 2017); <u>Soto v. City of New York</u>, 13-CV-8474, Dkt. Nos. 203, 204; <u>Sherrard v. City of New York</u>, 15-CV-7318, Dkt. No 123.

Court determined that probable cause and/or arguable probable cause existed for the arrests made during OWS.[7]  Id. The Second Circuit cases alone represent many, many hundreds of OWS arrests.  Not only has probable cause or arguable probable cause been determined to have existed for arrests made during the first anniversary of OWS, probable cause or arguable probable cause was determined to exist for arrests made during the six-month anniversary of OWS and for arrests made during the second anniversary of OWS.[8]  Additionally, despite various and repeated Monell claims, not a single judge or jury has found that the City employed inadequate training in any other OWS action.  In fact, not a single Monell claim under any theory been sustained in an OWS case.

Thus, assuming arguendo that any constitutional violation can be found on the facts of this case, plaintiffs cannot show that the training officers received was inadequate much less that any alleged lack of training amounted to deliberate indifference. Plaintiffs, therefore, cannot show that any alleged lack of training was the direct cause of their arrests rather than their conduct in clogging the sidewalks and streets in the Wall Street area on September 17, 2012. Accordingly, plaintiffs' Monell claim must be dismissed.

---

[7] Berg v. City of New York, 2018 U.S. App. 20646 (2d Cir. 2018); Caravalho v. City of New York, 2018 U.S. App. 10785 (2d Cir. 2018) (summary order); Higginbotham v. City of New York, 2018 U.S. App. LEXIS 20637 (2d Cir. 2018) (summary order); Wiles v. City of New York, 2018 U.S. App. LEXIS 5610 (2d Cir. 5610); Kass v. City of New York, 2017 U.S. App. LEXIS 13259 (2d Cir. 2017); Pluma v. City of New York, 2017 U.S. App. LEXIS 6096 (2d Cir. 2017) (summary order); Brown v. City of New York, 2017 U.S. App. LEXIS 11937 (2d Cir. 2017); Shamir v. City of New York, 2015 U.S. App. LEXIS 18420 (2d Cir. 2017); Lebowitz v. City of New York, 2015 U.S. App. LEXIS 9106 (2d Cir. 2015) (summary order); Garcia v. City of New York, 2015 U.S. App. LEXIS 2762 (2d Cir. 2015).

[8] Caravalho v. City of New York, 2018 U.S. App. 10785 (2d Cir. 2018) (summary order); Kass v. City of New York, 2017 U.S. App. LEXIS 13259 (2d Cir. 2017); Hays v. City of New York, 2017 U.S. Dist. LEXIS 28090 (S.D.N.Y. 2017; Tardif v. City of New York, 2017 U.S. Dist. LEXIS 41318 (S.D.N.Y. 2017); Pesola v. City of New York, 2017 U.S. Dist. LEXIS 140967 (S.D.N.Y. 2017); Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013).

## **CONCLUSION**

For the foregoing reasons, defendant respectfully requests that the Court grant summary judgment on all causes of action, dismiss plaintiffs' complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:          New York, New York
                April 5, 2019

                                        ZACHARY CARTER
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendant*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-3518


                                        By:     /s/
                                                _____
                                                Amy Robinson
                                                Special Federal Litigation Division


TO: All Attorneys of Record (*via ECF*)

26