# COMMAND LEVEL INSTRUCTOR'S GUIDE



# LEGAL ISSUES
## (RNC)

# POLICE ACADEMY　　15-2004

D032133

POLICE ACADEMY
ADVANCED LEVEL TRAINING UNIT
COMMAND LEVEL TRAINING
JUNE 2004

CYCLE:                          15-2004

LESSON:                         LEGAL ISSUES
                                (REPUBLICAN NATIONAL
                                CONVENTION)

TIME ALLOTTED:                  TWENTY (20) MINUTES

METHOD:                         LECTURE/DISCUSSION

PREPARED BY:                    COMMAND LEVEL TRAINING

SPECIAL THANKS TO CAPT. SWEET AND THE LEGAL BUREAU FOR THEIR
ASSISTANCE IN THE PREPARATION AND PRESENTATION OF THIS LESSON
PLAN.

NEW YORK CITY POLICE DEPARTMENT POLICE ACADEMY, JUNE 2004.
© NO PORTION OF THIS MATERIAL MAY BE REPRODUCED WITHOUT THE
WRITTEN PERMISSION OF THE DEPUTY COMMISSIONER,TRAINING, NEW
YORK CITY POLICE DEPARTMENT.

D032134

# LESSON COVER SHEET

| **COURSE:** COMMAND LEVEL TRAINING | **TRAINEE LEVEL:** M.O.S ASSIGNED TO COMMANDS |
|---|---|
| **LESSON:** LEGAL ISSUES REPUBLICAN NATIONAL CONVENTION (RNC) | **TIME REQUIRED:** 20 MINS. |

| **PREPARED BY:** P.O. RAMIREZ | **DATE PREPARED:** JUNE 2004 |
|---|---|
| **REVISED BY:** | **DATE REVISED:** |

**INSTRUCTIONAL GOAL:** THIS LESSON IS DESIGNED TO GIVE MEMBERS OF THE SERVICE A REVIEW OF LEGAL ISSUES RELEVANT TO THE REPUBLICAN NATIONAL CONVENTION.

**PERFORMANCE OBJECTIVES:**
AT THE CONCLUSION OF THIS LESSON, THE PARTICIPANTS WILL BE ABLE TO:
1. Define permissible limitations on First Amendment Rights.
2. Identify different locations used for demonstrations: Public vs. Private Property and spontaneous demonstration sites.
3. Identify demonstrators' tactics and types of conduct.
4. Identify the arrest procedures at the RNC.
5. Review applicable NYS Penal Law offenses.

| **METHOD OF PRESENTATION:** LECTURE/DISCUSSION | **CLASSROOM REQUIREMENT:** NONE |
|---|---|

**STUDENT MATERIALS:**
N/A

| **TRAINING AIDS, SUPPLIES, EQUIPMENT:** | **BIBLIOGRAPHY:** LEGAL GUIDELINES FOR THE RNC BOOKLET |
|---|---|

## INTRODUCTION

The Republican National Convention (RNC) will take place at Madison Square Garden in New York City from August 30 through September 2, 2004.  In addition, there will be several RNC related events held at various venues through the city.

The following information is provided in an effort to increase preparedness and provide additional tactical knowledge to those officers who may be assigned to details during the impending RNC events.

At the conclusion of this lesson, participants will be able to:

1. Define permissible limitations on First Amendment Rights.
2. Identify different locations used for demonstrations: Public vs. Private Property and spontaneous demonstration sites.
3. Identify demonstrators' tactics and types of conduct.
4. Identify the arrest procedures at the RNC.
5. Review applicable NYS Penal Law offenses.

D032136

## TERMINAL PERFORMANCE OBJECTIVE # 1

## PERMISSIBLE LIMITATIONS ON FIRST AMENDMENT RIGHTS

**(a) Restrictions on Speech Alone**

With few exceptions, a person may <u>say</u> anything he or she wants, no matter how offensive. The role of the police, as a neutral party, is to protect the speaker's right to "spread the message."

