UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE PACKARD, EDWARD BECK, MICHELLE BERGER, ARI COWAN, CONNOR HICKS, CHARLES MEACHEM, CHRIS PHILLIPS, LARRY SWETMAN and AMADON DELLERBA, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>-against-<br><br>THE CITY OF NEW YORK, a municipal entity,<br>DEFENDANT. | No. 15-CV-7130(AT)(RLE)<br><br><br>PLAINTIFFS' SECOND SET OF DOCUMENT REQUESTS TO DEFENDANT |

Pursuant to Fed. R. Civ. P. 34 and the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiffs George Packard, Edward Beck, Michelle Berger, Ari Cowan, Connor Hicks, Charles Meachem, Chris Phillips, Larry Swetman, and Amadon DellErba ("Plaintiffs"), by and through the undersigned counsel, hereby request that Defendant produces, on or before October 26 at 5:00 p.m., the documents described below, or some agreed upon subset thereof, for inspection and copying, or in electronic form in accordance with the instructions below, at the offices of Wolf Haldenstein Adler Freeman & Herz LLP at 270 Madison Avenue, 10th Floor, New York, NY 10016.

These document requests are continuing. If at any time after service of answers hereto, and prior to the trial of this action, Defendant obtains or becomes aware of additional information pertaining to any of these document requests, the disclosure of which may be required pursuant to Rule 26(e) of the Federal Rules, Defendant shall, within thirty (30) days or

the period required by the Federal Rules, and in no event later than five (5) days before trial, serve upon the undersigned a supplemental production of documents.

I. **INSTRUCTIONS**

1. Each document produced shall be produced in a true, complete and accurate copy, authenticated as such under oath by the document custodian or another person with personal knowledge sufficient to provide such sworn authentication.

2. In making your production, please provide .tiff files, all electronic metadata, with the appropriate database load files.

3. Email is to be produced in a form that preserves metadata associated with the email, such as the identities of the sender, "CC" recipients, "BCC" recipients, date and time sent and received, etc.

4. Where a document or record is produced that contains a cover or jacket, title page, table of contents, or index, then whether the document or record is produced in its entirety or only in part, the cover, jacket, title page, table of contents and/or index shall be produced as well.

5. Video maintained in a Genetec security camera system shall be provided in .asf format and not in .G64 format. ARGUS, TARU and other video shall be provided in a non-proprietary format viewable on commonly-available software.

6. Video should be provided in its original form, and should not be edited or cut.

7. Where a document request herein seeks materials relating to training, the request requires that the response provide such materials from any police unit in which such material may be found, regardless of whether the primary function of such police unit is training. Please note that upon information and belief training materials may be maintained by, among other police units, the Training Bureau (including the Police Academy, the In-

Service Tactical Training Unit, the Physical Training and Tactics Department, the School Safety Training Unit); the Special Operations Division (including Disorder Control); the Patrol Bureau; and the borough Task Forces.

8. If Defendant cannot produce a document or a portion thereof after exercising due diligence to secure it, so state in writing and produce whatever portion of said document possible, specifying the reason for your inability to produce the document or the remainder thereof and stating whatever information or knowledge you have concerning the document or portion thereof you are unable to produce including, but not limited to, the content of such document, or missing portion thereof which was, but is no longer in your possession, custody or control, and state what disposition was made of it and the reason for such disposition.

9. In the event that any document called for by this request has been destroyed, that document is to be identified in writing as follows: addressor, addressee, date, subject matter, number of pages, attachments, exhibits or appendices, all persons to whom distributed, shown, or explained, date of destruction, manner of destruction and person who destroyed the document.

10. If any document or information called for by a document request is withheld by reason of a claim of privilege, please state the basis of the privilege in a privilege log.

11. For documents concerning which privilege is asserted, provide the following information:

      a.    the author(s);
      b.    the recipient(s) (including those copied);
      c.    which authors or recipients, if any, are attorneys, and whether such attorneys had an attorney-client relationship with each other authors or recipients;
      d.    the date;
      e.    the subject matter of the document;

  f. a statement of whether this information has ever previously been disclosed in another litigation or made public; and
  g. the basis for the claim of privilege or immunity.

