UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

GEORGE PACKARD, EDWARD BECK, ARI COWAN and
MICHELLE BERGER, individually and on behalf of a class of
all others similarly situated,

**PLAINTIFFS'REPLY LOCAL CIVIL RULE 56.1 STATEMENT**

15-CV7130 (AT) (SDA)

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

------------------------------------------------------------------------------x

Plaintiffs, by and through their attorneys, submit their responses to Defendant's

Affirmative Responses in its 56.1 counter-statement (ECF No. 277) and in accordance with this

honorable Court's Order dated March 4, 2018, ECF No. 251, and Local Rule 56.1 submit their

Affirmative Rule 56.1 Statement.  Further, Due to the competing motions for summary judgment

(ECF Nos. 256 and 264), there is significant overlap in the 56.1 statements and counter-

statements.  Where Defendant asserted affirmative statement of facts in its counter-statement that

are duplicative of those previously asserted in its opening 56.1 statement, Plaintiffs incorporate

by reference their responses to those previously asserted facts in ECF No. 282.  Each paragraph

from Plaintiffs' counter-statement is indicated by "ECF 282 at ¶¶".


**DEFENDANT'S AFFIRMATIVE STATEMENT OF FACTS**

1.      The record shows that NYPD officers received extensive and thorough training on First
Amendment principles and the application of the disorderly conduct statute, PL §240.20(5),
blocking vehicular or pedestrian traffic and PL §240.20(6), failure to comply with a lawful order
to disperse, in policing demonstrations. Exs. A, A1-5; B, B1-5; C; D, D1-7; E, E1-5; F; G; H; I.

> **PLAINTIFFS' RESPONSE 1-1:**  DENY. This is not a material fact. (a)  Academy
> training is not at issue because the arrest decisions at sidewalk protest are made by
> executive level officers who had all graduated from the Academy decades prior to the
> time when they reached the executive level officer rank.  (See Stecklow Declaration in
> Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3,

1

Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 1-2:**  <u>DENY</u>. The Defense has not produced any witness or corroborating documentation of training dates and attendees of any training on First Amendment principles and the application of the disorderly conduct statute, PL §240.20(5), blocking vehicular or pedestrian traffic and PL §240.20(6), failure to comply with a lawful order to disperse, in policing demonstrations.

2.      NYPD officers received this training from the NYPD both at the Police Academy and through Command Level training at their precincts. <u>Id.</u>

**PLAINTIFFS' RESPONSE 2-1:**  <u>DENY</u>. This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 2-2:**  <u>DENY</u>.  Command level training at the precincts was ineffective and executive level officers did not receive command level training.  ((See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶¶ 2, 3, 7)

3.      The NYPD Police Academy utilized a plethora of sources to train officers on the Constitution, including the First Amendment, and the application of the disorderly conduct

statute, including the NYPD Police Student's Guide, the Recruit Training Manual, the NYPD Patrol Guide, Police Academy Training Memoranda, NYPD Legal Bureau Bulletins, Penal Law and PowerPoint presentations. Id.

> **PLAINTIFFS' RESPONSE 3-1:**  DENY. This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

> **PLAINTIFFS' RESPONSE 3-2:**  ADMIT.  The academy lesson plans and exhibits speak for themselves.

> **PLAINTIFFS' RESPONSE 3-3:**  Deny. The Legal Bureau Bulletin on disorderly conduct was not updated between 1971 and 2017 (See 56.1¶¶ 65-68  Ex. 31: D019527 & Ex. 37: D020862.).

> **PLAINTIFFS' RESPONSE 3-4:**  Deny. The NYPD did not keep any track of whether the Legal Bureau Bulletins were reviewed or ready.  Deputy Inspector Winski testified that he did not review legal bureau bulletins. (See 56.1 ¶ 258, Inspector Winski does not recall reading any Legal Bureau Bulletins betweenJune 10, 2013 and April 6, 2016. [Ex. 88: Packard 22915 [Winski Dep.] 66:3 - 67:10; Ex. 89: Packard 23300 – 23302 [Winski Dep.] 304:15 - 306:6).

4.      The NYPD Police Student's Guide, Chapter: Introduction to Law and Justice, 2007-2012, both defines the Constitution of the United States, including the First Amendment for officers, and outlines the applicability of the Constitution, including the First Amendment, to policing demonstrations. Exs. A, A1-5; B, B1-5; C.

> **PLAINTIFFS' RESPONSE 4-1:**  DENY. This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  ((See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any

executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

    **PLAINTIFFS' RESPONSE 4-2:**  <u>ADMIT</u>.  The academy lesson plans and exhibits speak for themselves.

5.      NYPD Police Student's Guide, Chapter: Maintaining Public Order, Demonstrations, 2005-2012, provided training to officers on the First Amendment and disorderly conduct, and specifically on the standards for enforcement of PL §240.20(5). Exs. D, D1-7; E, E1-5; F.