Police personnel must remember that the speech in question must <u>both</u> urge violence <u>and</u> present a clear and present danger to the public safety. In other words, it must appear likely that the group addressed by the speaker is about to engage in violent conduct. The speaker must show intent to stir the group to <u>immediate</u> violent action and the group must be aroused to the point where violent conduct is imminent.

As illustrated by the Inciting to Riot statute, the police are allowed more freedom in regulating speech that also advocates violent <u>conduct.</u> In such cases, because of the danger presented, the police may take immediate action to stop the speech itself.

**(b) Restrictions on Conduct**

Unlike restrictions on speech alone, the police have much greater authority to impose restrictions on conduct that is coupled with speech.   A typical demonstration where protesters are asked to stand inside a designated "demonstration area" is an example of a restriction on how a demonstration is conducted.   These restrictions are also referred to as "time, place and manner" restrictions.

D032137

The general rules for imposing such restrictions are as follows:

**(1)**      **THE POLICE REGULATION MUST BE "CONTENT NEUTRAL".**
"Content neutrality" means that the group or individual's message may <u>never</u> be a factor in deciding how a demonstration is to be regulated.

**(2)**      **THE REGULATION MUST BE NARROWLY TAILORED TO MEET A SIGNIFICANT GOVERNMENT INTEREST.**
Potential physical dangers to the public, not ideas, may provide the basis to impose restrictions on First Amendment activities. In addition, any regulation of a demonstration must not unnecessarily burden a group's or individual's right to speak in a public forum. The police should ensure that restrictions on a demonstration are the minimum necessary to meet an important and legitimate governmental interest, such as the movement of traffic and pedestrians.

**(3)**      **THE REGULATION MUST ALLOW AMPLE ALTERNATIVE MEANS FOR COMMUNICATION OF THE SPEAKER'S MESSAGE.**
While the police may employ reasonable time, place and manner restrictions, peaceful demonstrators ordinarily must be allowed to be within sight and sound of the object or focus of their protest.

## TERMINAL PERFORMANCE OBJECTIVE # 2

## LOCATIONS OF DEMONSTRATIONS:
## PUBLIC VS. PRIVATE PROPERTY

The degree to which the conduct of demonstrations may be regulated is also directly related to the public nature of the area where the demonstration is to be held. Generally, the more public the area, the greater the right to demonstrate. There are four general areas at which demonstrations may occur at the Republican National Convention:

    (a)    **Public streets**, such as the streets and sidewalks surrounding the Convention site, hotels and event gathering locations

    (b)    **Public** property which is **open to the public**, such as parks and open plazas

    (c)    Public property **not open** to the public, such as **railroad tracks and restricted areas of Penn Station**

    (d)    Private property, such as the **interior of Madison Square Garden and Penn Plaza**

**(a) Public Streets**
A strong governmental interest must be established before a demonstration on public streets may be restricted. Inconvenience to the public, without more, is not an adequate reason to restrict a demonstration. Instead, there must be a showing that the demonstration will substantially impede the free movement of pedestrians and/or vehicles. Any limitations imposed must be **minimal** and consistent with a concern for public safety. The **number of demonstrators can be limited, or the location of the demonstration** can be moved if justified by governmental interests that outweigh the right to conduct a demonstration. It would be almost impossible, however, to justify a restriction that entirely prohibits a peaceful demonstration on public streets.

**(b) Public Property Open to the Public**

First Amendment rights may be exercised on public property that is open to the public. Such areas include parks, open plazas, transportation facilities such as Penn Station and the subways stations.

People may lawfully enter and remain in areas open to the public, i.e. lobbies and hallways. The police may only take action against such people after a person in control of the premises personally communicates to the offender(s) that the privilege to remain in the building has been **revoked**. Warnings should be read by the authorized agent as well as by the police.

**(c) Public Property Not Open to the Public**

A person has no right to demonstrate on public property that is not open to the general public. Examples of such areas include government offices and public schools.

**(d) Private Property**

The New York Court of Appeals has ruled that individuals **do not** have a right to exercise First Amendment rights on private property. A private property owner may arbitrarily deny access to any individual or group. There is **no First Amendment** right to demonstrate inside Madison Square Garden during the Convention.