12. For communications concerning which privilege is asserted, provide the following information:

  a. the parties to the communication;
  b. the identities of any person(s) to whom the communication was divulged;
  c. which parties to the communication, if any, are attorneys, and whether such attorneys had an attorney-client relationship with each other party to the communication and with each other person(s) to whom the communication was divulged;
  d. the date of the communication;
  e. the subject matter of the communication;
  f. a statement of whether this information has ever previously been disclosed in another litigation or made public; and
  g. the basis for the claim of privilege or immunity.

13. Where information is redacted or withheld pursuant to N.Y. Criminal Procedure Law §§ 160.50, 160.55, or 160.58 please provide a statement made under oath by a person with the requisite personal knowledge that the documents or information withheld or redacted has been sealed under such provision and that sealing has not been waived. For instance, with respect to Section 160.50, provide a sworn statement that the documents or information withheld or redacted relate to a criminal action or proceeding against a person which terminated in favor of such person (as the term "terminated in favor of such person" is defined CPL § 160.50(3)), and the record of such action or proceeding was sealed.

14. Where information or documents are redacted or withheld pursuant to the "deliberative process privilege," please provide a statement made under oath by a person with the requisite personal knowledge stating the particular basis for the claim of privilege or immunity and providing the following information:

  a. the author(s) of the document or information;
  b. the recipient(s) (including those copied) of the document or information;

c.  the location(s) where the document or information has been stored;
d.  the date the document or information was created or issued;
e.  the subject matter of the document or information;
f.  a statement of whether this information has ever previously been disclosed in another litigation or made public;
g.  the person, office, or entity with decision-making authority over the subject matter of the document or information;
h.  the nature of the decision or policy to which the document or information relates; and
i.  if a decision or policy resulted from the deliberation, identify the decision or policy.

15. Where **factual** information or documents are redacted or withheld pursuant to the "deliberative process privilege," please provide a statement made under oath by a person with the requisite personal knowledge stating why the information or documents, although factual, falls within the scope of the "deliberative process privilege."

16. Where information or documents are redacted or withheld pursuant to the "law enforcement privilege," please provide a statement made under oath by a person with the requisite personal knowledge stating the particular basis for the claim of privilege or immunity and providing the following information:

a.  the author(s) of the document or information;
b.  the recipient(s) (including those copied) of the document or information;
c.  the location(s) where the document or information has been stored;
d.  the date the document or information was created or issued;
e.  the subject matter of the document or information;
f.  a statement of whether this information has ever previously been disclosed in another litigation or made public; and
g.  a statement of whether any specific, identifiable, and presently-ongoing law enforcement investigation(s) would be interfered with by disclosure.

17. Where information or documents are redacted or withheld based upon a claim of individual privacy considerations, please provide a statement made under oath by a person with the requisite personal knowledge stating the particular basis for the claim of privilege or immunity and providing the following information:

a. the author(s) of the document or information;
b. the recipient(s) (including those copied) of the document or information;
c. the date the document or information was created or issued;
d. the nature and subject matter of the document or information;
e. the identity of the person whose claim of individual privacy is being asserted;
f. a statement of whether this information has ever previously been disclosed in another litigation or made public.

18. If Defendant asserts any other objection as to any Request below, state whether Defendant is withholding any documents and/or responses on the basis of that objection.

19. Unless otherwise specified, the relevant time period for each request is August 26, 2004 through September 14, 2012.

## II. DEFINITIONS

1. These definitions incorporate by reference the Uniform Definitions in Discovery Requests set forth in Local Rule 26.3.

2. "**NYPD**" means the New York City Police Department.

3. The term "**Occupy Wall Street**" or "**OWS**" means the social and political movement also known by the name "Occupy," which arose in or around September 2011. As used herein, the term also refers to the people who associated as part of that movement, people who were perceived as being associated with that movement, and people who took part in events associated with the movement. The term "**Occupy Wall Street Event**" or "**OWS Event**" refers to an event, such as a march, protest or meeting, which was (or was perceived to be) organized or performed by OWS. Unless otherwise specified, these terms refer to New York City OWS.

4. The term "**OWS One Year Anniversary Events**" refers to the OWS Events which occurred (or were expected to occur) in New York City during the Class Period, and

which were (or was perceived to be) organized or performed by OWS for to coincide with the first anniversary of the founding of the movement.