    **PLAINTIFFS' RESPONSE 5-1:** <u>DENY</u>. This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank. ((See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

    **PLAINTIFFS' RESPONSE 5-2:**  <u>ADMIT</u>.  The academy lesson plans and exhibits speak for themselves.

6.      Each chapter of the Police Student's Guide, including the Introduction to Law and Justice and Maintaining Public Order: Demonstrations, has a corresponding Lesson Plan, which shows that officers' training on the First Amendment and disorderly conduct involved lecture, question and answer and group discussion through instruction at the NYPD Police Academy. Exs. B, B15; E, E1-5.

    **PLAINTIFFS' RESPONSE 6-1:** <u>DENY</u>. This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level

training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 6-2:** <u>ADMIT</u>. The academy lesson plans and exhibits speak for themselves.

7.      Police officers were evaluated by quiz on their comprehension of the contents of each Lesson Plan/Chapter. Ex. N, Perkins Dep., 134:3-7, 135:6-15.

**PLAINTIFFS' RESPONSE 7-1:** <u>DENY.</u> This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 7-2:** <u>ADMIT</u>.

8.      If the quizzes indicated that an officer had a problem understanding the material, the officer was then recommended for tutoring. <u>Id.</u> at 135:15-18.

**PLAINTIFFS' RESPONSE 8-1:** <u>DENY.</u> This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the

Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 8-2:**  <u>ADMIT</u>, to the extent that similar review and attention was not given at the trimester exam, which was required to progress to the next phase of training.  See Exhibit 30, Perkins Tr. at 135: 19-136:1.

9.      In addition to lecture, question and answer, group discussion and quizzes on each chapter, three trimester exams were given during the course of Academy training, which covered every chapter reviewed in a given trimester. <u>Id.</u> at 135:19-136:8.

**PLAINTIFFS' RESPONSE 9-1:**  <u>DENY.</u> This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 9-2:**  <u>ADMIT</u>.

10.      NYPD Police Academy instruction was given by state certified instructors. Ex. N, Perkins Dep. 119:7-15.

**PLAINTIFFS' RESPONSE 10-1:**  <u>DENY.</u> This is not a material fact. (a)  Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1

¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 10-2:** <u>ADMIT.</u>

11.     The instructors were trained by officers designated as master instructors by the state. Id.  The NYPD's lesson plans and course materials were reviewed for national accreditation every four years by the Commission on Accreditation for Law Enforcement Agencies, ("CALEA"), and the NYPD received these accreditations. Id.; Ex. M.

> **PLAINTIFFS' RESPONSE 11-1:** <u>DENY.</u> This is not a material fact. (a) Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank. (See Stecklow Declaration in Further Support, Exhibit 8; Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148,  Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

12.     NYPD police officers received college credit for these courses through the National College Credit Recommendation Service ("NCCRS"). Ex. M.

> **PLAINTIFFS' RESPONSE 12-1:**  <u>DENY.</u> This is not a material fact. (a) Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, Paragraph 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148,  Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

      **PLAINTIFFS' RESPONSE 12-2:**  <u>DENY</u>. Exhibit M does not indicate that police officers received college credit for these courses.

13.    Officers also received what is called "Command Level training" at their precincts, which is training given on specific topics by the Specialized Training Section of the Police Academy to precinct-level training sergeants —"a training the trainer situation." Ex. N, Perkins Dep., 50: 2:18.

      **PLAINTIFFS' RESPONSE 13-1:**  <u>DENY,</u> to the extent this paragraph seeks to confirm (a) that executive level officers received any training related to the 2007 NYPD Police Academy Training Memo, or (b) that command level training is effective. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶¶ 2-7).

      **PLAINTIFFS' RESPONSE 13-2:**  <u>DENY</u>. The Defense has not produced any witness or corroborating documentation of training dates and attendees of any command level training.

      **PLAINTIFFS' RESPONSE 13-3:**  <u>ADMIT,</u> To the extent that the NYPD purports to have Command Level Trainings at precincts during roll call.

14.    The training sergeants take the training back to their individual commands and train every member of their respective commands. <u>Id.</u> at 130:15-18.

      **PLAINTIFFS' RESPONSE 14-1:**  <u>DENY,</u> to the extent this paragraph seeks to confirm (a) that executive level officers received any training related to the 2007 NYPD Police Academy Training Memo, or (b) that command level training is effective. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶¶ 2-7).

      **PLAINTIFFS' RESPONSE 14-2:**  <u>DENY</u>. The Defense has not produced any witness or corroborating documentation of training dates and attendees of any command level training.

15.    An example of Command Level training included the 2007 NYPD Police Academy Training Memo, "Enforcement of New York State Penal Law Section 240.20(5) Disorderly Conduct." Ex. G.

      **PLAINTIFFS' RESPONSE 15-1:**  <u>DENY,</u> to the extent this paragraph seeks to confirm (a) that executive level officers received any training related to the 2007 NYPD Police Academy Training Memo, or (b) that command level training is effective. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶¶ 2-7).

**PLAINTIFFS' RESPONSE 15-2:**  <u>DENY.</u> The Defense has not produced any witness or corroborating documentation of training dates and attendees of any command level training of the 2007 NYPD Police Academy Training Memo.

**PLAINTIFFS' RESPONSE 15-3:**  <u>ADMIT,</u> To the extent that this paragraph confirms the title of Exhibit G and that it purports to be a Command Level Training from 2007.

16.      The Training Memo provided guidance to officers specifically on the application of PL §240.20(5), that statute under which plaintiffs were charged, including, that something more than a "mere inconvenience of pedestrians is required to support the charge," and that an obstruction must be "substantial." <u>Id.</u>

**PLAINTIFFS' RESPONSE 16-1:**  <u>DENY,</u> to the extent this paragraph seeks to confirm (a) that executive level officers received any training related to the 2007 NYPD Police Academy Training Memo, or (b) that command level training is effective. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶¶ 2-7).

**PLAINTIFFS' RESPONSE 16-2:**  <u>DENY.</u> The Defense has not produced any witness or corroborating documentation of training dates and attendees of any command level training of the 2007 NYPD Police Academy Training Memo.

**PLAINTIFFS' RESPONSE 16-3:**  <u>ADMIT,</u> To the extent that this paragraph confirms the substance of Exhibit G, training memo from 2007.

17.      Commanding Officers at each precinct were directed to ensure that each member of their commands (precincts) was informed of and received Command Level training on this Training Memo. <u>Id.</u> at 1.

**PLAINTIFFS' RESPONSE 17-1:**  <u>DENY,</u> to the extent this paragraph seeks to confirm (a) that executive level officers received any training related to the 2007 NYPD Police Academy Training Memo, or (b) that command level training is effective. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶¶ 2-7).

**PLAINTIFFS' RESPONSE 17-2:**  <u>DENY.</u> The Defense has not produced any witness or corroborating documentation of training dates and attendees of any command level training of the 2007 NYPD Police Academy Training Memo.

**PLAINTIFFS' RESPONSE 17-3:**  <u>ADMIT,</u> To the extent that this paragraph confirms that on Page 1 of Exhibit G it indicates that in December 2007, Precinct Commanding Officers were to ensure that each member of the command is informed and received training on enforcing the aforementioned N.Y. Penal Law section.

18.     Executive officers in commands received command level training. Ex. N, Perkins
Dep., 50:19-23. The Training Memo stands until it is revoked. Id. at 51:3-5.

> **PLAINTIFFS' RESPONSE 18-1:**  DENY, to the extent this paragraph seeks to
> confirm (a) that executive level officers received any training related to the 2007
> NYPD Police Academy Training Memo, or (b) that command level training is
> effective. (See Stecklow Declaration in Further Support, Exhibit 151, Brown
> Declaration, ¶ 2-7).

> **PLAINTIFFS' RESPONSE 18-2:**  DENY. The Defense has not produced any
> witness or corroborating documentation of training dates and attendees of any
> executive level officers or executive officers attending or receiving any
> command level training.

> **PLAINTIFFS' RESPONSE 18-3:**  DENY, to the extent this paragraph seeks to
> allege that any command level training on the December 2007 Exhibit G
> occurred at any time in 2009, 2010, 2011 or thereafter.

19.     The NYPD Disorder Control Unit, ("DCU") was not tasked with providing
training on the Constitution of the United States, the application of the disorderly conduct
statute, the standards for probable cause or the contents of dispersal orders for that matter.
Ex. O, Raganella Dep., 36:2-3; 185:9-186:5; Ex. P, Vega Dep., 67:4-8, 69:17:22, 112:14-
114:11.

> **PLAINTIFFS' RESPONSE 19-1:**  ADMIT. The Defense made a deliberate
> choice not to train on any of the relevant training subjects even though (a) DCU
> was tasked with, and did provide, training to over twelve thousand NYPD
> officers during OWS. (See 56.1, ¶ 194), and (b) was the sole NYPD unit tasked
> with training for police officers who were policing Occupy Wall Street. (See
> Exhibit 1, Raganella Tr. 148:20 – 149:4).

> **PLAINTIFFS' RESPONSE 19-2:**  DENY.  DCU Commanding Officer
> Lieutenant Schwach believed that part of the DCU training curriculum should
> include classroom training on the legalities of civil disorder.  (See 56.1, ¶¶91-
> 93).

> **PLAINTIFFS' RESPONSE 19-3:**  ADMIT.  Even though DCU Commanding
> Officer Lieutenant Schwach believed that part of the DCU training curriculum
> should include classroom training on the legalities of civil disorder, his proposal
> in September 30, 2009 was not implemented.  (See 56.1, ¶¶91-95).

> **PLAINTIFFS' RESPONSE 19-4:**  DENY.  Consistent with O.G. 101-04, the
> DCU was tasked with conducting tactical reviews and assessing Department
> strategies at major events, including Occupy Wall Street.  (See Exhibit 152,
> D014376-77).