**(e)Spontaneous Demonstrations**

We can expect to see spontaneous demonstrations at the scene of the RNC as well as other locations throughout the city. Our goal is not to prevent them entirely, if we can accommodate them safely. We can work with these organizations in order to put them in locations where they can have "sight and sound." (Demonstrators have the right to be seen and see the object of the demonstration as well as to be heard by the object of their demonstration). However, we must preserve our right to maintain security and order. When a Police Officer sees a spontaneous demonstration he or she must:

    (a)  Notify your supervisor

    (b)  Note the number of demonstrators and their direction of travel

## TERMINAL PERFORMANCE OBJECTIVE #3

### DEMONSTRATOR TACTICS/SPECIFIC TYPES OF CONDUCT**

Most demonstrators gather to engage in the lawful expressions of their First Amendment rights. However, some protestors and activists will utilize a wide spectrum of well prepared tactics calculated to create chaos, injure police officers and disrupt the rights of others assembling and expressing contrary opinions. The following is a brief list of tactics used by these extremists in the past events throughout the country:

### (a) Masks

A federal appeals court has recently held that Penal Law 240.35 (4), **Loitering** (while masked), <u>is</u> constitutional and **<u>can</u>** be enforced against persons so gathered. Therefore, when persons congregate in a public place with at least two others similarly disguised or masked, they may be charged with Penal Law 240.35 (4), Loitering.

### (b) Lock Downs

Protestors may secure themselves via chains, locks and improvised devices to other persons or fixed objects to inhibit venue access or to block transportation routes.

#### (1) Kryptonite Locks

The use of kryptonite locks to secure persons to vehicles, fixed, objects or other persons is prevalent in protest activities. Note that users of the kryptonite lock were most often found to be in possession of a release key, though they professed not to have one on their person.

#### (2) Concrete Sleeves And "Sleeping Dragons"

These are made of steel or PVC piping, reinforced with concrete and metal wiring to make removal difficult. A securing device is located within the sleeve. Upon insertion, handcuffs, carabineers, or locks are threaded through the sleeve, and attached to either another concrete sleeve in a human chain or to a fixed object. In most cases, the individual has the ability to release the device and may use dismantling attempts by officers as evidence of police abuse.

**NOTE:** Members of the service who encounter such devices should **not** make any attempt to remove a demonstrator from it without specific direction of a captain or above. Sleeping dragons are usually rigged with elements like chicken wire that can cause serious physical injury to the violators or police officers if attempts are made to free the violators. ***Extreme care and caution should be exercised.***

**(c) Carrying Objects**
Where an object has the potential to be used as a weapon (*e.g.*, a wooden pole with a sign attached, a bat), or to delay or obstruct the police from arresting or removing demonstrators from the scene (*e.g.*, sleeping dragons, chains), the police may prohibit people from carrying it during the demonstration.

**(d) Hanging Signs or Banners**
Penal Law section 145.30(1), Unlawfully Posting Advertisements

**(e) Use of Sound Devices**
Administrative Code §10-108 governs the issuance and use of sound devices in a public place. A permit is required in order to use or operate a sound device in a public place.

**NOTE:** The person using the sound device should first be warned that doing so is a violation of the law. If he or she continues to use the device following the warning, he or she may be summonsed and the sound device may be seized and vouchered as evidence. Actual use and operation of the device constitutes a violation, but ***mere possession*** is **not** a violation.

**(f) Flag Burning**
The U.S. Supreme Court has ruled that the act of burning the American flag is protected by the First Amendment; New York State General Business Law §136, which prohibits burning, defacing, defiling, or trampling on the American flag, may **not** be enforced.

Section 27-4249 of the Administrative Code prohibits, with limited exceptions, the **igniting or maintaining of an open fire** anywhere within New York City. Members of the service have a duty to prevent the burning of any material, including flags, if the fire poses a legitimate danger to persons or property.