5. **"Member of Service"** or **"MOS"** means any person employed by the NYPD. **"Uniformed Member of Service"** or **"UMOS"** means any MOS who is entitled to wear a uniform and/or who holds a rank defined in the NYPD Order of Rank (Patrol Guide Procedure 203-01), including Police Officers, Detectives, Sergeants, Lieutenants, Captains, Deputy Inspectors, Inspectors, Deputy Chiefs, Assistant Chiefs, Bureau Chiefs, and the Chief of Department. For the purposes of these demands, Recruiting Officers, Probationary Police Officers, Auxiliary Officers and the Chief of Police will be considered UMOS. Within these demands, unless otherwise expressly stated, the terms **"Officer"** and **"Police Officer"** will refer to any UMOS regardless of rank. The term **"Executive Level Officers"** means police officers of the rank of Captain and above. The term **"Rank and File Officers"** means police officers of the rank of Lieutenant and below.

6. The term "**police unit**" means any NYPD unit, command, police service area, transit district, organizational subunit, precinct, division, unit, group, squad, patrol, zone, module, or other defined organizational entity within the NYPD. The term "**involved police unit**" means any NYPD police unit which was involved in the Incident, or to which any involved police officer was assigned at the time of the Incident.

7. The term "**arresting officer**" means any officer who, in relation to a person taken into police custody, either: a) took the person into physical custody, b) placed the person under arrest, or c) was designated the arresting officer in NYPD records. The term "**processing officer**" means any officer who participated in processing the arrest of an arrestee by, for example, creating an arrest report, entering information in the Omniform System relating to the arrest, executing an initiating instrument, or fingerprinting the arrestee.

The term "**custodial officer**" means any officer who had custody of a person in police custody. The term "**approving officer**" means any officer that approved an arrest made by another officer, or who approved any aspect of such arrest, such as the paperwork or processing of the arrest. The term "**supervisory officer**" means any MOS tasked with the supervision of an arresting officer, processing officer, custodial officer or approving officer. The term "**involved police officer**" means any arresting officer, processing officer, custodial officer, approving officer or supervisory officer.

8. For the purposes of these demands only, the terms "**crime**" and "**criminal**" shall refer to violations and other non-criminal offenses, as well as misdemeanors and felonies. The terms "**criminal case**" and "**criminal proceeding**" shall include cases or proceedings adjudicating alleged crimes as the latter term has been defined herein. The term "**initiating instrument**" means any form of process, document or filing which initiates a criminal proceeding, including a summons, desk appearance ticket (DAT), complaint, or information. The term "**arrest report**" means any record or report documenting an arrest, including arrest report from the Omniform System, or any other hard copy or electronic document that performs a similar function. The term "**police criminal case file**" means the entire file maintained by the NYPD relating to an arrest and related criminal proceeding against a particular individual. The terms "**District Attorney**" and "**DA**" refer to the District Attorney, or District Attorney's office of any borough within New York City. The term "**DA criminal case file**" means the entire file maintained by the District Attorney's Office relating to a criminal proceeding against a particular individual. The term "**court criminal case file**" means the entire file maintained by the court adjudicating criminal a criminal proceeding against a particular individual.

9. The term "**training**" refers to teaching information, methods, practices, or policies. Without limiting the foregoing, the term training also includes:

    a. Any such activity that occurs by means of written communications, such as FINEST messages or memos.
    b. Any such activity that occurs at roll call or muster points.
    c. Any such activity which occurs in the Police Academy, the Training Bureau, the Disorder Control Unit, the Anti-Terrorism Bureau, or Strategic Response Group.
    d. Any training related to particular events, such as training on Randall's Island in April 2012 in preparation for anticipated May Day protests on May 1, 2012, and training on Randall's Island in July, August, or September 2011 in preparation for Occupy Wall Street protests in September 2011.
    e. Any training which occurs at facilities (including websites) not operated by the NYPD.