20.     The primary training function of the DCU, which consists of a handful of officers now and during OWS, (Ex. P, Vega Dep., 145:6-9) was to provide instruction to officers on line and wedge formations for mass arrests, high profile vehicle rescues, critical response vehicle deployment, setting up a vehicle command post, high crime area mobilizations, HazMat/COBRA training (chemical, biological and radiological awareness), HazMat deployment, active shooter training, testing response readiness to detonation of an improvised explosive device, and so on. Ex. P, Vega Dep., 34-17-36:16, 39:2-16; 55:17-20; 57: 60:12-23.

> **PLAINTIFFS' RESPONSE 20-1:** <u>ADMIT.</u> The Defense made a deliberate choice not to train on any of the relevant training subjects even though (a) DCU was tasked with, and did provide, training to over twelve thousand NYPD officers during OWS. (See 56.1, ¶ 194), and (b) was the sole NYPD unit tasked with training for police officers who were policing Occupy Wall Street. (See Exhibit 1, Raganella Tr. 148:20 – 149:4).

> **PLAINTIFFS' RESPONSE 20-2:** <u>DENY.</u> DCU Commanding Officer Lieutenant Schwach believed that part of the DCU training curriculum should include classroom training on the legalities of civil disorder.  (See 56.1, ¶¶91-93).

> **PLAINTIFFS' RESPONSE 20-3:** <u>ADMIT.</u> Even though DCU Commanding Officer Lieutenant Schwach believed that part of the DCU training curriculum should include classroom training on the legalities of civil disorder, his proposal in September 30, 2009 was not implemented.  (See 56.1, ¶¶91-95).

> **PLAINTIFFS' RESPONSE 20-4:** <u>DENY.</u> Consistent with O.G. 101-04, the DCU was tasked with conducting tactical reviews and assessing Department strategies at major events, including Occupy Wall Street.  (See Exhibit 152, D014376-77).

21.     The role of the DCU at a protest or demonstration was simple—to provide tactical support to the incident command, including forming lines and wedges and disseminating masks, mesh netting, flexi-cuffs, pepper spray and the like. Ex. O, Raganella Dep. 189:22-190:16, 191:6-192:3; Ex. P, Vega Dep. 165: 10-15.

> **PLAINTIFFS' RESPONSE 21-1:** <u>DENY.</u> To the extent this paragraph purports to limit the role of DCU to simply tactical support, consistent with O.G. 101-04, the DCU was tasked with both (i) conducting tactical reviews and (ii) assessing Department strategies at major events, including Occupy Wall Street. (See Exhibit 152, D014376-77).

> **PLAINTIFFS' RESPONSE 21-2:** <u>DENY.</u> DCU was tasked with, and did provide, training to over twelve thousand NYPD officers during OWS. (See

56.1, ¶ 194), and was the sole NYPD unit tasked with training for police officers who were policing Occupy Wall Street. (See Exhibit 1, Raganella Tr. 148:20 – 149:4), so at an Occupy Wall Street protest or demonstration, consistent with their role, pursuant to O.G. 101-04, to asses Department strategies should have included reviewing whether training provided by DCU to these officers was consistent with constitutional policing of sidewalk protest. (See Exhibit 152, D014376-77).

22.    No member of the DCU gave any orders to officers to make arrests during OWS, and no member of the DCU made any arrests or made any arrest decisions during OWS. Ex. P, Vega Dep., 165:16-166:4.

> **PLAINTIFFS' RESPONSE 22-1:** <u>ADMIT.</u> Arrest decisions at sidewalk protest during OWS were made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶ 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17).

23.    Although the DCU was not primarily tasked with providing training on the Constitution, training was given in 2011 on the First Amendment rights of protesters pursuant to the DCU Lesson Plan, Legalities at Protests/Demonstrations. Ex. O, Raganella Dep., 279:7-25; Ex. J.

> **PLAINTIFFS' RESPONSE 23-1:** <u>DENY.</u>  DCU Sergeant Vega testified that the Legalities at Protests / Demonstrations training was classroom training and that DCU did not provide this training.  (56.1¶ 96, See Exhibit 32, Vega Tr. 80:21-81:12).

> **PLAINTIFFS' RESPONSE 23-2:** <u>DENY.</u>  While Raganella testified that such training was provided during the large scale level two mobilization on August 12, 2011, he admitted that no classroom training was provided, did not know how much of the lesson plan was taught, and could not provide any specifics or knowledge on how this training was provided, when or where during the mobilization it was provided, the substance or such training or any specifics of the training. (See Exhibit 1, Raganella Tr. 280:1-17).

> **PLAINTIFFS' RESPONSE 23-3:** <u>DENY.</u>  Defense witnesses cannot create disputes of material facts by disagreeing with each other.