A **summons** for this offense, made returnable to Criminal Court, will be issued <u>only</u> when the fire created by the burning flag poses an imminent danger to persons or property. Summonses for open fires will be issued <u>only</u> with the approval of a ranking officer. The summons must contain very specific language in the violation description section that demonstrates the danger posed by the open flame. Information should include the following:

- The direction of the flame; and
- The number of persons or establishments threatened or affected by the fire;
- A description of the size of the burning item;
- The proximity of the ashes, smoke, or flame to other persons or objects, and the likelihood of the ashes, smoke, or flame spreading and creating a dangerous condition.
- Whether accelerants were used to ignite the flag.

**(g) Swarming/Critical Mass**
Swarming is quickly massing a large number of individuals from all directions onto a single position in order to attain a specific goal.

**(h) Bicycle Groups**
Bicycle Groups ride in masses effectively slowing down or blocking streets and bridges; the ride may conclude with a rally staged in a major intersection.

In addition the following NYC Traffic Rules regarding bicycles are noteworthy:

- 4-02 (a) - **Compliance with and Effect of Traffic Rules**. .
- 4-07 (c)(3)(i) - **Restrictions on crossing sidewalks**. Driving bikes on sidewalks is prohibited unless sign allows.
- 4-08 (e)(9) - **Stopping, standing and parking** prohibited
- 4-12 (e) - **Driver's hand on steering device**.

**(i) Shield Wall**
Armed with shields, marchers may move with linked arms, creating a defensive wall to safely approach a target or perimeter line and commit direct actions like the launching of projectiles.

**(j) Human Chains**
Human Chains are accomplished by interlocking arms, legs and bodies to block vehicle and pedestrian traffic.

Participants may be subject to arrest under the New York State Penal Law, Section 240.20 **Disorderly Conduct**.

**(k) Improvised Barricades/Tripods**
Improvised Barricades are constructed from available materials such as jersey barriers, fencing, dumpsters, bus shelters, stolen construction equipment or any other non-secured materials in the area.

**(l) Target Identification**
Target Identification/Tagging a Target occurs when a specific location or place is marked or "tagged" with a pre-determined symbol (often the anarchist logo) to indicate where the action should take place.

**(m) "Marching Bands"**
"Marching Bands" in the context of mass demonstrations refer to groups of protestors who are carrying and playing musical instruments.

**(n) Accusations of Police Misconduct**
Accusations of Police Misconduct are often used by protestors to avoid arrest and to gain the sympathy of the media and bystanders. Protestors will lie in front of police cruisers and horses, claiming to be intentionally struck by the officers. Homemade pepper spray and smoke bombs may be introduced during confrontations to simulate the police discharge of such crowd dispersal agents. Some have impersonated police officers and assaulted other protestors, resulting in false claims of police misconduct and brutality.

Video Units should be requested to assist in the documentation and preservation of evidence which may later be required for judicial proceedings. Penal Law, Section 240.50, **Falsely Reporting an Incident** in the 3rd degree, may be pursued. In addition, Administrative Code 14-107, **Unlawful Use of Police Uniform or Emblem**, may be appropriate.

**(o) Projectile Launches**
Rocks, paving stones, bottles, batteries, ball bearings, nuts and bolts, billiard and golf balls, hockey pucks, nail-filled potatoes and other objects are used as projectiles, primarily targeting law enforcement officers.

**(p) Toxic and Flammable Liquids**
Bodily fluids and toxic commercial liquid products have been sprayed at or thrown upon law enforcement officers during protest events. Blood, urine and feces, as well as ammonia, bleach, battery acid, glass etching solution/hydrofluoric acid, gasoline, paint, and magnesium are dispelled via spray and squirt bottles, super soakers, canteens, zip-lock bags, hollowed eggs and balloons, and have, in some cases, caused personal injury to responding police personnel.

**(q) Battering/Takedowns**

**(r) False 911 Calls / Bomb Threats / Fire Alarms**

**(s) Suspicious Packages and Hoax Devices**
These are used to disrupt proceedings and to tax public safety resources. In rendering safe operations, police often require venue evacuation, which redirects manpower and can leave secondary target areas open. Boxes of clocks and gallon jugs of clear liquids embedded in electrical circuit boxes are some examples of hoax devices used by protestors.