10. The term "**instruction**" means any verbal communication, whether written or not, which directs the recipient(s) to do or not to do anything. The terms "**memo**" and "**memorandum**" mean any document that conveys information or instructions from an author to a recipient, whether the author or recipient is an individual, an organization, a police unit, a group within an organization, an office, a file depository, etc. The terms "memo" and "memorandum" include memos "to file" and memos created primarily for record-keeping purposes. A memo or instruction is "issued" when it is made effective, or is communicated to recipients, displayed, circulated, or published, or when it is dealt with in a manner in which a like memo or instruction is typically dealt with in the normal course of operations when such memo or instruction intended to be made effective, or is communicated to recipients, displayed, circulated.

11. The term "**ACD**" means adjournment in contemplation of dismissal as defined in New York Criminal Procedure Law 170.55.

12. The term "**mass arrest**" means the arrest of ten or more people: at the same event or incident; or at the same location and near to one another in time; or by the same detail of NYPD officers during a single tour; or which has been performed or processed

pursuant to NYPD procedures for large scale arrest processing; or which has been designated by the NYPD as a mass arrest or "large scale" arrest.

13. The term "**investigation**" means any formal inquiry or systematic analysis, research, report, review or study of prior or current conduct.

14. The term "**Incident(s)**" refers to the events described in the complaint, which occurred on September 15-17, 2012.

15. The term "**Suppressing Protest Report**" refers to SUPPRESSING PROTEST: HUMAN RIGHTS VIOLATIONS IN THE U.S. RESPONSE TO OCCUPY WALL STREET (July 21, 2012), by The Global Justice Clinic (NYU School of Law), Walter Lestner Int'l Human Rights Clinic (Fordham Law School), et al.

16. The term "**Class Period**" means September 15-17, 2012.

### III. DOCUMENT REQUESTS

#### A. Initial Disclosure Documents

1. Memo books, for the Class Period, of each police officer identified in the Defendant's initial disclosures. This request includes any notations on the reverse side of memo book pages (often called fly pages by NYPD officers).

2. Any statements by any person identified in the Defendant's initial disclosures containing information concerning the identified subject matter of such person's testimony.

#### B. Data From Before or During OWS

3. Documents, reports, and memoranda concerning policies and procedures:

    a. To address patterns, issues for improvement, or problems identified in the "DP Database" or "Declined to Prosecute Database".
    b. For the use of the "DP Database" or "Declined to Prosecute Database", including but not limited to, the entry of data and the maintenance of that database.

4. Documents, reports, memoranda, and communications, concerning patterns, issues for improvement, or problems identified in the "DP Database" or Declined to Prosecute Database relating to:

    a. Arrests of protestors.
    b. The disorderly conduct statute.
    c. The obstruction of governmental administration statute.

5. Documents, including spreadsheets and raw data, concerning:

    a. Misdemeanor arrests that occurred during the period August 1, 2011 September 17, 2012 identified in the "DP Database" or Declined to Prosecute Database.
    b. Arrests for disorderly conduct and obstructing governmental administration that occurred during the period August 1, 2011 through September 17, 2012 identified in the "DP Database" or Declined to Prosecute Database.

6. Documents concerning findings by any governmental entity (including but not limited to any court) of wrongdoing or liability for false arrest by the City of New York or by NYPD officers in relation to:

    a. An arrest of a civilian engaged in a protest or public assembly.
    b. An arrest of a civilian on charges of Penal Law §§ 240.20(5), 240.20(6), or 195.05.
    c. An arrest of a civilian engaged in a protest or public assembly.
    d. An arrest of a civilian on charges of Penal Law §§ 240.20(5), 240.20(6), or 195.05.

7. Documents concerning cumulative statistics or tabulations for:

    a. Notices of Claim for false arrest in relation to a protest or public assembly.
    b. Court complaints alleging false arrest in relation to a protest or public assembly.

8. Amounts paid in settlement in cases alleging false arrest in relation to a protest or public assembly.

9. Communications between the NYPD and the District Attorney's office concerning reasons for declined prosecutions, allowing dismissals, or consenting to ACDs in

cases involving protestor arrests for (1) disorderly conduct or (2) obstructing governmental administration.