24.    In this DCU training, officers received instruction on how the First Amendment affects their job performance at a protest or demonstration and on how the rights of free speech and assembly pertain to current NYPD policies. Ex. J.

**PLAINTIFFS' RESPONSE 24-1:**   DENY.   DCU Commanding Officer Lieutenant Schwach believed that part of the DCU training curriculum should include classroom training on the legalities of civil disorder.  (See 56.1, ¶¶91-93), but his proposal in September 30, 2009 was not implemented.  (See 56.1, ¶¶91-95).

**PLAINTIFFS' RESPONSE 24-2:**  DENY. The Defense has claimed that DCU did not provide training on this material (See ¶¶ 19-20 above).

**PLAINTIFFS' RESPONSE 24-3:**  DENY. The Defense has not produced any witness or corroborating documentation of any specific training dates and attendees of any training related to Exhibit J.

25.    The DCU also provided training on the First Amendment to Probationary Lieutenants and Sergeants. Exs. K and L, bullet 1.

**PLAINTIFFS' RESPONSE 25-1:**   DENY. This is not a material fact. (a) Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers (which are ranks above Lieutenants and Sergeants) who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶ 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148,  Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

**PLAINTIFFS' RESPONSE 25-2:**  DENY. The Defense has claimed that DCU did not provide training on this material (See ¶¶ 19-20 above).

**PLAINTIFFS' RESPONSE 25-3:**  DENY. The Defense has not provided any witness or specific information that this lesson plan was ever taught.

**PLAINTIFFS' RESPONSE 25-4:**  ADMIT. To the sole extent the materials attached as Exhibits K and I purport to be probationary lesson plans.

26.     The NYPD Police Student's Guide, Maintaining Public Order: Demonstrations, from *2005 through 2012*, specifically includes the standards for application of PL §240.20(5) as set forth People v. Carcel, 3 NY2d 327, 332 (NY Court App. 1957) under the former disorderly conduct statute, PL §722. People v. Jones applied the standard set forth in Carcel to the current statute, §240.20(5). This is evidenced by the fact that the NYPD Police Student's Guide, Demonstrations, in *2005*, which obviously predates the Jones decision, specifically applies the standards set forth in Jones. Exs. D, D1-7; see also Ex. N, Perkins Dep., 49:18-50:18; 158:17159:24.

> **PLAINTIFFS' RESPONSE 26-1:**   DENY. This is not a material fact. (a) Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶ 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148, Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

27.     In addition to Police Academy training, officers received Command Level training on the 2007 Training Memo, "Enforcement of New York State Penal Law Section 240.20(5) Disorderly Conduct," which specifically outlines the decision in People v. Jones. Ex. G.

> **PLAINTIFFS' RESPONSE 27-1:**   DENY, to the extent this paragraph seeks to confirm that executive level officers received any training related to the 2007 NYPD Police Academy Training Memo, as executive level officers did not receive command level training.  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶ 7).

> **PLAINTIFFS' RESPONSE 27-2:**  DENY, to the extent this paragraph seeks to confirm that Command level training at the precincts were effective..  (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶¶ 2, 3, 7).

**PLAINTIFFS' RESPONSE 27-3:**  DENY. The Defense has not produced any witness or corroborating documentation of training dates and attendees of any command level training of the 2007 NYPD Police Academy Training Memo.

**PLAINTIFFS' RESPONSE 27-4:**  DENY.  The City of New York admitted that executive level officers did not receive this training, or could not identify any training given to executive level officers in these areas, between 2004 and Occupy Wall Street.  (Exhibit 30, Perkins Tr. 75:24-77:14).

**PLAINTIFFS' RESPONSE 27-5:**  DENY. The NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

28.    Executive officers are also aided on the scene of demonstrations by members of the NYPD Legal Bureau who assist incident commanders directly in the field with questions they may have, including questions pertaining to probable cause to make arrests. Ex. Q, Gannon's Dep., 163:3-12.

**PLAINTIFFS' RESPONSE 28-1:**  ADMIT, to the extent the paragraph suggests that such NYPD Legal Bureau members are present on scene.

**PLAINTIFFS' RESPONSE 28-2:**  DENY, to extent the paragraph suggests that the NYPD Legal Bureau members are able to offer any opinions on probable cause but for a request by an executive level officer, because . NYPD Legal Bureau attorneys have a passive role and no authority during the policing of First Amendment sidewalk protests, (See 56.1 ¶¶182, Ex. 3: Gannon Dep. 163:3-12); and NYPD Legal Bureau attorneys are consulted during the policing of First Amendment sidewalk protests only if the incident commander chooses to do so. (See 56.1 ¶¶ 183 Ex. 3: Gannon Dep. 163:3-12).

**PLAINTIFFS' RESPONSE 28-3:**  DENY, to extent the paragraph suggests that any arrests made during the class period involved an executive level officer seeking assistance from a NYPD Legal Bureau member present. (See Docket 218-1, Expert Report of Robert Brown, page 3).