**(t) Electrical Disruption**
Protestors may attempt to disrupt electrical service to venue buildings, hotels and meeting places. Mylar helium balloons filled with metal shavings have been launched towards electrical power lines.

**(u) Smoke and Stink Bombs**
These may be discharged at or in the vicinity of the venue to disrupt proceedings or prompt the evacuation of the site.

**(v) Property Vandalism, Theft and Destruction**

**(w) Graffiti**
Graffiti stickers and graffiti are often posted in protest areas to promote acts of property vandalism and destruction. Bearing slogans and symbols, graffiti may also serve as identification of a site targeted for further action.

**(x) Hassling Principals/Inflammatory Protest Materials**
Protesters will engage in verbal and physical altercations with event principals and delegates.

**(y) Arson and Firebombing**
Protest extremists employ a variety of incendiary devices to commit both acts of arson and personal injury. Improvised devices, such as Molotov cocktails and chains wrapped in kerosene-soaked rags launched by oversized slingshots, have been increasingly utilized at protest events.

**(z) Anti-Police Obstacles**
Anti-police obstacles have been used to hinder foot and motorcycle response. Fuel drums filled with water or cement have been rolled into police formations; streets have been slicked with oil to dismount motorcycle personnel; and clear cord, yarn, string or fishing line has been suspended across streets at both neck and ankle level to disable foot and motorcycle police personnel.

**(aa) Anti-Horse Actions/Caltrops**
Protestors have crowded mounted patrol units to limit incident response, and wire has been strung at ground level to trip horses. Caltrops are metal devices with four projecting spikes placed on the ground and used to injure police horses or puncture tires.

**(bb) Anti- Pepper Spray Actions**
Anti- Pepper Spray actions have been developed to counter the effects of pepper spray. Gas masks and hoods and homemade neutralizers like vinegar are used to negate the effects of these agents.

**(cc) Police Communications Interference**
Protesters have discussed various methods to block police communications, and jamming devices are readily available via retail stores and Internet outlets.

**(dd)    Passive Resistance**

Several forms of passive resistance have gained popularity among protestors.  Traditional passive resistance, where the protestor becomes completely limp and provides no assistance in movement, effectively taxes police resources during arrest and dispersal. A person who merely fails to provide assistance upon being arrested is <u>not</u> resisting arrest. However, if a protester needs to be *carried* from a public roadway or sidewalk during the arrest process in an effort to prevent the police from reopening traffic, charges of Penal Law Section 195.05, Obstructing Governmental Administration in the Second Degree, is appropriate.

**(ee)    Prisoner Transport Interference**

Prisoner transport vehicles may be blocked or surrounded by demonstrators attempting to release the arrestees or to display unity with and support for their counterparts.

**(ff) Trojan Horses / Puppetry**

These are large parade puppets used to store and conceal implements of crime such as improvised weapons, sleeping dragons, tri-pods and other devices.

## GENERAL TYPES OF CONDUCT

Distinguishing between protected First Amendment activity and criminal conduct is often difficult. Many demonstrators are cooperative with the police and cause few problems. Others, however, are less agreeable and engage in conduct that pushes to the limit the delicate balance between the right to demonstrate and public safety. Listed below are **examples of such conduct** and the general rules for police to observe.

**(a)    Words Directed Toward the Police**

Police officers are often the targets of criticism at demonstrations, and it is not unusual for the police to be the target of chanted curses and personal insults. While understandably difficult, it is important for police officers not to react to such criticism.

**(b)    Leafleting**

Handing out leaflets in a public place is protected by the First Amendment. Leafleting is not a violation of the law unless the individual distributing the leaflets prevents pedestrians from using the sidewalk, leaving or entering a building, or follows a person in or about a public place with the intent to harass or annoy him.

**(c)     Carrying Signs or Objects**

Like leafleting, the carrying of signs or objects at a demonstration is protected First Amendment activity. However, where it can be shown that the object carried, (i.e. a wooden pole with a sign attached or a bat), has the potential for being used as a weapon, the police may prohibit the carrying of the object during the demonstration.