### C. NYPD Plans For and Instruction During First Anniversary of OWS

10. Documents concerning any plan for the NYPD's policing of OWS One Year Anniversary Events which was put into effect (in whole or in part) or which was commanded to be put into effect. As used in this request, the term "plan" means a plan setting forth the commanded activities of significant police units, relatively large numbers of police officers, and/or covering a relatively large area geographically. The term does not, for example, here refer to a sergeant's "plan" for the activities of his squad. The term "plan" refers to any plan:

       a. Issued or approved by the Mayor's Office.
       b. Issued or approved by the Office of the Commissioner, the Office of the Chief of Department, or the Office of the Commander of any Patrol Borough.
       c. Issued or approved by any detail commander, incident commander, or their immediate subordinates.
       d. Intended to direct police activity at the geographic level of a sector (or larger).
       e. Intended to direct police activity for an entire tour or platoon.
       f. Intended to direct the activity of arrest teams, Borough Task Forces, the Disorder Control Unit, or the Counterterrorism Unit/Bureau.

11. Documents concerning any plan or instructions for communication among police officers and police units involved in the policing of OWS One Year Anniversary Events. This request includes, but <u>is not limited</u> to, any plan or instructions issued to or by the Communications Division or the Operations Division.

12. Documents concerning any group, including but not limited to, commands, task-forces, strike forces, or teams, within the NYPD, whether formal or informal, which concerned the NYPD's preparation for and / or NYPD's response to OWS, including but not

limited to the OWS One Year Anniversary Events, between August 1, 2011 through September 14, 2012. The documents requested include:

    a. Any document creating such committee or working group.
    b. Any document concerning the membership of such group, and their duties.
    c. Any document concerning the authority of such working group, its duties, and its relationship to the chain of command.
    d. Any document concerning meetings or conferences of such group, including records of attendance and minutes.
    e. Any memoranda or instructions issued to such committee or working group.
    f. Any memoranda or instructions issued by such committee or working group.
    g. Any information communicated to, or gathered by, such committee or working group.
    h. Documents concerning any decisions or resolutions made by such committee or working group.
    i. Documents concerning any plan for the NYPD's policing of OWS One Year Anniversary Events communicated to or created by such committee or working group.

13. Any plan, memorandum or instruction concerning OWS, including the OWS One Year Anniversary Events, written or created during August 1, 2011 through September 14, 2012 which contained information, discussion or instructions relating to:

    a. The First Amendment rights of individuals to speak, engage in expressive conduct, assemble, and petition for the redress of grievances.
    b. Enforcement of Penal Law 240.20(5) or (6), Penal Law 195.05, the parading without a permit law, or the Vehicle and Traffic Law.
    c. Training or instructions for police officers involved in policing OWS One Year Anniversary Events concerning the subject matter of the two preceding subparts.

14. Any memorandum or instruction concerning Occupy Wall Street or any Occupy Wall Street Event(s) which was issued for distribution to more than one NYPD precinct or police unit from August 1, 2011 through September 18, 2012.

15. Any After Action Memo, unusual occurrence report, or other post-event evaluation by the NYPD or any part of the City of New York concerning the actions of

OWS protestors and/or NYPD officers at the large OWS Events which occurred in Manhattan on 9/17/2011, 9/24/2011, 10/1/2011, 11/5/11, 11/17/11, 1/1/2012, 3/17/2012 and 5/1/2012.

16. Any plan, memorandum or instruction concerning the OWS One Year Anniversary Events relating to:

      a. The issuance of orders to disperse.
      b. The making of arrests.

17. Documents, reports, memoranda, and communications concerning any "Mass Arrest Processing Plan" or other policing strategy developed in preparation by or for the NYPD during August 1, 2011 through September 17, 2012.

18. Any documents, communications, or records concerning instructions given to police officers, including but not limited to all Members of Service, mobile field forces, or Task Force Units, assembling at roll call, muster points, or Beginning of Tour meeting(s) during the Class Period relating to:

      a. The First Amendment rights of individuals to speak, engage in expressive conduct, assemble, and petition for the redress of grievances.
      b. Enforcement of Penal Law 240.20(5) or (6), Penal Law 195.05, the parade law, or the Vehicle and Traffic Law.
      c. The issuance of orders to disperse.
      d. The making of arrests.

**D. Following First Anniversary of OWS**

19. The command log of the Mass Arrest Processing Center at One Police Plaza for the Class Period.

20. The detailed breakdown of pedigree data on arrests and summons concerning OWS-related arrests during the Class Period which was prepared by the Criminal Justice Bureau.