29.    There is no record evidence that the City "removed" a 2002 lesson plan, "Legalities of Civil Disorder" and the 2004 RNC Legal Guidelines from any training.

**PLAINTIFFS' RESPONSE 29-1:**  <u>DENY</u>, to extent the paragraph suggests that the RNC Legal Guidelines that were trained in 2004 were ever trained another time.  The City of New York could not identify any training applied to executive level officers on standards of disorderly conduct but stated impeding pedestrians would have been part of the RNC legal training in 2004.  "Was that training provided any time after 2004? NO."  Further, the City could not identify if any of this training existed for Executive Level Officers, nor could they identify any training to executive level officers in standards of substantial blockage of sidewalk during protest activity."  See Exhibit 30, Perkins Tr. 75:24-77:14.

**PLAINTIFFS' RESPONSE 29-2:**  <u>DENY</u>.  Legalities of Civil Disorder lesson plan were removed from training (Ex. 30: Perkins Dep. 37:4-24).

30.      With only a few weeks' notice that OWS was going to occur, the NYPD tried to identify the leaders of the OWS movement and contacted the ACLU to try to facilitate and accommodate OWS as they had done with the RNC—but the NYPD was rebuffed. Ex. S, Purtell Dep., 31:6-24.

**PLAINTIFFS' RESPONSE 30-1:**  <u>DENY</u> that this is a material fact related to the failure of the Defendant to properly train executive level officers on constitutionally compliant protest policing.

**PLAINTIFFS' RESPONSE 30-2:**  <u>DENY</u> that the statement by the Defense witness Purtell indicates that the City only had a few weeks notice that the OWS movement was going to occur.

**PLAINTIFFS' RESPONSE 30-3:**  <u>DENY</u>, that the ACLU was contacted, or if they were that they were representatives of the individuals who participated in Occupy Wall Street.  See Exhibit 46, Purtell Tr. 31:17-18.

**PLAINTIFFS' RESPONSE 30-4:**  <u>DENY</u>.  Other than the deposition testimony of retired Chief Purtell, there is no documentary evidence to support this occurred.  Such documents would have been responsive to document demands seeking communications between the NYPD and OWS. See Exhibits 153-155 (Exh. 153 – City identifies (2) NYPD Chief Thomas J.  Purtell as a person with information: facts and circumstances underlying plaintiffs' complaint pursuant to Rule 26; Exh. 154 – Plaintiffs' Second Set of Document Requests, #2, Any statements by any person identified in the Defendant's initial disclosures containing information concerning the identified subject matter of such person's testimony; Exh. 155   Defendants Response to Second set of Document Requests, Request No.2: "Defendant objects to Document Request No. 2 on the grounds that it is overly broad, ambiguous, and vague as to what is

meant by "any statements". Defendant fUl1her objects to this demand as it is overbroad as to "any person". Defendant further objects to this demand as it is ambiguous and overbroad as to what is meant by "the identified subject matter of such person's testimony". Defendant further objects to the request as the purported time frame of August 26, 2004 to September 14, 2012 is overly burdensome. Defendant further objects to the request as the purported time frame to the extent that the request is overbroad and seeks information that is not relevant to any claim or defense in this action and seeks information that is not proportional to the needs of the case. Defendant further objects to the extent that it implicates personal, private information and the unwarranted invasion of privacy of non-parties. Defendant further objects to the extent that the information is covered by law enforcement privilege. Defendant further reserves the right to object to the future disclosure of any such information.").

31.     Chief Purtell, the NYPD Commanding Officer of Patrol Bureau Manhattan South, personally tried to reach out to OWS organizers and the ACLU to facilitate marches and demonstrations—to no avail. Id. at 31:19-32:8.

> **PLAINTIFFS' RESPONSE 31-1:** <u>DENY</u> that this is a material fact related to the failure of the Defendant to properly train executive level officers on constitutionally compliant sidewalk protest policing.

> **PLAINTIFFS' RESPONSE 31-2:** <u>DENY</u>, that the ACLU was contacted, or if they were that they were representatives of the individuals who participated in Occupy Wall Street. See Exhibit 46, Purtell Tr. 31:17-18.

32.     The NYPD tried to open a dialogue with people who seemed to be leading the group through the NYPD Community Affairs Division—to no avail. Id. at 32:9-17.

> **PLAINTIFFS' RESPONSE 32-1:** <u>DENY</u> that this is a material fact related to the failure of the Defendant to properly train executive level officers on constitutionally compliant sidewalk protest policing.

33.     The NYPD learned of planned OWS demonstrations, including the first anniversary, through social media and internet open source resources. Id. at 186:7:15; Ex. Q, Gannon Dep., 171:8-172:5.

> **PLAINTIFFS' RESPONSE 33-1:** <u>DENY</u> that this is a material fact related to the failure of the Defendant to properly train executive level officers on constitutionally compliant sidewalk protest policing.