**(d)     Use of Sound Devices**

The issuance and use of sound devices in a public place is governed by the Administrative Code, Section 10-108. A permit is required in order to use or operate a sound device in a public place. A summons may be issued if a person at a demonstration uses a bullhorn or similar sound amplification device without a permit.

**(e)     Onlookers at the Scene of Arrests**

When an officer stops, detains, or arrests a person in a public place, other persons who happen to be in the area may remain in the vicinity of the stop or arrest. This right to observe is limited by reasons of safety and disruptions to the police action.

**(f)     Media Access to Demonstrations**

To the extent it is feasible to do so, (*e.g.* unless safety interests or proper performance of police duties requires otherwise), the media's access to demonstrations should not be impeded. At a minimum, media personnel should be afforded the same access provided to the general public. In addition, media personnel may enter demonstration areas. The media is to be given access as close to the demonstration as possible, with a clear line of sight and within hearing range of the activity.


**\*\*WEBSITES TO IDENTIFY PROTEST GROUPS AND PLANS:**

**RNCNOTWELCOME.ORG**
**PEOPLESLAWCOLLECTIVE.ORG**
**UNITEDFORPEACE.ORG**

## TERMINAL PERFORMANCE OBJECTIVE#4

### ARREST PROCEDURES AT THE RNC

(a)   Before arrests are made, it is important to document the circumstances resulting in the arrest. Obviously, for spontaneous acts of criminality, this may be difficult. However, where possible, note all reasons for limiting the individual's First Amendment rights prior to arrest (the nature and location of the demonstration, the public safety and security concerns implicated, obstruction to vehicular and pedestrian traffic, crowd and traffic conditions, plans for special events, etc.).

(b)   Arresting officers and members of arrest teams must carefully **observe the conduct** of the demonstrators **before** an arrest is made.

(c)   **Supervisors must insure** that arresting officers are in a position to observe the unlawful conduct of the individual arrested and articulate the elements of the offense committed.

### ISSUANCE OF SUMMONSES & DESK APPEARANCE TICKETS

Most offenses related to First Amendment activity constitute violations or misdemeanors. Typically, such arrests are for Disorderly Conduct and possibly Trespass. The additional charges of Obstructing Governmental Administration and Resisting Arrest, though misdemeanors, **no longer** qualify for DATs. The Criminal Procedure Law and Department policy require the issuance of summonses or desk appearance tickets ("DATs") to violators who are arrested for summonsable or DATable offenses and who otherwise qualify (proper identification and "no hits" on warrant checks).

## ARREST PROCESSING

Arrests made should be processed in accordance with mass arrest guidelines established for the Republican National Convention.

The following guidelines will be used:

1. **Two** Polaroid photos **must** be taken of MOS and Defendant <u>together.</u>

2. **Mass arrest pedigree labels** must be filled out with arrest information and placed on rear of Polaroid photos.

3. Transport defendant to **TRIAGE** area. Upon conclusion, transport to **MASS ARREST PROCESSING CENTER AT ONE POLICE PLAZA.**

4. Prepare **OLBS WORKSHEET, DAT INVESTIGATION SHEET** and any **VOUCHERS** for safekeeping property or evidence.

5. Arresting Officer will then be directed to respond to **Manhattan District Attorney's Office** at 100 Centre Street.

6. Once you have sworn out the affidavit at the D.A.'s Office, you have completed the arrest processing requirement and can be returned to your detail or dismissed as per your command.

## TERMINAL PERFORMANCE OBJECTIVE #5

## RELATED NYS PENAL LAW OFFENSES

**120.20      RECKLESS   ENDANGERMENT   (Second   Degree,   "A" Misdemeanor)**
A person is guilty of Reckless Endangerment in the Second Degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

**140.05      TRESPASS (Violation)**
A person is guilty of Trespass when he knowingly enters or remains unlawfully in or upon premises.  "Premises" is defined as a building and any real property.

A person is presumed to have remained unlawfully when he disregards a personally communicated order to leave, issued by the owner in charge of the premises or his designated representative.