21. Documents relating to the disposition of all OWS-related arrests during the Class Period, including but not limited to, the arrests identified in the D000633-D000646.

22. Documents relating to the manner in which the City of New York and/or the NYPD measured and monitored the understanding by NYPD police officers of the elements of conduct necessary to constitute a violation of Penal Law §§ 240.20(5), 240.20(6), or 195.05.

### E. Quality Control Documents

23. Documents relating to the manner in which the City of New York and/or the NYPD measured and monitored compliance by NYPD police officers with the legal requirement of probable cause for arrests of a civilian on charges of Penal Law §§ 240.20(5), 240.20(6), or 195.05.

24. Documents setting forth any standard for quality relating to arrests of a civilian on charges of Penal Law §§ 240.20(5), 240.20(6), or 195.05, adopted by the City of New York and/or the NYPD and any documents relating to the communication of such standard to members of the NYPD.

25. Documents concerning quality controls instituted by the NYPD and/or the City of New York for arrests of a civilian on charges of Penal Law §§ 240.20(5), 240.20(6), or 195.05.

26. Documents relating to the measurement and/or monitoring of outcomes by the City of New York and/or the NYPD for arrests of civilians on charges of Penal Law §§ 240.20(5), 240.20(6), or 195.05.

27. Documents concerning any police unit within the NYPD responsible for monitoring findings by any governmental entity (including but not limited to any court) of wrongdoing or liability for false arrest by the City of New York or by NYPD officers, and

concerning the manner in which such unit gathers, maintains, and reports on such information.

28. Documents and communications concerning the Suppressing Protest Report, including but not limited to, evaluations of that report, internal circulation of that report within the City of New York or the NYPD, and intake of that report.

29. Documents, reports, memoranda, and communications concerning third party investigations, provided to the NYPD or Defendant City of New York, pertaining to inadequacies or problems with the NYPD's response(s), reaction(s), or procedure(s) relating to protests.

30. Documents, reports, memoranda, and communications concerning investigations or evaluations created by third parties and provided to the NYPD or Defendant City of New York pertaining to:

    a. The number of dismissals, ACDs, or declined prosecutions for misdemeanor arrests conducted by the NYPD.
    b. Cumulative statistics or tabulations for allegations of unlawful arrests or false arrests for misdemeanors or violations.
    c. Arrests of protestors.
    d. Mass arrests.

31. Documents, reports, memoranda, and communications concerning investigations or evaluations, created by or at the direction of the NYPD or Defendant City of New York, pertaining to:

    a. Inadequacies or problems with the NYPD's response(s), reaction(s), or procedure(s) relating to protests.
    b. The number of dismissals, ACDs, or declined prosecutions for misdemeanor arrests conducted by the NYPD.
    c. Cumulative statistics or tabulations for allegations of unlawful arrests or false arrests for misdemeanors or violations.
    d. Arrests of protestors.
    e. Mass Arrests.
    f. Inadequacies or deficiencies of NYPD training.
    g. Adequacy or inadequacy as well as the legality or illegality of mass arrests.

Plaintiffs, through their counsel, reserve the right to amend and to supplement these Discovery Requests and to utilize whatever other discovery mechanisms are or become available to them pursuant to and under the Federal Rules of Civil Procedure.

Dated: New York, New York
      September 26, 2017

| | |
|---|---|
| **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**<br><br>By: _____<br>Jeffrey G Smith<br>Janine L. Pollack<br>Kevin G. Cooper<br>Wolf Haldenstein Adler<br>Freeman & Herz LLP<br>270 Madison Avenue<br>New York, NY 10016<br>212-545-4600<br>Smith@whafh.com<br>Pollack@whafh.com<br>KCooper@whafh.com<br><br>*Attorneys for Plaintiffs*<br>//793915 | **STECKLOW & THOMPSON**<br><br>Wylie M. Stecklow<br>David A. Thompson<br>Stecklow & Thompson<br>217 Centre Street Floor 6<br>New York, NY 10013<br>212-566-8000<br>Wylie@SCTLaw.NYC<br>Dave@SCTLaw.NYC |