**PLAINTIFFS' RESPONSE 33-2:**  <u>DENY</u>, to the extent this paragraph alleges the protesters, not the NYPD werea responsible for the lack of trust that became to exist between the NYPD and the protesters. See 56.1, ¶¶ 263-272, 418-428)

34.      The NYPD Commissioner, in response to letters from State Senator Krueger and Council Member Lappin regarding the, "Bronx incident," referred the matter to the Internal Affairs Bureau, Special Investigations Unit, ("IAB") for investigation of possible misconduct. Ex. W, (pending application to file under seal).

**PLAINTIFFS' RESPONSE 34-1:**  <u>DENY.</u>  The filing regarding this exhibit was under seal, a copy was not provided to the Plaintiffs counsel and the bates number was not identified in the filing. It is not known specifically which of the documents related to the investigation of the Bronx incident are part of Exhibit W.

**PLAINTIFFS' RESPONSE 34-2:** <u>ADMIT.</u>

35.      The investigation into this incident involved the investigative work of one Deputy Chief, one Inspector, one Deputy Inspector, six Detectives and one Sergeant in IAB. <u>Id.</u>

**PLAINTIFFS' RESPONSE 35-1:**  <u>DENY.</u>  The filing regarding this exhibit was under seal, a copy was not provided to the Plaintiffs counsel and the bates number was not identified in the filing. It is not known specifically which of the documents related to the investigation of the Bronx incident are part of Exhibit W.

**PLAINTIFFS' RESPONSE 35-2:**  <u>ADMIT,</u> that the IAB report purports that the above various officers were in some fashion involved in the investigation or reviewing the paperwork from the investigation.

36.      The IAB investigation required that four officers who were present on the date of the "Bronx Incident" be formally interviewed with retained legal representation. <u>Id.</u>

**PLAINTIFFS' RESPONSE 36-1:**  <u>DENY.</u>  The filing regarding this exhibit was under seal, a copy was not provided to the Plaintiffs counsel and the bates number was not identified in the filing. It is not known specifically which of the documents related to the investigation of the Bronx incident are part of Exhibit W.

**PLAINTIFFS' RESPONSE 36-2:**  <u>DENY.</u>  No record of counsel indicated in file.  (See Exhibit 127, *See, e.g.,* D021446).  Files indicate that interviews were conducted under P.G. 206-13 which provides for the opportunity to obtain counsel.

**PLAINTIFFS' RESPONSE 36-3:** <u>DENY.</u>  Records indicate two officers were interviewed and that the on-scene Captain that gave the pertinent order was "not to be interviewed." (See Exhibit 126, D021426).

37.    The twelve-person IAB investigation team reviewed video of the incident, the memo book entries of the officers, paperwork involved in issuing the summonses, the disciplinary histories of all of the officers involved, interviews of the officers involved with their legal representation, conferral with the Bronx precinct Integrity Control Officer, conferral with the Bronx precinct Assistant Integrity Control Officer and conferral with the clerk of the Bronx Criminal Court. Id.

> **PLAINTIFFS' RESPONSE 37-1:** <u>DENY.</u>  The filing regarding this exhibit was under seal, a copy was not provided to the Plaintiffs counsel and the bates number was not identified in the filing. It is not known specifically which of the documents related to the investigation of the Bronx incident are part of Exhibit W.

> **PLAINTIFFS' RESPONSE 37-2:** <u>DENY,</u> insofar as this asserts that 12-people actively worked on the investigation beyond Detective Steven Suspenski.  Further, contradicted by paragraph 35 above.

38.    During their formal interviews, two officers involved in the "Bronx incident" stated that they observed protesters with tables and chairs set up on the sidewalk, and the protesters were given warnings, which they ignored. <u>Id.,</u> at D21449-21450, D21426.

> **LAINTIFFS' RESPONSE 38-1:**  <u>DENY,</u> insofar as this asserts that the orders given were lawful.  Officers were ordered to "keep the protestors moving" which is not a legal reason to give an order. *See Exhibit W* D21449.

39.    The investigation concluded that misconduct pertaining to this incident was unsubstantiated. <u>Id.,</u> at D21424.

> **PLAINTIFFS' RESPONSE 39-1:**  ADMIT, insofar as that is the result of the investigation as indicated by the documents.

> **PLAINTIFFS' RESPONSE 39-2:** DENY to the extent that the investigation failed to properly evaluate the issues raised in the complaints, contact those injured by the conduct of the officers, or evaluate the legality of the orders issued.

40.    There is no record of either Inspector Raganella or Lt. Gannon having reviewed a 12-minute video of the Bronx incident during their depositions.

> **PLAINTIFFS' RESPONSE 40-1:** <u>DENY,</u>  See Exhibit 1 Raganella Tr. 21:4-20, "It's a somewhat long video, so we'll just watch it all the way

through… (Whereupon, the witness was shown a video).  To the extent the attorney who drafted this 56.1 statement is pointing out that the transcript fails to identify the length of the video, it should be understood that the attorney who signed this 56.1 (A. Robinson) is a different attorney than appeared at the deposition (A. Mitchell);  See Exhibit 3 Gannon Tr. 17:6-12; 99:5-22; "Q: Are you familiar with this video? A: That's the most I've seen of it, so I didn't see the whole thing previously."