Whenever possible, the Department should secure in advance a verbal or written commitment from the property owner to act as a complainant in the event arrests are made.

**140.10      CRIMINAL TRESPASS (Third Degree, "B" Misdemeanor)**
A person is guilty of Criminal Trespass in the Third Degree when he knowingly enters or remains unlawfully in a building which is fenced in or otherwise enclosed in a manner designed to exclude intruders.

**195.05.1      OBSTRUCTING GOVERNMENTAL ADMINISTRATION (Second Degree, "A" Misdemeanor)**
A person is guilty of Obstructing Governmental Administration (OGA) when he intentionally obstructs, impairs, or prevents the administration of law or other government function or prevents or attempts to prevent a public servant from performing an official function by means of intimidation, physical force, or interference, or by means of any independent unlawful act.

A person who blocks pedestrian or vehicular traffic and attaches himself or herself to other persons or property by means of **chains** or **"sleeping dragons"** or otherwise has to be **carried from the location** by the police may be charged with **OGA.**

In such cases, the person is intentionally preventing the police from clearing the sidewalk or roadway and restoring orderly pedestrian or vehicular traffic flow by means of physical interference.  Thus, OGA is an appropriate charge.

**205.30      RESISTING ARREST ("A" Misdemeanor)**
A person is guilty of Resisting Arrest when he **intentionally prevents** or **attempts** to prevent a police officer or peace officer from effecting an **authorized arrest** of himself or another person.

The suspect must either be under arrest or in the process of being arrested at the time of the resistance.   A person who has **not been previously placed under arrest** but who is fleeing from an officer is **not** resisting arrest, even if the officer is shouting at the suspect to stop.   He **can** be charged with Obstructing Governmental Administration.   Minor acts of non-cooperation should not result in a charge of resisting arrest.

Verbal disagreement or abuse is **not** resisting arrest unless accompanied by some form of physical conduct calculated to prevent or impede arrest.

**240.05      RIOT (Second Degree, "A" Misdemeanor)**
A person is guilty of Riot in the Second Degree when, **simultaneously** with four **or more** other persons, he engages in tumultuous and violent conduct and thereby **intentionally or recklessly** causes or creates a grave risk of causing public alarm.

The attempt to riot need not be successful for a lawful arrest, and it is **not** necessary to arrest five people.   All that is required is evidence that the defendant acted with at least four others who also engaged in tumultuous and violent conduct.

*Mere presence* is not sufficient; the arrested party must have participated in some manner in the conduct, and there must have been at least four other people engaging in the conduct as part of the same group.   The phrase "tumultuous and violent conduct" means more than loud noise or ordinary disturbance.   It is designed to connote frightening mob behavior involving real and immediate threats of injury.

Clear examples are bottle throwing, stone throwing and smashing windows.

**240.06       RIOT (First Degree, "E" Felony)**
A person is guilty of Riot in the First Degree when:
- **Simultaneously,** with **ten or more** other persons he engages in tumultuous and violent conduct and thereby **intentionally or recklessly** causes or creates a grave risk of causing public alarm; and
- In the course of and as a result of such conduct, a person **other than** one of the participants suffers physical injury or substantial property damage occurs.

Like Riot in the Second Degree, all persons charged with Riot in the First Degree must actively participate in the mob behavior.

**240.08       INCITING TO RIOT ("A" Misdemeanor)**
A person is guilty of Inciting to Riot when he urges **ten or more** persons to engage in tumultuous and violent conduct.

In addition to the elements listed in the statute, the following factors must exist before making an arrest for Inciting to Riot:
- The speaker must address a specific group of ten or more persons;
- The speaker must show an intent to stir the group to **immediate violent** action;
- The group must in fact be aroused.

NOTE:       Inciting to Riot is a difficult crime to prove, particularly if the speaker is arrested before any violent conduct results.  Thus, it is especially important to be able to document all statements made and circumstances surrounding the incident.