41.     Pertaining to a portion of the Bronx incident video, which Raganella did view, Raganella specifically testified that he only saw a "small snippet of video," he did not see what happened before the video began recording, "I don't know what [the Captain] saw and observed prior to the video starting," "I wasn't there. I didn't see what they were speaking of or how it was actually occurring." Ex. O, Raganella Dep. 22:15-25:9.

> **PLAINTIFFS' RESPONSE 41-1:**  <u>DENY.</u>   Raganella used the term 'small snippet of video' to reference the 12 minute video he was shown. See Exhibit 1 Raganella Tr. 21:4-20, 22:15-25:9).

42.     Raganella's deposition in this case was taken on July 12, 2018, and a flash drive dated August 30, 2018, was provided to defendant entitled, "plaintiff's exhibit 1" to Raganella's deposition, which contained one main file, 3 sub files, 22 sub sub files, 21 sub sub sub files of multiple videos and screen shots. Not a single one of the multitude of videos or screen shots on plaintiffs' purported exhibit 1 to Raganella's deposition is identified in any manner whatsoever in Raganella's deposition transcript. Raganella's deposition transcript does not indicate that he viewed the more than 50 videos and screen shots contained on the flash drive, or anything approaching that number. Ex. O, Raganella Dep., (throughout).

> **PLAINTIFFS' RESPONSE 42-1:**  <u>DENY,</u> On July 12, 2018, at the end of the deposition a flash drive with the relevant videos was provided to the City attorney present. (See Stecklow Declaration in Further Support ¶ 12), Six weeks later, on August 28, 2018, the defense demanded another copy of the flash drive within three days while the Plaintiff's counsel was out of the country.  (See Stecklow Declaration in Further Support ¶¶ 13-15, Exhibits 156-1 & 156-2).  On August 30, 2018, a flash drive was delivered to the NYS Law Department. (See Stecklow Declaration in Further Support ¶¶ 16, Exhibits 157).  Nine months later, during this briefing, the Defense has complained about this video rather than simply requesting clarification which could have easily been shared.  The flash drive directory, sub-directory and files each contained names that identified the video by date or location or arrestee. (See Stecklow Declaration in Further Support ¶ 17, Exhibits 158-1 & 158-2).

43.     The record shows that officers received thorough training on the obstructing governmental administration statute. Exs. T, T1-5, U, U1-5, V.

**PLAINTIFFS' RESPONSE 43-1:** <u>DENY</u>. This is not a material fact. (a) Academy training is not at issue because the arrest decisions at sidewalk protest are made by executive level officers who had all graduated from the Academy decades prior to the time when they reached the executive level officer rank. (See Stecklow Declaration in Further Support, Exhibit 151, Brown Declaration, ¶ 8; 56.1 ¶279, Exhibit 3, Gannon Dep. 184:9-17) and; (b) the NYPD did not train on the relevant training subjects outside of the academy training for recruits (Ex. 30: Perkins Dep. 47:11-24); and does not provide Academy training in the relevant training subjects for executive level training (Ex. 30: Perkins Dep. 54:5-19) and the City of New York could not identify any executive level training that at the Academy or outside the Academy, that included the Legal Bureau, in any relevant training subject; (Ex. 30: Perkins Dep. 85:2-10). (See 56.1 ¶ 395); and (c) The NYPD Police Academy City provides no post-Academy training to NYPD members of service in any of the Relevant Training Subjects. (See 56.1 ¶ 148,  Ex. 30: Perkins Dep. 128:19-25); and (d) the City of New York could not identify any NYPD Legal Bureau raining provided to any executive level officer either at the Academy or outside the Academy. 56.1 ¶395, Ex. 30: Perkins Dep. 85:2-10).

Dated:  New York, New York
       May 24, 2019

**WYLIE STECKLOW PLLC**

 /s/ Wylie M. Stecklow
Wylie Stecklow, Esq.
Jon Avins, Esq.
217 Centre Street, Sixth Floor
New York, NY 10013
(212) 566-8000
ECF@Wylielaw.com

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**

Jeffrey G. Smith
Kevin G. Cooper
270 Madison Ave.
New York, NY 10016
Tel.:    (212) 545-4600
Fax:    (212) 686-0114
Smith@whafh.com
KCooper@whafh.com
*Attorneys for Plaintiffs*

**THE SULTZER LAW GROUP, P.C.**

Janine Pollack
351 W. 54th St., Suite 1C
New York, New York 10019
pollackj@thesultzerlawgroup.com
Telephone: (212) 969-7810
Fax: (888) 749-7747

*Attorneys for Plaintiffs and Proposed
Counsel for the Class*