**240.10       UNLAWFUL ASSEMBLY ("B" Misdemeanor)**
A person is guilty of Unlawful Assembly when he assembles with **four or more** other persons for the purpose of engaging or preparing to engage with them in tumultuous and violent conduct likely to cause public alarm, or when, being present at an assembly which either has or develops such purpose, he remains there with intent to advance that purpose.

**240.20     DISORDERLY CONDUCT (Violation)**

A person is guilty of Disorderly Conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:

1. He engages in fighting or in violent, tumultuous or threatening behavior;
2. He makes unreasonable noise;
3. In a public place, he uses abusive or obscene language or makes an obscene gesture;
   a. **NOTE:** Look at the context in which the language is being used, i.e., the words and conduct are intended to create a public disturbance.
4. Without lawful authority, he disturbs any lawful assembly or meeting of persons;
5. He obstructs vehicular or pedestrian traffic;
6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse;
7. He creates a hazardous or physically offensive condition by an act which serves no legitimate purpose.

**240.26     HARASSMENT IN THE SECOND DEGREE (Violation)**

A person is guilty of Harassment in the Second Degree when, with intent to harass, annoy, or alarm another person:

- He or she strikes, shoves, kicks, or otherwise subjects such other person to physical contact, or attempts or threatens to do the same;
- He or she follows a person in or about a public place;
- He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

NOTE:   While the subdivision of Harassment relating to abusive or obscene conduct directed at a person has been declared unconstitutional and deleted from this section, Penal Law 240.20(3), **Disorderly Conduct**, remains viable.  That section outlaws using abusive or obscene language or making an obscene gesture in a public place with intent to cause public inconvenience, annoyance or alarm.

**240.35      LOITERING (Violation)**

A person is guilty of Loitering when he or she is masked or in any manner disguised by unusual or unnatural attire or facial alteration and loiters, remains or congregates in a public place with other persons so masked or disguised, or knowingly permits or aids persons so masked or disguised to congregate in a public place.

In order for there to be a violation of this section, the violator must be accompanied by at least **two** other persons similarly dressed or disguised.

**145.60      MAKING GRAFFITI ("A" Misdemeanor)**

A person is guilty of Making Graffiti by etching, painting, covering, drawing upon, or otherwise placing a mark upon public or private property with intent to damage such property.  Graffiti is illegal without the express permission of the owner or operator of the property.

**145.65      POSSESSION OF GRAFFITI INSTRUMENTS**
**                  ("B" Misdemeanor)**

A person is guilty of Possession of Graffiti Instruments when he possesses an article commonly used to etch, paint, cover, draw upon, or otherwise place a mark upon a piece of property:

- When that person has no permission or authority to do such; and
- Under circumstances evinces an intent to use instrument to damage such property.

Glue and posters can be considered graffiti instruments.

D032154

**145.05        CRIMINAL MISCHIEF, FOURTH DEGREE**
**                ("A" Misdemeanor)**

A person is guilty of Criminal Mischief in the Fourth Degree when, having no right to do so nor any reasonable ground to believe that he has such a right, he:
- Intentionally damages property of another person;
- Intentionally participates in the destruction of an abandoned building;
- Recklessly damages property of another person in an amount exceeding **$250.**

**145.10        CRIMININAL MISCHIEF THIRD DEGREE ("E" Felony)**
A person is guilty of Criminal Mischief in the Third Degree when, having no right to do so nor any reasonable ground to believe that he has such a right, he or she:
- Damages the motor vehicle of another person, by breaking into it when it is locked, with the intention of stealing property, and within the previous ten year period, has been convicted three or more times, in separate criminal transactions for which sentence was imposed on separate occasions, of criminal mischief in the fourth degree, third degree, second degree, or first degree;
- Damages property of another person in an amount exceeding **$250.**

**145.10        CRIMINAL MISCHIEF SECOND DEGREE ("D" Felony)**
A person is guilty of Criminal Mischief in the Second Degree when with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he has such right, he damages property of another person in an amount **exceeding $1,500.**

**145.12        CRIMINAL MISCHIEF FIRST DEGREE ("B" Felony)**
A person is guilty of Criminal Mischief in the First Degree when with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he has such right, he damages property of another person by means of an explosive.